COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

[Proposed] Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROOFERS' PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH C. PAPA, et al.,<br><br>Defendants. | No. 2:16-cv-02805-MCA-LDW<br><br><u>CLASS ACTION</u><br><br>MOTION DATE:<br>August 15, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
HAREL INSURANCE COMPANY LTD. FOR APPOINTMENT
<u>AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL</u>**

I.     **PRELIMINARY STATEMENT**

Presently pending in this District is a securities class action lawsuit (the "Action") brought on behalf of all those who purchased Perrigo Company plc ("Perrigo" or the "Company") common stock between April 21, 2015 and May 11, 2016, inclusive (the "Class Period"), and on behalf of all investors in Perrigo common stock as of November 13, 2015, which was the deadline for Perrigo investors to tender their shares in connection with a tender offer made by Mylan N.V. ("Mylan"). The Action alleges violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), 78n(a), and 78t(a), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4, *et seq.*), and Securities and Exchange Commission Rules 10b-5 and 14a-9 promulgated thereunder (17 C.F.R. §§240.10b-5 and 240.14a-9).

Proposed lead plaintiff Harel Insurance Company Ltd. ("Harel Insurance") hereby moves this Court for an Order:  (a) appointing Harel Insurance as Lead Plaintiff; and (b) approving Harel Insurance's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel and Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland") to serve as Liaison Counsel.

This motion is made on the grounds that Harel Insurance is the most adequate plaintiff, as defined by the PSLRA, because it possesses a significant financial interest in the Action, and it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class. Accordingly, Harel Insurance's motion should be granted.

## II. FACTUAL BACKGROUND

Perrigo is a manufacturer of generic drugs and over-the-counter healthcare products. On April 8, 2015, competing drug manufacturer Mylan approached the Perrigo Board of Directors with an offer to purchase Perrigo for $205 per share, representing a nearly 30% premium to the Company's total market capitalization. Mylan's approach was well received by investors, and the price of Perrigo stock increased to as high as $215 per share in intraday trading on April 8.

However, beginning on April 21, 2015, and continuing throughout the Class Period, Perrigo publicly rejected Mylan's offer and falsely told investors that the offer substantially undervalued Perrigo and its growth prospects, and that the offer did not take into account the full benefits of the Company's acquisition of Omega Pharma N.V. ("Omega"). Even though Mylan subsequently raised its offer to approximately $235 per share, over the next six months, Perrigo continued to engage in a public campaign to convince shareholders to reject Mylan's proposal. Convinced by Perrigo's strong opposition to Mylan's tender offer, on November 13, 2015, the majority of the Company's shareholders declined to tender their shares, making the tender offer a failure. Moreover, Defendants' misrepresentations caused Perrigo shares to trade at artificially inflated prices throughout the Class Period.

The truth began to be revealed on February 18, 2016, when Perrigo reported fourth quarter 2015 revenue, margins, earnings, and cash flow that were all lower than investors had been led to expect, and decreased earnings guidance for 2016. The Company also announced the sudden need to restructure parts of the Omega business,

and that it would need to take a $185 million impairment charge related to Omega's assets.

Then, on April 22, 2016, Reuters reported that Perrigo's longtime Chief Executive Officer ("CEO"), Joseph Papa ("Papa"), would be appointed as the new CEO of competing pharmaceutical company Valeant Pharmaceuticals International, Inc. ("Valeant"). Days later, on April 25, 2016, Perrigo confirmed that CEO Papa was, in fact, resigning to become the new CEO of Valeant. The Company also drastically lowered its earnings guidance for 2016 and announced weak preliminary first quarter 2016 results. The Company attributed its poor financial performance to increased competitive pressures and weaker than expected performance within Omega. Then, on May 12, 2016, Perrigo announced a first quarter net loss of $0.93 per share (which the Company later revised to a loss of $2.34 per share), which the Company largely attributed to an additional $467 million impairment charge relating to the Omega acquisition. These disclosures caused a material decline in the price of Perrigo stock.

### III.  ARGUMENT

#### A.  Harel Insurance Should Be Appointed Lead Plaintiff

##### 1.  The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1), (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff here caused the first notice regarding the pendency of the action to be published on *PR Newswire*, a national, business-oriented newswire service, on May 18, 2016. *See* Pearlman Decl., Ex. A.[1] Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A-B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that - -
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[1] References to the "Pearlman Decl., Ex. __" are to the exhibits attached to the Declaration of Peter S. Pearlman in Support of the Motion of Harel Insurance Company Ltd. for Appointment as Lead Plaintiff and Approval of Selection of Counsel, dated July 18, 2016, submitted herewith.

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Vonage IPO Sec. Litig.*, 2007 U.S. Dist. LEXIS 66258, at *11-14 (D.N.J. Sept. 7, 2007) (describing PSLRA standards for appointment of lead plaintiff).

