UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROOFERS' PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH C. PAPA and PERRIGO COMPANY PLC,<br><br>Defendants. | 2:16-cv-02805-MCA-LDW<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MIGDAL INSURANCE COMPANY LTD., MIGDAL MAKEFET PENSION AND PROVIDENT FUNDS LTD., CLAL INSURANCE COMPANY LTD., CLAL PENSION AND PROVIDENT LTD., ATUDOT PENSION FUND FOR EMPLOYEES AND INDEPENDENT WORKERS LTD., AND MEITAV DS PROVIDENT FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL |

{00208703;3 }

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT................................................................................................................................5

    I.    THE PERRIGO INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF.............................................................................5

        A.    The Perrigo Institutional Investor Group is Willing to Serve as Class Representative ...................................................................................6

        B.    The Perrigo Institutional Investor Group Has the "Largest Financial Interest" ........................................................................................6

        C.    The Perrigo Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure..............7

    II.    AGGREGATION OF THE PERRIGO INSTITUTIONAL INVESTOR GROUP'S FINANCIAL INTERESTS IS APPROPRIATE ..................................9

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................................................................................................12

CONCLUSION...........................................................................................................................14

# **TABLE OF AUTHORITIES**

**PAGES**

**CASES**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................11

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
    No. 09-md-2058-PKC (S.D.N.Y.) ...................................................................................13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................................7, 8, 9

*In re Cendant Corporation Securities Litigation*,
    No. 98-cv-01664-WHW-ES (D.N.J.) ..............................................................................13

*In re Citigroup Inc. Bond Litigation*,
    No. 08-cv-9522-SHS (S.D.N.Y.) ....................................................................................13

*In re Comverse Tech., Inc., Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ..................................................7

*In re Enzymotec Ltd. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) (Arleo, J.) .......................................9

*In re KaloBios Pharmaceuticals, Inc. Securities Litigation*,
    15-cv-05841 (N.D. Cal.) ..................................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...................................................7

*Lerner v. Northwest Biotherapeutics, Inc. et al.*,
    No. 15-cv-02532 (D. Md.) ...............................................................................................12

*In re Lucent Technologies, Inc. Securities Litigation*,
    No. 00-cv-0621-JAP-MCA (D.N.J.)................................................................................13

*In re Lumber Liquidators Holdings, Inc. Securities Litigation*,
    No. 13-cv-00157 (E.D. Va.) ............................................................................................13

*In re Mellanox Technologies, Ltd. Securities Litigation*,
    13-cv-00925 (S.D.N.Y.)...................................................................................................11

*In re Merck & Co. Inc. Vytorin/Zetia Securities Litigation*,
    No. 08-cv-2177-DMC-JAD (D.N.J.) ...............................................................................13

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ..................................................................................8, 12

*OFI Risk Arbitrages v. Cooper Tire & Rubber Company*,
    63 F. Supp. 3d (D.Del. August 6, 2014) ...............................................................................9

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................7

*In re Petrobras Securities Litigation*,
    No. 14-cv-09662 (S.D.N.Y.)...............................................................................................12

*Pirnik v. Fiat Chrysler Automobiles, N.V. et al.*,
    No. 15-cv-07199 (S.D.N.Y.)...............................................................................................12

*Plumley v. Sempra Energy et al.*,
    16-cv-00512 (S.D. Cal.).......................................................................................................12

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ................................10

*In re Sanofi Securities Litigation*,
    14-cv-9624 (S.D.N.Y.)........................................................................................................11

*In re Schering-Plough Corporation/Enhance Litigation*,
    No. 08-cv-0397-DMC-JAD (D.N.J.) ..................................................................................13

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
    No. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014)..................................................10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................................8

*In re Wilmington Trust Securities Litigation*,
    No. 10-cv-0990-SLR (D. Del.) ...........................................................................................13

*In re WorldCom, Inc. Securities Litigation*,
    No. 02-cv-03288-DLC (S.D.N.Y.) .....................................................................................12

