**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
East Tower, Suite 500
Washington, DC  20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Dan Kleinerman and*
*Proposed Lead Counsel for the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---------------------------------------X
ROOFERS' PENSION FUND, on behalf of     :
itself and all others similarly situated,
                                         :
    Plaintiff,
                                         :    CIVIL ACTION NO:
v.                                            2:16-CV-02805-MCA-LDW
                                         :
JOSEPH C. PAPA and PERRIGO
COMPANY PLC,                             :

    Defendants.                          :
                                         :
---------------------------------------X

**MEMORANDUM IN SUPPORT OF MOTION OF DAN KLEINERMAN**
**FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

1

2156879.1

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................3

II. BACKGROUND ...................................................................................................5

III. ARGUMENT.........................................................................................................9

    A. Mr. Kleinerman Satisfies the Procedural Requirements for Appointment as Lead Plaintiff ................................................................9

    B. Mr. Kleinerman Satisfies the Legal Prerequisites for Appointment as Lead Plaintiff ..............................................................10

        1. Mr. Kleinerman Is Presumptively the Most Adequate Plaintiff .........10

        2. Mr. Kleinerman Satisfies the Requirements of Rule 23 ......................12

    C. The Court Should Appoint Cohen Milstein as Lead Counsel..............14

IV. CONCLUSION....................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 13

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ....................................................................................... 13

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ................................................................................... 13

*In re Able Labs Sec. Litig.*,
   425 F. Supp. 2d 562 (D.N.J. 2006) ......................................................................... 12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................................... 12

*In re Datatec Sys. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J.
   Nov. 28, 2007) ........................................................................................................ 14

*Morrison v. National Australia Bank*,
   561 U.S. 247 (2010) .................................................................................................4

**STATUTES**

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

Fed. R. Civ. P. 23 ................................................................................................... 11, 12, 13

**2156879.1**

## I. INTRODUCTION

Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and for the reasons set forth below, Dan Kleinerman ("Movant") respectfully moves this Court for an Order appointing him to serve as Lead Plaintiff on behalf of himself and all others similarly situated who purchased the securities of Perrigo Company plc ("Perrigo" or the "Company") (on the U.S. exchange)[1] between April 21, 2015 and May 11, 2016, inclusive (the "Class Period"). Movant also seeks appointment of the law firm of Cohen Milstein Sellers & Toll ("Cohen Milstein") as Lead Counsel.

The complaint in the above-captioned action (the "Complaint") has been filed against Perrigo and its former Chief Executive Officer ("CEO"), Joseph Papa (together with the Company, "Defendants"), for violations of the federal securities laws. The Complaint is predicated on Defendants' materially false and misleading statements concerning the Company's financial condition during the Class Period.

Mr. Kleinerman suffered losses[2] totaling approximately $28.6 million during

---

[1] Under the U.S. Supreme Court's decision in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), claims under the federal securities laws can only proceed for purchases of securities listed on an American stock exchange. 561 U.S. at 273.

[2] The losses suffered by Movant, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question that generally cannot be determined at this stage of the litigation. The

4

the Class Period as a result of Defendants' misleading conduct. He is unaware at this time of any other movant with a greater loss. Thus, under Section 21D of the Exchange Act, he is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because he has "the largest financial interest in the relief sought by [the] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Mr. Kleinerman is represented in this action by Cohen Milstein, which is seeking appointment as Lead Counsel and is eminently experienced and qualified to prosecute securities class actions such as this one.

## II. BACKGROUND

This federal securities class action has been brought on behalf of purchasers of Perrigo's publicly traded common stock (on the U.S. exchange) during the Class Period, as well as on behalf of all such investors in Perrigo common stock as of November 13, 2015, which was the deadline for Perrigo investors to tender shares in connection with a tender offer made by Mylan N.V. ("Mylan"). The Complaint asserts claims against Defendants for violations of Sections 10(b), 14(e), and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

As alleged in the Complaint, Perrigo manufactures generic drugs and other over-the-counter medications. On April 8, 2015, competing drug manufacturer

---

approximate losses can, however, be determined from the executed certifications required under Section 21D of the Exchange Act, and based upon reference to the prices of the Company's securities. *See* Declaration of Daniel S. Sommers in Support of Motion of Dan Kleinerman ("Sommers Decl."), at Ex. B.

