COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

[Proposed] Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROOFERS' PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>    vs.<br><br>JOSEPH C. PAPA, et al.,<br><br>                  Defendants. | No. 2:16-cv-02805-MCA-LDW<br><br>CLASS ACTION |

**REPLY OF HAREL INSURANCE COMPANY LTD.
IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................1

II.  ARGUMENT.........................................................................................3

    A.  Harel Insurance Is the Presumptive Lead Plaintiff .............................3

        1.  Harel Insurance Has the Largest Financial Interest Among the Competing Movants...................................................3

        2.  Harel Insurance Otherwise Satisfies Rule 23 ............................4

    B.  Neither the Perrigo Institutional Investor Group nor Mr. Kleinerman Should Be Appointed as Lead Plaintiff............................5

        1.  The Perrigo Institutional Investor Group Has Not Demonstrated Cohesiveness and Its Members Are Otherwise Atypical .....................................................................9

        2.  Mr. Kleinerman Is "Subject to Unique Defenses"...................13

    C.  The Court Should Deny Mr. Wilson's Motion ...................................15

III.  CONCLUSION........................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Buddy's Plant Plus Corp. v. Centimark Corp.*,
604 F. App'x 134 (3d Cir. 2015) ............................................................2

*George v. China Auto Sys. Inc.*,
No. 11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698 (S.D.N.Y.
July 3, 2013)..........................................................................................14

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..........................................................3, 4, 9

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ....................................................4

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015)
(Arleo, J.) ..........................................................................................4, 12

*In re Network Assoc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................14

*In re Peregrine Sys. Sec. Litig.*,
No. 02CV870-J (RBB), 2002 U.S. Dist. LEXIS 27690 (S.D. Cal.
Oct. 9, 2002) ....................................................................................3, 11

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ...............................................9, 10

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .................................................................13

*Randall v. Fifth St. Fin. Corp.*,
15-cv-7759 (LAK), 2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb.
1, 2016) ..................................................................................................4

**Page**

*Shi v. SINA Corp.*,
   No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y.
   July 1, 2005)......................................................................................................14

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib.*
   *Corp.*,
   No. 11-6247(JBS/KMW), 2012 U.S. Dist. LEXIS 118693 (D.N.J.
   Aug. 22, 2012) (Simandle, C.J.) ..........................................................................2

*Sun v. Han*,
   No. 15-703, 2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14, 2015)
   (Linares, J.) ..........................................................................................................3

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D.
   Ariz. Apr. 7, 2008) ......................................................................................10, 14

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ..............................................................................13

Proposed Lead Plaintiff Harel Insurance Company Ltd. ("Harel Insurance"), respectfully submits this reply memorandum of law in further support of its motion for appointment as lead plaintiff.[1]

## I.   PRELIMINARY STATEMENT

Harel Insurance has the undisputed largest financial interest for the primary claim in this case, which concerns statements made regarding a tender offer by Mylan in connection with its efforts to acquire Perrigo. The tender offer failed on November 13, 2015. Harel Insurance has also suffered a LIFO loss of more than $22.4 million ($25.8 million FIFO loss) on its Class Period purchases of Perrigo stock, making its purchaser claim losses larger than any individual Perrigo Institutional Investor Group member, and only nominally smaller than the losses claimed by Mr. Kleinerman.

---

[1]   Unless otherwise indicated, all defined terms shall have the same meaning as set forth in the Opposition of Harel Insurance Company Ltd. to Competing Motions for Appointment as Lead Plaintiff, dated August 1, 2016. Dkt. No. 19. Citations to Harel Insurance's opposition brief will be set forth as "Harel Insurance Opp. at __." Citations to the Memorandum of Points and Authorities in Further Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel and in Opposition to Competing Motions of the Perrigo Institutional Investor Group, Dkt. No. 17, will be set forth as "PIIG Opp. at __." Citations to the Memorandum in Further Support of Motion of Dan Kleinerman for Appointment of Lead Plaintiff and Lead Counsel, and in Opposition to the Competing Motions, Dkt. No. 18, will be set forth as "Kleinerman Opp. at __." Citations to the Memorandum of Law in Further Support of Michael Wilson's Motion for Consolidation of Related Actions and Appointment as Lead Plaintiff, Dkt. No. 20, will be set forth as "Wilson Opp. at __."

And, critically, it is the *only* movant whose adequacy and typicality –
statutory requirements for any Lead Plaintiff – have not been challenged.[2]  Thus, as
the only lead plaintiff candidate that satisfies *all* of the PSLRA's requirements for
consideration as lead plaintiff, its motion should be granted.