### 2. Harel Insurance Satisfies the Lead Plaintiff Requirements of the PSLRA

#### a. Harel Insurance's Lead Plaintiff Motion Is Timely

The time period in which class members may move to be appointed lead plaintiff under the PSLRA expires on July 18, 2016. 15 U.S.C. §78u-4(a)(3)(A-B). Pursuant to the provisions of the PSLRA, and within the requisite time frame after publication of the required notice (published on May 18, 2016), Harel Insurance timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class. An authorized representative of Harel Insurance has duly signed a Certification stating that it is willing to serve as the representative party on behalf of the class. *See* Pearlman Decl., Ex. B. In addition, Harel Insurance has selected and retained competent counsel to represent it and the class. *See* Pearlman Decl., Exs. D, E. Accordingly, Harel Insurance has complied with the PSLRA's procedural requirements and is entitled to be considered for appointment as Lead Plaintiff.

#### b. Harel Insurance Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed Certification and loss chart, Harel Insurance, who purchased its shares in the United States, incurred a loss of approximately $25,873,825 on its

transactions in Perrigo common stock in reliance upon the materially false and misleading statements issued by Defendants. *See* Pearlman Decl., Exs. B, C. Upon information and belief, no other single investor possesses a larger financial interest in the Action. Accordingly, Harel Insurance satisfies the PSLRA's prerequisite of having a significant financial interest in the Action.

### c. Harel Insurance Otherwise Satisfies the Typicality and Adequacy Requirements of Rule 23

According to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative, rather than the class as a whole. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Vonage*, 2007 U.S. Dist. LEXIS 66258, at *13-14 (testing the

typicality and adequacy of prospective lead plaintiffs); *see also Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) (same). Harel Insurance satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff in this Action.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. In making the *prima facie* determination of typicality, the Court should apply traditional Rule 23 principles, including whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265. Thus, typicality exists if claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the same legal theory." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 107 n.13 (D.N.J. 1999); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (typicality "permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment").

Harel Insurance satisfies this requirement because, just like all other class members, it: (1) purchased and/or held Perrigo common stock during the Class Period; (2) was adversely affected by Defendants' false and misleading statements and/or was entitled to vote on the proxy; and (3) suffered damages by the conduct set forth in the Complaint. Thus, Harel Insurance's claim is typical of those of other class members because its claim and the claims of other class members arise out of the same course of events and same legal theories.

- 7 -

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Harel Insurance to represent the class to the existence of any conflicts between the interests of Harel Insurance and the members of the class. The Court must evaluate adequacy of representation by considering whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265; *see also Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996) (stating that the adequacy of representation inquiry involves consideration of both whether "the interests of the named plaintiffs [are] sufficiently aligned with those of the absentees" and whether "class counsel [is] qualified and [will] serve the interests of the entire class").

Here, Harel Insurance is an adequate representative of the class. As evidenced by the injuries suffered by Harel Insurance in purchasing Perrigo common stock in the U.S. at prices allegedly artificially inflated by Defendants' materially false and misleading statements, and by the injury it suffered based on materially false and misleading statements concerning the sales process leading up to the execution of the merger, the interests of Harel Insurance are clearly aligned with the interests of the class. Furthermore, there is no evidence of antagonism between Harel Insurance and the class, and Harel Insurance has certified its willingness to serve as a class representative. Further, Harel Insurance has taken significant steps which demonstrate that it will protect the interests of the class: it has retained competent and experienced

counsel to prosecute these claims. As shown below, Harel Insurance's proposed Lead and Liaison Counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner.

Moreover, Harel Insurance, an institutional investor, is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent classmembers." *Cendant*, 264 F.3d at 273; *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp*., 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by [weighing] the determination of lead plaintiff in favor of large institutional investors."); *see also Rozenboom v. Van Der Moolen Holding, N.V.*, 2004 U.S. Dist. LEXIS 6382, at *5-6 (S.D.N.Y. Apr. 14, 2004) (citing congressional intent to encourage institutional investors to serve as lead plaintiffs).

Accordingly, Harel Insurance *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for purposes of this motion.

### B. The Court Should Approve Harel Insurance's Choice of Counsel

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). In this regard, Harel Insurance has selected Robbins Geller to serve as Lead Counsel and Cohn Lifland to serve as Liaison Counsel. Both

firms have substantial experience in the prosecution of shareholder and securities class actions.  See Pearlman Decl., Exs. D, E; *see*, *e.g.*, *Grodko v. Cent. European Distrib. Corp.*, 2012 U.S. Dist. LEXIS 178478, at *32 (D.N.J. Dec. 17, 2012) (appointing Robbins Geller as lead counsel and Cohn Lifland as liaison counsel); *Blake Partners, Inc. v. Orbcomm, Inc.*, 2008 U.S. Dist. LEXIS 43061, at *25 (D.N.J. June 2, 2008) (same); *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country").  As such, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller as Lead Counsel and Cohn Lifland as Liaison Counsel.  Accordingly, the Court should approve Harel Insurance's selection of counsel.

### IV.	CONCLUSION

For all the foregoing reasons, Harel Insurance respectfully requests that the Court:  (a) appoint Harel Insurance as Lead Plaintiff in the Action; (b) approve its selection of Lead and Local Counsel as set forth herein; and (c) grant such other relief as the Court may deem just and proper.

DATED: July 18, 2016   COHN LIFLAND PEARLMAN
                         HERRMANN & KNOPF LLP
                       PETER S. PEARLMAN


                       *s/ Peter S. Pearlman*
                       PETER S. PEARLMAN

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

[Proposed] Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on July 18, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                        *s/ Peter S. Pearlman*
                                      PETER S. PEARLMAN