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii) ..............................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................................2, 5, 6, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ...........................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...........................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................................................9, 12

Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)) ...........................................................................1, 7, 8

Private Securities Litigation Reform Act of 1995 (the "PSLRA") ........................................ passim

**RULES**

Rule 23 of the Federal Rules of Civil Procedure ..........................................................2, 5, 6, 7, 8

Rule 42 of the Federal Rules of Civil Procedure ............................................................................1

U.S. Securities and Exchange Commission Rule 10b-5 .................................................................1

**REGULATIONS**

17 C.F.R. § 240.10b-5......................................................................................................................1

Migdal Insurance Company Ltd. ("Migdal Insurance"), Migdal Makefet Pension and Provident Funds Ltd. ("Migdal Makefet" and, with Migdal Insurance, "Migdal"), Clal Insurance Company Ltd. ("Clal Insurance"), Clal Pension and Provident Ltd. ("Clal Pension"), Atudot Pension Fund for Employees and Independent Workers Ltd. ("Atudot" and, with Clal Insurance and Clal Pension, "Canaf-Clal"), and Meitav DS Provident Funds and Pension Ltd ("Meitav") (collectively, the "Perrigo Institutional Investor Group" or the "Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order:  (1) appointing the Perrigo Institutional Investor Group as Lead Plaintiff; (2) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel; and (3) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned action (the "Action") alleges that from April 21, 2015 to May 11, 2016, inclusive (the "Class Period"), Perrigo Company plc ("Perrigo" or the "Company") and its former Chief Executive Officer, Joseph Papa (collectively, "Defendants"), defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  The Action also alleges that Defendants defrauded investors that held shares of Perrigo as of 8:00 am on November 13, 2015 in violation of Section 14(e) of the Exchange Act in connection with a tender offer made by Mylan N.V. ("Mylan").  Perrigo investors, including the Perrigo Institutional Investor Group, incurred significant losses following the disclosure that Perrigo was experiencing significant competitive pressures, as well

as problems integrating recently acquired Omega Pharma N.V. ("Omega"), which resulted in the Company taking impairment charges totaling over $650 million.

Pursuant to the PSLRA, the court is to appoint as lead plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Perrigo Institutional Investor Group—with losses of approximately $68,161,974 calculated on a FIFO basis and $60,263,905 calculated on a LIFO basis in connection with its purchases of U.S.-traded Perrigo securities during the Class Period, and losses of approximately $54,761,574 in connection with the 846,347 shares it held as of the date of Mylan's failed tender offer for Perrigo shares—is believed to have the largest financial interest in the relief sought in this action.[1]

In addition to asserting the largest financial interest in this litigation, the Perrigo Institutional Investor Group also meets the applicable requirements of Rule 23 because its claims are typical of absent class members and because it will fairly and adequately represent the interests of the Class. The Perrigo Institutional Investor Group is a paradigmatic Lead Plaintiff under the PSLRA because it is a small group of sophisticated institutional investors with a real financial interest in the litigation. Accordingly, the Perrigo Institutional Investor Group has both the incentive and ability to supervise and monitor counsel.

Further, as set forth in greater detail in their Joint Declaration submitted herewith, the Perrigo Institutional Investor Group fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[2] Moreover, prior to seeking a role as

---

[1] The Perrigo Institutional Investor Group's PSLRA-required Certifications are attached as Exhibit B to the Declaration of Jeremy A. Lieberman in Support of the Motion of the Perrigo Institutional Investor Group for Appointment as Lead Plaintiff and Approval of Its Selection of Co-Lead Counsel ("Lieberman Decl."). A chart setting forth calculations of the Perrigo Institutional Investor Group's losses is attached as Exhibit C to the Lieberman Decl.

[2] *See* Lieberman Decl., Ex. D.

Lead Plaintiff, representatives from the Perrigo Institutional Investor Group held a joint conference call to discuss the merits of the claims against Defendants, as well as the funds' common goals in the litigation.