Mylan approached the Perrigo Board of Directors with an offer to purchase Perrigo for $205 per share – a nearly 30% premium to the Company's total market capitalization. Mylan's offer was well-received by investors, and Perrigo's stock price increased to as high as $215 per share in intraday trading on April 8.

However, on April 21, 2015, the first day of the Class Period, Perrigo rejected Mylan's offer and falsely represented to investors that it "substantially undervalues Perrigo and its growth prospects," and that the offer "does not take into account the full benefits of the Omega Pharma acquisition." Although Mylan subsequently raised its offer to approximately $235 per share, Perrigo continued to engage in a public campaign over the next six months to convince shareholders to reject Mylan's proposal. Perrigo cited the 5-10% in organic revenue growth that it would achieve as a standalone company, as well as significant synergies from Perrigo's March 2015 acquisition of a company named Omega Pharma N.V. ("Omega"), among other things, as reasons to reject Mylan's offer.

According to the Complaint, these statements, which caused a majority of Perrigo's shareholders to reject Mylan's offer, were materially false and misleading. In truth, Defendants knew or recklessly disregarded that: (1) Mylan's offer did not undervalue Perrigo; (2) Perrigo would not be able to achieve 5-10% organic growth as a standalone company; (3) the Company's "durable competitive position and durable growth strategy" was rapidly deteriorating; and (4) Perrigo

6

was experiencing serious problems integrating the Omega acquisition and, in fact, significantly overpaid for Omega's business.

Convinced by Perrigo's strong opposition to Mylan's tender offer, on November 13, 2015, the majority of the Company's shareholders declined to tender their shares, causing the tender offer to fail and the price of Perrigo shares to fall by 6% from $156.55 per share to $146.90 per share.

On February 18, 2016, Perrigo reported fourth quarter 2015 revenue, margins, earnings, and cash flow lower than investors had been led to expect, and decreased earnings guidance for 2016. The Company also announced the sudden need to restructure parts of the Omega business, as well as a $185 million impairment charge related to Omega's assets. On this news, Perrigo shares fell $14.77 per share, or 10%, to close at $130.40 per share.

Then, on April 22, 2016, Reuters reported that Perrigo's longtime CEO, Defendant Papa, would be appointed as the new CEO of competing pharmaceutical company Valeant Pharmaceuticals. The news that Papa would be leaving Perrigo after spending the better part of the prior year assuring investors of the strength of Perrigo's business caused the price of the Company's shares to fall from $128.68 per share to $121.35 per share, or almost 6%.

The Complaint further alleges that on April 25, 2016, before the market opened, Perrigo confirmed that Defendant Papa was, in fact, resigning to become

7

2156879.1

Valeant's new CEO. The Company also dramatically lowered its earnings guidance for 2016 and released weak preliminary first-quarter 2016 results. The Company attributed its poor financial performance to increased competitive pressures and weaker than expected performance within Omega. Finally, Perrigo disclosed issues with the integration of Omega, and another impairment charge associated with the Omega acquisition in addition to the $185 million charge the Company had taken just two months prior. This news caused the price of Perrigo shares to fall an additional $21.95 per share, or 18%, from $121.35 per share to $99.40 per share.

Finally, the Complaint alleges that on May 12, 2016, Perrigo announced a first quarter net loss of $0.93 per share, which the Company largely attributed to an additional $467 million impairment charge relating to the Omega acquisition. Following the announcement of Perrigo's financial results, the Company's newly appointed CEO, John Hendrickson, stated that the Company's "recent track record of performance against our own expectations is unacceptable." Hendrickson also indicated that he would be targeting "realistic" forecasts the Company could meet – an acknowledgement that the Company had asserted unrealistic and unattainable financial goals in order to defeat Mylan's takeover during the prior year. As a result of these disclosures, Perrigo shares fell $3.71 per share, or 4%.

2156879.1

## III. ARGUMENT

As discussed below, Mr. Kleinerman satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as Lead Plaintiff. Additionally, Movant seeks appointment of Cohen Milstein as Lead Counsel for the Class.

### A. Mr. Kleinerman Satisfies the Procedural Requirements for Appointment as Lead Plaintiff

Section 21D of the Exchange Act, 15 U.S.C. § 78u-4, establishes a procedure for the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on May 18, 2016. *See* Sommers Decl. Ex. A.