As previously argued, the other motions should be denied because, aside
from their smaller financial interests, the other movants are atypical and cannot
adequately represent the class.  *See* Harel Insurance Opp. at 8-28.  Whether it is a
lack of cohesiveness in their grouping, failure to provide any showing of authority
to sign and/or bind the entities to the litigation, inaccuracies in their representations
to the Court, inability to demonstrate reliance, or any of the other issues previously
identified, these are issues that defendants could – and undoubtedly would –
exploit at class certification.  Importantly, whether the defenses ultimately would
be successful, is not outcome determinative; one need "only to show a degree of
likelihood that a unique defense might play a significant role at trial" so as to
"protect the absent class members from the expense of litigating defenses
applicable to lead plaintiffs but not to the class as a whole."  *Steamfitters Local 449
Pension Fund v. Cent. European Distrib. Corp.*, No. 11-6247(JBS/KMW), 2012

---

[2]      Inexplicably, Mr. Kleinerman noted that he first intends to oppose Harel
Insurance's motion on reply.  *See* Kleinerman Opp. at 31 n.15.  To the extent Mr.
Kleinerman attempts to do so, those arguments must be deemed waived and
rejected by this Court.  *See Buddy's Plant Plus Corp. v. Centimark Corp.*, 604 F.
App'x 134, 142 n.4 (3d Cir. 2015) ("Because CentiMark raises this argument for
the first time in its reply brief, we consider the contention to be waived.").

U.S. Dist. LEXIS 118693, at *27 (D.N.J. Aug. 22, 2012) (Simandle, C.J.); *see also*

*In re Peregrine Sys. Sec. Litig.*, No. 02CV870-J (RBB), 2002 U.S. Dist. LEXIS

27690, at *31-33 (S.D. Cal. Oct. 9, 2002) (simply "[t]he fact that plaintiffs will be

subject to such defenses renders their claims atypical of other class members."").

Indeed, the legitimacy of these concerns is underscored by the fact that they were

not only raised by Harel Insurance, but the Perrigo Institutional Investor Group and

Mr. Kleinerman repeated them – almost verbatim – against each other.

Accordingly, Harel Insurance respectfully submits that its motion should be

granted in its entirety.

## II.    ARGUMENT

### A.    Harel Insurance Is the Presumptive Lead Plaintiff

#### 1.    Harel Insurance Has the Largest Financial Interest Among the Competing Movants

The court's first duty in appointing a lead plaintiff is to identify "the movant

that is presumptively entitled to that status."  *In re Cendant Corp. Litig.*, 264 F.3d

201, 262 (3d Cir. 2001).  The process begins with the identification of the movant

with "the largest financial interest in the relief sought by the class."  *Id*. at 223.

The PSLRA "provides no specific formula for courts to follow" to make this

determination.  *Sun v. Han*, No. 15-703, 2015 U.S. Dist. LEXIS 64060, at *6

(D.N.J. May 14, 2015) (Linares, J.) ("The determination of which candidate has

the largest loss is by far the most important factor in determining who should be

the lead plaintiff").  In cases alleging §14 violations, that determination is based on the "number of shares held."  *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009).  Under that analysis, Harel Insurance is entitled to the presumption, as it held **over 660,000 shares** of Perrigo stock on November 13, 2015 – more than twice the number of shares of any other individual movant.  In addition to holding the largest number of shares for purposes of the Section 14(e) claim at issue here, Harel Insurance also suffered substantial §10(b) losses – larger than any individual Perrigo Institutional Investor Group member, and only nominally smaller than the losses claimed by Mr. Kleinerman.  *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding losses of $2.3 million and $1.9 million to be "roughly equal" and appointing investor with smaller claimed loss); *see also Randall v. Fifth St. Fin. Corp.*, 15-cv-7759 (LAK), 2016 U.S. Dist. LEXIS 15719, at *9 (S.D.N.Y. Feb. 1, 2016) (reasoning that "[a]s the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption.").

## 2.    Harel Insurance Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest among the competing movants, Harel Insurance "otherwise satisfies Rule 23." *Cendant*, 264 F.3d at 263. Once the lead plaintiff presumption is triggered, "the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job" of protecting the interests of the class. *See id*. at 268; *see also In re Enzymotec Ltd.*

*Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *4 (D.N.J. Mar. 3, 2015) (Arleo, J.) (same).  Here, none of the competing movants has raised any arguments that call into question Harel Insurance's typicality or adequacy – let alone provided any proof to rebut the presumption.  By contrast, both the Perrigo Institutional Investor Group and Mr. Kleinerman are replete with conflicts and/or subject to various unique defenses that render them both atypical and inadequate to represent the class.