The Perrigo Institutional Investor Group has also demonstrated its adequacy through its selection of Pomerantz and Bernstein Litowitz as proposed Co-Lead Counsel for the Class. Pomerantz and Bernstein Litowitz are nationally recognized securities class action firms that have each recovered billions of dollars for the benefit of harmed investors. The Perrigo Institutional Investor Group also selected the highly respected firm of Lowenstein Sandler LLP ("Lowenstein Sandler") to serve as liaison counsel for the Class.

Accordingly, based on the Perrigo Institutional Investor Group's significant financial interest and its commitment and ability to jointly oversee this action in a cohesive and coordinated fashion, the Perrigo Institutional Investor Group respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## STATEMENT OF FACTS

Perrigo manufactures generic drugs and other over-the-counter ("OTC") medications. On April 8, 2015, competing drug manufacturer Mylan N.V. ("Mylan") approached the Perrigo Board of Directors with an offer to purchase Perrigo for $205 per share, representing a nearly 30% premium to the Company's total market capitalization. Mylan's approach was well received by investors, and the price of Perrigo stock climbed as high as $215 per share in intraday trading on April 8.

However, on April 21, 2015, the first day of the Class Period, Perrigo publicly rejected Mylan's offer and falsely told investors that it "substantially undervalues Perrigo and its growth prospects," and that the offer "does not take into account the full benefits of the Omega Pharma acquisition." Even though Mylan subsequently raised its offer to approximately $235 per share, over the next six months, Perrigo continued to engage in a public campaign to convince shareholders to reject Mylan's proposal. As additional reasons to reject Mylan's offer, Perrigo

cited the 5%-10% in organic revenue growth that it would achieve as a standalone company, as well as significant synergies from Perrigo's March 2015 acquisition of Omega, among other things.

These statements—which caused a majority of Perrigo's shareholders to reject Mylan's offer—were materially false and misleading. In truth, Perrigo knew or recklessly disregarded that: (1) Mylan's offer did not undervalue Perrigo; (2) Perrigo would not be able to achieve 5%-10% organic growth as a standalone company; (3) the Company's "durable competitive position and durable growth strategy" was rapidly deteriorating; and (4) Perrigo was experiencing serious issues integrating the Omega acquisition and significantly overpaid for Omega's business.

Convinced by Perrigo's strong opposition to Mylan's tender offer, on November 13, 2015, the majority of the Company's shareholders declined to tender their shares making the tender offer a failure and causing the price of Perrigo shares to decline by 6% from $156.55 per share to $146.90 per share.

On February 18, 2016, Perrigo reported fourth quarter 2015 revenue, margins, earnings, and cash flow that were all lower than investors had been led to expect, and decreased earnings guidance for 2016. The Company also announced the sudden need to restructure parts of the Omega business, and that it would need to take a $185 million impairment charge related to Omega's assets. As a result of these disclosures, Perrigo shares fell $14.77 per share, or 10%, to close at $130.40 per share.

Then, on April 22, 2016, *Reuters* reported that Perrigo's longtime CEO would be appointed as the new CEO of competing pharmaceutical company Valeant Pharmaceuticals. The news that CEO Papa would be leaving Perrigo after spending the better part of the prior year assuring investors of the strength of Perrigo's business caused the price of the Company's shares to fall from $128.68 per share to $121.35 per share, or almost 6%.

On April 25, 2016, before the market opened, Perrigo confirmed that CEO Papa was, in fact, resigning to become Valeant's new CEO. The Company also drastically lowered its earnings guidance for 2016 and announced week preliminary first-quarter 2016 results. The Company

attributed its poor financial performance to increased competitive pressures and weaker than expected performance within Omega. Finally, Perrigo disclosed issues with the integration of Omega, and that it was contemplating another impairment charge—in addition to the $185 million charge the Company took just two months prior—associated with the Omega acquisition. This news cause the price of Perrigo shares to fall an additional $21.95 per share, or 18%, from $121.35 per share to $99.40 per share.