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on July 18, 2016. Mr. Kleinerman has moved within the statutory 60-day time period. His motion contains the required certification setting forth, *inter alia*, his transactions in the Company's shares that are the subject of this action, and indicates that he has reviewed a complaint filed in the action and is willing to serve as a representative party on behalf of the class. *See* Sommers Decl. Ex. B; *see also* Sommers Decl. Ex. C (Declaration of Dan Kleinerman ("Kleinerman Decl.")) ¶¶ 3-4. In addition, Mr. Kleinerman has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Cohen Milstein resume at Sommers Decl. Ex. D. Cohen Milstein has developed an excellent reputation for successfully prosecuting federal securities class actions, including before courts in this District.

### B. Mr. Kleinerman Satisfies the Legal Prerequisites for Appointment as Lead Plaintiff

#### 1. Mr. Kleinerman Is Presumptively the Most Adequate Plaintiff

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Mr. Kleinerman satisfies each of these requirements.  The losses attributed to Mr. Kleinerman's purchases of the Perrigo shares that are the subject of this action amount to approximately $28.6 million.[3]  Mr. Kleinerman believes he has the largest financial interest in the relief sought by the Class.  Further, he is willing to actively participate in the leadership of this litigation through both personal involvement and consultation with his chosen counsel.  Kleinerman Decl. ¶ 4.

Because Mr. Kleinerman possesses a significant interest in the outcome of this litigation, he is presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  He is both qualified to represent the class and willing to

---

[3]   A copy of Mr. Kleinerman's certification is attached to the Sommers Decl. as Exhibit B.

2156879.1

serve as a representative party. In addition, he has selected counsel who is highly experienced in prosecuting securities class actions such as this one. Accordingly, Mr. Kleinerman satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and the instant motion should be granted.

### 2. Mr. Kleinerman Satisfies the Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001); *In re Able Labs Sec. Litig.*, 425 F. Supp. 2d 562, 568 (D.N.J. 2006). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *Cendant*, 264 F.3d at 263.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that

12

2156879.1

the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). "'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Id.* at 296 (quoting *Baby Neal*, 43 F.3d at 58). The typicality requirement is plainly satisfied in the instant case, where Movant seeks the same relief and advances the same legal theories as other class members.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Beck*, 457 F.3d at 296 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "It 'assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Id.* (quoting *Baby Neal*, 43 F.3d at 55).

Mr. Kleinerman is an adequate representative for the class. He purchased shares of Perrigo during the Class Period and, like other putative class members, these purchases resulted in a loss when the Company's share price declined as a

13

result of Defendants' disclosures of the truth concerning their prior misstatements. Moreover, Mr. Kleinerman has submitted a declaration indicating that he has been informed of the duties and responsibilities of serving as a lead plaintiff and class representative and is willing to do so. Kleinerman Decl. ¶ 4. Moreover, Mr. Kleinerman has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### C. The Court Should Appoint Cohen Milstein as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Mr. Kleinerman has selected Cohen Milstein to serve as Lead Counsel, and appointing it as such would be prudent to protect the interests of the class.

As another court in this District concluded and as detailed in its firm resume, *see* Sommers Decl. Ex. D, Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. *In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *19 (D.N.J. Nov. 28, 2007) (Brown, C.J.) (granting

14

final approval of settlement of case where Cohen Milstein was lead counsel, noting that lead counsel were "highly skilled attorneys with experience in securities class action litigation"). Thus, the Court may be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## IV. <u>CONCLUSION</u>

Based on the foregoing, Mr. Kleinerman respectfully requests that the Court: (i) appoint him as Lead Plaintiff; (ii) appoint Cohen Milstein as Lead Counsel; and (iii) grant such other relief as the Court may deem to be just and proper.

Dated: July 18, 2016

**COHEN MILSTEIN SELLERS & TOLL PLLC**

　　/s/ Daniel S. Sommers　　
Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
East Tower, Suite 500
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Dan Kleinerman and Proposed Lead Counsel for the Class*

2156879.1

>Jacob Sabo
>**LAW OFFICE OF JACOB SABO**
>#3 Daniel Frisch St. (24th Floor)
>Tel-Aviv 64731
>Tel.: 03-7161555
>Fax: 03-7161556
>
>*Additional Counsel for Dan Kleinerman*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2016, I electronically filed the foregoing Memorandum in Support of Motion of Dan Kleinerman for Appointment of Lead Plaintiff and Lead Counsel with the Clerk of Court using ECF, which transmitted a copy of the foregoing to all counsel of record.

Dated: July 18, 2016 /s/ Daniel S. Sommers
Daniel S. Sommers

2156879.1