> ### B.     Neither the Perrigo Institutional Investor Group nor Mr. Kleinerman Should Be Appointed as Lead Plaintiff

As the table below makes clear, Harel Insurance held the most shares on November 13, 2015, claims a $22,467,481 LIFO loss, and no challenges have been made to its Rule 23 qualifications.  In contrast, the other movants are beset by numerous conflicts and other disqualifying issues:

| Investor | Alleged LIFO Loss | Shares Held on November 13, 2015 | Rule 23 Challenges |
|---|---|---|---|
| **Harel Insurance** | **$22,467,481** | **660,943** | **none** |
| Clal Insurance Company Ltd. | $11,264,327 | 265,656 | • improperly created group<br>• insufficient proof of cohesion<br>• size of group too large to work together effectively<br>• multi-counsel structure<br>• inaccurate and deficient certification<br>• failure to assert that all shares were purchased in U.S. |

| Investor | Alleged LIFO Loss | Shares Held on November 13, 2015 | Rule 23 Challenges |
|---|---|---|---|
| | | | • conflict created by relationship between Bank Hapoalim and Perrigo |
| Clal Pension and Provident Ltd. | $7,889,500 | 329,607 | • improperly created group<br>• insufficient proof of cohesion<br>• size of group too large to work together effectively<br>• multi-counsel structure<br>• inaccurate and deficient certification<br>• failure to assert that all shares were purchased in U.S.<br>• conflict created by relationship between Bank Hapoalim and Perrigo<br>• failure to demonstrate standing |
| Migdal Insurance Company Ltd. | $15,000,438 | 101,718 | • improperly created group<br>• insufficient proof of cohesion<br>• size of group too large to work together effectively<br>• multi-counsel structure<br>• inaccurate certification<br>• failure to assert that all shares were purchased in U.S.<br>• relied on factors other than defendants' |

| Investor | Alleged LIFO Loss | Shares Held on November 13, 2015 | Rule 23 Challenges |
|---|---|---|---|
| | | | misstatements in making investment decisions |
| Migdal Makefet Pension and Provident Funds Ltd. | $15,861,740 | 77,500 | • improperly created group<br>• insufficient proof of cohesion<br>• size of group too large to work together effectively<br>• multi-counsel structure<br>• failure to assert that all shares were purchased in U.S.<br>• relied on factors other than defendants' misstatements in making investment decisions<br>• failure to demonstrate standing |
| Meitav Dash Provident and Pension Fund Ltd. | $9,913,168 | 60,979 | • improperly created group<br>• insufficient proof of cohesion<br>• size of group too large to work together effectively<br>• multi-counsel structure<br>• inaccurate certification<br>• failure to assert that all shares were purchased in U.S.<br>• relied on factors other than defendants' misstatements in making investment decisions |
| Atudot Pension Fund for | $444,703 | 10,887 | • improperly created group |

| Investor | Alleged LIFO Loss | Shares Held on November 13, 2015 | Rule 23 Challenges |
|---|---|---|---|
| Employees and Independent Workers Ltd. | | | <ul><li>insufficient proof of cohesion</li><li>multi-counsel structure</li><li>size of group too large to work together effectively</li><li>inaccurate and deficient certification</li><li>failure to assert that all shares were purchased in U.S.</li><li>conflict created by relationship between Bank Hapoalim and Perrigo</li></ul> |
| Mr. Kleinerman | $28,630,628 | No data provided | <ul><li>unique trading strategy</li><li>inaccurate certification</li><li>beneficiary of insider trading scandal</li><li>failure to assert that all shares were purchased in U.S.</li><li>insufficient data to determine number of shares held as of November 13, 2015</li></ul> |
| Mr. Wilson | $2,393 | No data provided | <ul><li>smallest financial interest</li><li>insufficient data to determine number of shares held as of November 13, 2015, if any</li><li>engaged in procedural gamesmanship to gain</li></ul> |

| Investor | Alleged LIFO Loss | Shares Held on November 13, 2015 | Rule 23 Challenges |
|---|---|---|---|
| | | | control of piece of litigation<br>• subclass of put option sellers not required |

### 1. The Perrigo Institutional Investor Group Has Not Demonstrated Cohesiveness and Its Members Are Otherwise Atypical

Courts are to scrutinize "the way in which a group seeking to become lead plaintiff was formed" as well as "the manner in which it is constituted." *Cendant,* 264 F.3d at 266; *see also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (noting that many courts are "skeptical" of groups that are the "product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA."). Additionally, *Cendant* instructs that "courts should generally presume that groups with more than five members are too large to work effectively." *Id.* at 267.