On May 12, 2016, Perrigo announced a first quarter net *loss* of $0.93 per share, which the Company largely attributed to an additional $467 million impairment charge relating to the Omega acquisition. Following the announcement of Perrigo's financial results, the Company's newly appointed CEO—John Hendrickson—stated that he would be targeting "realistic" forecasts the Company can meet—a clear admission that the Company had previously asserted unrealistic and unattainable financial goals in an effort to defeat Mylan's takeover during the prior year. As a result of these disclosures, Perrigo shares fell $3.71 per share, or 4%.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. THE PERRIGO INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Perrigo Institutional Investor Group should be appointed Lead Plaintiff because it is believed to have the largest financial interest in the Action and otherwise meets the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any

such notice. Specifically, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Perrigo Institutional Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A. The Perrigo Institutional Investor Group is Willing to Serve as Class Representative

On May 18, 2016, Bernstein Litowitz, as counsel for plaintiff in the above-captioned action, caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that the Action had been filed against Defendants, and advised investors in Perrigo securities that they had until July 18, 2016 to file a motion to be appointed as Lead Plaintiff. (*See* Lieberman Decl., Ex. A.) The Perrigo Institutional Investor Group has filed the instant motion pursuant to the Notice, and has attached Certifications attesting that its members are willing to serve as representatives for the Class, and provide testimony at deposition and trial, if necessary. (*See id.*, Ex. B.) Accordingly, the Perrigo Institutional Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B. The Perrigo Institutional Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of the Perrigo Institutional Investor Group's knowledge, it has the largest financial interest of Perrigo investor seeking to serve as

Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997). Those factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See id*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (adopting test set forth in *Lax v. First Merch. Acceptance Corp*).[3]

During the Class Period, the Perrigo Institutional Investor Group: (1) purchased 1,548,573 shares of Perrigo stock; (2) purchased 1,169,930 net shares of Perrigo stock; (3) expended $232,598,156 on its purchases of Perrigo shares; and (4) incurred losses of $68,161,974 calculated on a FIFO basis and $60,263,905 calculated on a LIFO basis on its transactions in Perrigo shares during the Class Period. (*See* Lieberman Decl., Ex. C.) Moreover, with regard to claims arising under Section 14(e) of the Exchange Act, the Institutional Investor Group incurred losses of $54,761,574 on the 846,347 Perrigo shares the Group held as of 8:00 am on November 13, 2015, the date of the failed tender offer.[4] (*Id.*) Because the Perrigo Institutional Investor Group possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. The Perrigo Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."

---

[3] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

[4] Under Section 14(e) of the Exchange Act, the Group's damages on shares held at the date of Mylan's tender offer were calculated as the difference between $174.36 per share (the value of the tender offer) and the disposition price of the shares (either (a) the higher of the actual sales price or the average price over the 90 preceding trading days; or (b) the hold price for retained shares).

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead a *prima facie* showing that the movant satisfies the typicality and adequacy requirements of Rule 23 is sufficient. *See In re Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive.").

Typicality can be established by showing that the proposed class representative's individual circumstances and legal theories upon which the claims are based are not markedly different from those of other class members. *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 (D. Del. 2005) ("[T]ypicality [] does not require that all putative class members share identical claims.") (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)).

The claims of the Perrigo Institutional Investor Group are typical of those of the Class. The Perrigo Institutional Investor Group alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Perrigo, or omitted material facts necessary to make the statements they did make not misleading. The Perrigo Institutional Investor Group, like all members of the Class, purchased Perrigo securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions, and held shares at the point of the tender offer, and was damaged when the tender offer failed and upon the disclosure of those misrepresentations. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must demonstrate that it "has the ability and incentive to represent the claims of the class vigorously," has "obtained

adequate counsel," and its interests are sufficiently aligned with those of absent Class members. *In re Cendant*, 264 F.3d at 265 (citations omitted). The Perrigo Institutional Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the Perrigo Institutional Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation.