Here, the six member Perrigo Institutional Investor Group is an amalgamation of Israeli insurance companies, pension funds and asset managers (for 76 different trading accounts) which has failed to provide sufficient proof of its cohesiveness. *See* Harel Insurance Opp. at 10-11; Kleinerman Opp. at 2-3. In fact, their purported "Joint Declaration" – which they argue provides "detailed evidence regarding its adequacy to represent the class" (PIIG Opp. at 6) – in

reality, raises more questions than it answers.  For example, the fact that the Joint Declaration "reflects" that the Perrigo Institutional Investor Group "is prepared to coordinate its efforts, oversee counsel, and diligently prosecute this litigation for the benefit of the class" (*Id.*), does not provide any details on **how** the group came together, **how** it can or will work cohesively, **why** the action should be led by more than one "dedicated and sophisticated institutional investor," and **what** the purpose or benefit is of its proposed multiple-counsel structure.  *See* Harel Insurance Opp. at 12-14.  These deficiencies, rather, emphasize the obvious: the members of the Perrigo Institutional Investor Group were cobbled together by counsel for the sole purpose of aggregating their losses in an attempt to gain control of the litigation – a maneuver that is proscribed by the Third Circuit and other courts in this District.

Further, even when considered individually, each of the six entities that make up the Perrigo Institutional Investor Group suffers from debilitating conflicts of interest that render them inadequate to represent the class.[3]  *See* Harel Insurance Opp. at 18-22.  First, publicly-available evidence demonstrates that both Meitav and Migdal relied on factors other than defendants' false and misleading statements in deciding whether to purchase or hold Perrigo stock during the class

---

[3]  The Perrigo Institutional Investor Group has not requested that the Court consider its individual members independently from the group – nor should it.  The Perrigo Institutional Investor Group chose to move together and should be evaluated as such. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008); *see also Petrobras*, 104 F. Supp. 3d at 622.

period.  Public documents show that:

- Meitav considered the fact that Mylan lowered its approval threshold by 30% to make it easier to gain control of Perrigo to be "the straw that broke the camel's back" in declaring its opposition to the purchase offer;

- Migdal warned against a merger between Mylan and Perrigo based on how Mylan behaved in its earlier attempt to acquire Teva Pharmaceutical Investments, Ltd.; and

- as a result of a meeting with Mylan's Chief Financial Officer, Migdal may have had access to non-public information which could have impacted its investment decision regarding its Perrigo securities.

*Id.*; Kleinerman Opp. at 13-15.[4]

As such, neither can credibly argue that they purchased their Perrigo securities in reliance on Defendants' misstatements.  *See Peregrine*, 2002 U.S. Dist. LEXIS 27690, at *31-32.

Next, the self-described Canaf-Clal entities are pervaded by conflicts as a result of their connection to Bank Hapoalim, which controls 10% of Clal Insurance

---

[4]     Kleinerman additionally argues that "Migdal and Clal (as well as [unidentified] entities related to Harel) are also exposed to serious reliance defenses" because Migdal and Clal benchmarked their investments to the TA-25 index, of which Perrigo comprised approximately 10%, such that the potential rise in the TA-25 as a result of a favorable merger would be greater than the rise in their own portfolios' performance such that Migdal and Clal would be harmed. Kleinerman Opp. at 15-16.  This argument falls far short of the "proof" needed to rebut the presumption against Harel Insurance.  First, it fails to note any supposed Harel entities this concerns and if it even concerns Harel Insurance, the movant here.  Second, the cited article (according to Kleinerman's translation) discusses Israeli institutional investors *in general* without any mention that this strategy was *actually employed* by any Harel related entities or Harel Insurance.  As Kleinerman notes, all that the article says about Harel is that it was a large holder of Perrigo stock.

Enterprises Holdings, Ltd., which, in turn, controls the Canaf-Clal entities.  As detailed more fully in Harel Insurance's Opposition, at all times relevant to the claims asserted in this case, Bank Hapoalim has been (and is) involved in various ongoing business relationships with Perrigo that did (or could) grant Clal's controlling shareholders access to non-public information concerning Perrigo's financial condition and future prospects.  *See* Harel Insurance Opp. at 22-23. Specifically, Bank Hapoalim entities served as an underwriter to a notes offering in May 2013 and as a lender to Perrigo in December 2014.  *Id*. at 22.  Further, the Certifications submitted on behalf of these entities are insufficient, as they are signed by what appears to be an entity (Canaf) entirely unrelated to the moving entity.  *See id*. at 4; *see also Enzymotec Ltd.*, 2015 U.S. Dist. LEXIS 25720, at *9 ("Of course . . . the PSLRA does not explicitly require the signer of a certification on behalf of a corporation to identify his/her position within the company and provide a basis for his/her signing authority.  It seems plain to this Court, however, that any proper certification would include such basic information.").