Moreover, as set forth in greater detail below, the Perrigo Institutional Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II. AGGREGATION OF THE PERRIGO INSTITUTIONAL INVESTOR GROUP'S FINANCIAL INTERESTS IS APPROPRIATE

The appointment of a group of Class members as Lead Plaintiff is expressly permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the Third Circuit, as well as district courts within the Third Circuit—including this Court—which have repeatedly recognized the propriety of appointing such groups that are capable of "fairly and adequately protect[ing] the interests of the class." *In re Cendant*, 264 F.3d at 266 ("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"); *In re Enzymotec Ltd. Sec. Litig.*, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) (Arleo, J.) (appointing as Lead Plaintiff group of three investors); *OFI Risk Arbitrages v. Cooper Tire & Rubber Company*, 63 F. Supp. 3d at 411 (D.Del. August 6, 2014) (appointing as Lead Plaintiff group of institutional investors).

Migdal Insurance owns Migdal Makefet and manages nearly $50 billion in assets. (*See* Lieberman Decl., Ex. D, ¶ 2.) Each of the Migdal entities is the beneficial owner of the securities described in its Certification. Aasaf Shoham, Deputy CEO of Migdal Insurance, with authority to bind Migdal Insurance and enter into litigation on its behalf, signed a Certification on behalf of Migdal Insurance. (*See id.*, Exs. B, D.) Ofer Eliahu, CEO of Migdal Makefet, with

authority to bind Migdal Makefet and enter into litigation on its behalf, signed a Certification on behalf of Migdal Makefet. (*See id.*)

Meitav is an affiliate of Meitav Dash, a leading investment management firm in Israel with approximately $36.3 billion under management. (*See id.* Ex. D, ¶ 4.) Meitav is the beneficial owner of the securities described in its Certification. Teddy Lin, Meitav Dash's CEO, with authority to bind Meitav and enter into litigation on its behalf, signed a Certification on behalf of Meitav. (*See id.*)

The Canaf-Clal entities are affiliates of Canaf-Clal Financial Management Ltd., the investment arm of Israel's Clal Group, with total assets under management of nearly $39 billion. (*See id.* Ex. D, ¶ 3.) Anath Levin, CEO of Canaf-Clal Financial Management Ltd., with authority to bind the Canaf-Clal entities and enter into litigation on their behalf, signed a Certification on behalf of Canaf-Clal. (*See id.* Exs. B, D.)

As set forth in their Joint Declaration, the Perrigo Institutional Investor Group has demonstrated its commitment to working cohesively as a group in the prosecution of this action. (*See id.* Ex. D); s*ee also W. Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 WL 1395059, at *7 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members). Indeed, the Perrigo Institutional Investor Group is comprised of a small, cohesive partnership of sophisticated institutional investors that determined on their own to jointly seek appointment as Lead Plaintiff. (*See* Lieberman Decl., Ex. D); s*ee also DFC Global Corp.*, 2014 WL 1395059, at *7-9 (appointing group after concluding that group was capable of "fairly and adequately protect[ing] the interests of the class"); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

The Joint Declaration also sets forth the reasons why these investors are collaborating in this litigation and establishes how the Perrigo Institutional Investor Group intends to oversee

counsel and this litigation. (*See* Lieberman Decl., Ex. D, ¶¶ 1, 5-9.) As reflected in the Joint Declaration, before seeking appointment as Lead Plaintiff, representatives of each fund in the Perrigo Institutional Investor Group discussed together, among other things: the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA; the shared desire of Migdal, Canaf-Clal, and Meitav to achieve the best possible result for the class; the interests in prosecuting the case in a collaborative, likeminded manner; and the actions each fund will take to continue to ensure that the class's claims will be zealously and efficiently litigated. (*See id.*)

Drawing upon their collective resources and experience, the Perrigo Institutional Investor Group is well-suited for this litigation and would advance the interests of the Class. Each member of the Perrigo Institutional Investor Group is a sophisticated institutional investor, and Canaf-Clal and Meitav each has highly relevant experience serving as part of Lead Plaintiff groups under the PSLRA. (*See id.* ¶¶ 3, 4, 6.) Indeed, both Canaf-Clal and Meitav have prior experience serving as Lead or Co-Lead Plaintiffs in securities class actions, having previously represented the interests of investors in *In re Mellanox Technologies, Ltd. Securities Litigation*, 13-cv-00925 (S.D.N.Y.) and *In re Sanofi Securities Litigation*, 14-cv-9624 (S.D.N.Y.), respectively. (*See id.*)

The evidence submitted by the Perrigo Institutional Investor Group demonstrating its commitment to vigorously and effectively representing the interests of the Class as members of a Lead Plaintiff group is more than adequate to satisfy the adequacy and typicality requirements. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel").