Finally, both Migdal Makefet and Clal Pension have not established their standing to represent the interests of the class, as neither has made any representations that it beneficially owns the securities purchased or that it timely received assignments from its clients to pursue this action on their behalf, thus failing to establish an actual interest in the outcome of the litigation.  *See* Harel

Insurance Opp. at 23-24; *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108-109 (2d Cir. 2008) (recognizing that "the minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a property interest in, the claim" and concluding that investment advisor must show that its clients have "transferred ownership of, or title to, their claims to [it].").

These conflicts raise concerns about the individual members of the Perrigo Institutional Investor Group that defendants could – and undoubtedly would – challenge at class certification, which is a sufficient basis for denial of its motion. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (vacating order certifying the class finding that the proposed class representative "may be subject to unique defenses that could become a focus of the litigation, rendering her atypical and making class certification inappropriate.")

### 2.    Mr. Kleinerman Is "Subject to Unique Defenses"

In its opposition, Harel Insurance raises various concerns regarding Mr. Kleinerman's lead plaintiff candidacy that render him subject to unique defenses. *See* Harel Insurance Opp. at 26-28.   Most critically is Mr. Kleinerman's involvement in a 2009 insider trading scandal wherein his company engaged in a scheme to sell over a million shares of Bank Hapoalim stock in a single day on inside information, worth a total of NIS 20 million.  *See id*. at 27-28.   Not surprisingly, the Perrigo Institutional Investor Group raised the exact same concern

in its opposition as well.  *See* PIIG Opp. at 9.  While the scheme appears to have been directed by his partner, there is no doubt that Mr. Kleinerman was intended to be a beneficiary since he was a 20% owner of the company that made the trades. This alone calls into question his "[h]onesty and trustworthiness," providing further support for this Court to reject his motion.  *See Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *13-14 (S.D.N.Y. July 1, 2005); *In re Network Assoc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (refusing to appoint lead plaintiff movant that was under investigation for fraud given that it must serve "in a position of trust and confidence.").  In any event, Defendants will undoubtedly spend considerable time arguing how this affects Mr. Kleinerman's credibility (and Mr. Kleinerman arguing how it should not), thereby subjecting him – and him alone – to this unique defense.

Further, Mr. Kleinerman engaged in an unusual trading pattern over the course of a nine-month period, completing over 175 transactions in Perrigo common stock – often buying and selling thousands of shares *in a single day*. *See* Harel Insurance Opp. at 26-27.  These abnormal trading patterns will raise typicality and adequacy concerns regarding his reliance on material misstatements and omissions that defendants will challenge.  *See Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *17-18 (disqualifying high volume trader because of the applicability of this unique defense); *see also George v. China Auto Sys. Inc.*, No.

11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698, at *19 (S.D.N.Y. July 3, 2013) ("Given the trading patterns of the . . . plaintiffs, it is certain that defendants will search out every individual angle and defense in relation to them.").

###    C.    The Court Should Deny Mr. Wilson's Motion

Despite overwhelming authority to the contrary, Mr. Wilson nevertheless continues to seek appointment as "lead plaintiff to represent Perrigo Put Option Sellers."  Wilson Opp. at 1.  As articulated in the memoranda submitted by both Harel Insurance and the Perrigo Institutional Investor Group, courts around the country routinely deny such requests.  *See* Harel Insurance Opp. at 29-30; PIIG Opp. at 11-12.  This Court should do the same.

## III.   CONCLUSION

For the foregoing reasons, Harel Insurance respectfully requests that its motion be granted in full.

DATED:  August 8, 2016                Respectfully submitted,

                                      COHN LIFLAND PEARLMAN
                                        HERRMANN & KNOPF LLP
                                      PETER S. PEARLMAN


                                      _____*s/ Peter S. Pearlman*_____
                                      PETER S. PEARLMAN

                                      Park 80 West – Plaza One
                                      250 Pehle Avenue, Suite 401
                                      Saddle Brook, NJ  07663
                                      Telephone:  201/845-9600
                                      201/845-9423 (fax)

                                      [Proposed] Liaison Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 8, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

_s/ Peter S. Pearlman_
PETER S. PEARLMAN