### III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors*, 233 F.R.D. at 150 ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, the Perrigo Institutional Investor Group has selected Pomerantz and Bernstein Litowitz as Co-Lead Counsel for the Class. These firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes. (*See* Lieberman Decl., Exs. E-F.)

Pomerantz is a premiere firm in the area of securities litigation. For more than 75 years, Pomerantz has represented defrauded investors, recovering well over $1 billion on its clients' behalf. The firm currently serves as lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), a group of consolidated class actions against the Brazilian energy giant Petrobras concerning a sprawling kickback scheme that resulted in over $19 billion in asset impairment and charges. Courts throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *Pirnik v. Fiat Chrysler Automobiles, N.V. et al.*, No. 15-cv-07199 (S.D.N.Y.), *Lerner v. Northwest Biotherapeutics, Inc. et al.*, No. 15-cv-02532 (D. Md.), *Plumley v. Sempra Energy et al.*, 16-cv-00512 (S.D. Cal.), and *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, 15-cv-05841 (N.D. Cal.).

Similarly, Bernstein Litowitz – which developed and filed this Action – is among the preeminent securities class action law firms in the country. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities

class action history—were obtained for the Class. Recently, Bernstein Litowitz secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.), and a $730 million settlement in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.) on behalf of the Class. Bernstein Litowitz also served as Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, No. 98-cv-01664-WHW-ES (D.N.J.) in this District, in which settlements in excess of $3 billion in cash and extensive corporate governance reforms were obtained on behalf of the class.

Also in this District, Bernstein Litowitz recently served as Co-Lead Counsel in *In re Schering-Plough Corporation/Enhance Litigation*, No. 08-cv-0397-DMC-JAD (D.N.J.) and *In re Merck & Co. Inc. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177-DMC-JAD (D.N.J.), in which combined settlements of $688 million were obtained on behalf of investors. Other cases in which courts in the Third Circuit, including courts in this District, have recognized Bernstein Litowitz as adequate and qualified class counsel include: *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-cv-0621-JAP-MCA (D.N.J.) (recovering $667 million for investors) and *In re Wilmington Trust Securities Litigation*, No. 10-cv-0990-SLR (D. Del.) (Bernstein Litowitz currently serving as Co-Lead Counsel).

Moreover, Pomerantz and Bernstein Litowitz have a history of working together to jointly prosecute securities fraud class actions. In fact, the firms served as Co-Lead Counsel in *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, No. 13-cv-00157 (E.D. Va.), in which they recently achieved a recovery of $42 million for investors (pending court approval).

As a result of the firms' extensive experience in litigation involving issues similar to those raised in the instant action, the Perrigo Institutional Investor Group's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of counsel by the Perrigo Institutional Investor Group, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Perrigo Institutional Investor Group respectfully requests that the Court issue an Order: (1) appointing the Perrigo Institutional Investor Group as Lead Plaintiff for the Class; (2) approving its selection of Pomerantz and Bernstein Litowitz to serve as Co-Lead Counsel for the Class; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: July 18, 2016

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*/s/ Michael B. Himmel*

Michael B. Himmel
Michael T.G. Long
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com

*Liaison Counsel for the Perrigo Institutional Investor Group*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
Ten South LaSalle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com


**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gerald H. Silk
(*pro hac vice* application forthcoming)
Avi Josefson
(*pro hac vice* application forthcoming)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com


*Counsel for the Perrigo Institutional Investor Group and Proposed Co-Lead Counsel for the Class*