<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROOFERS' PENSION FUND, on behalf of itself and all others similarly situated,**

*Plaintiff,*

v.

**JOSEPH C. PAPA and PERRIGO CO. PLC,**

*Defendants.*

**Civil Action No. 16-2805**

**OPINION**

     **THIS MATTER** comes before the Court by way of Movant Dan Kleinerman's objection to the Opinion and Order of the Hon. Leda D. Wettre, U.S.M.J., dated February 10, 2017, which appointed the Perrigo Institutional Investor Group (the "Perrigo Group") as lead plaintiff and approved their selection of lead counsel. Dkt. No. 69. In her Opinion, Judge Wettre found that the Perrigo Group was the presumptively adequate lead plaintiff and that Kleinerman failed to show that the Perrigo Group will be subject to unique defenses. Kleinerman claims that Judge Wettre applied the wrong legal standard and incorrectly applied that standard to the evidence in support of the defenses. Because the Court agrees with Judge Wettre's decision, it is **ADOPTED** in full.

## I.   BACKGROUND

     In this putative class action, Plaintiff Roofers' Pension Fund alleges that Defendants Perrigo Company PLC ("Perrigo"), a pharmaceutical manufacturer, and Joseph Papa, Perrigo's former board chairman and CEO, violated sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). 15 U.S.C. §§ 78j(b), 78n(e), 78t(a).

     The complaint alleges that, in April 2015, Perrigo and Papa sought to defeat a tender offer by nonparty Mylan N.V. ("Mylan") by representing to shareholders that the Mylan offer

undervalued Perrigo, that Perrigo would achieve organic revenue growth of 5 to 10 percent on its own, and that Perrigo's recent acquisition of another company would produce additional beneficial financial results.  In November 2015, a majority of Perrigo's shareholders rejected Mylan's offer. In early 2016, however, Perrigo issued two quarterly reports with negative results. The reports lowered projected earnings, indicated a need to restructure the recently-acquired business and take substantial impairment charges, and announced a quarterly net loss.  During that time, Papa left Perrigo to become CEO of one of its competitors.  The complaint claims that Perrigo and Papa were aware that their reasons for rejecting Mylan's offer were false and misleading, and presents a putative class of purchasers and investors of Perrigo common stock between April 2015 and May 2016 (the "Class Period").

In July 2016, four class members filed competing motions for appointment as lead plaintiff and to select class counsel: the Perrigo Group, Dan Kleinerman, Michael Wilson, and Harel Insurance Company Ltd.  Dkt. Nos. 5, 6, 7, 9.  The Perrigo Group is comprised of several institutional investors:  Meitav DS Provident Funds and Pension Ltd ("Meitav"), Migdal Insurance Company Ltd., Migdal Makefet Pension and Provident Fund Ltd. (the Migdal entities are known collectively as "Migdal"), Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees and Independent Workers Ltd. (Atudot and the Clal entities are known collectively as "Canaf-Clal").  Perrigo Group Br. at 1, Dkt. No. 6-1.  In February 2017, Judge Wettre issued an Oral Opinion and Order appointing the Perrigo Group as lead plaintiff. Oral Opinion ("Op."), Dkt. No. 65; Order dated Feb. 10, 2017, Dkt. No. 64.

Because this case concerns a putative class action arising under the Exchange Act, the Private Securities Litigation Reform Act of 1995's ("PSLRA") rules governing the appointment of a lead plaintiff apply.  See 15 U.S.C. § 78u-4(a)(1).  The PSLRA establishes a two-step process

for appointing a lead plaintiff:  The court must first identify the presumptively adequate lead plaintiff, then give other members of the class a chance to rebut the presumption.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) & (II).

Under step one, a class member is the presumptive lead plaintiff if it makes a prima facie showing that it (1) is the movant or original filer of the complaint, (2) who has the largest financial interest in the case, and (3) otherwise satisfies Fed. R. Civ. P. 23(a)'s typicality and adequacy requirements.  Id. § 78u-4(a)(3)(B)(iii)(I); see also In re Cendant Corp. Litig., 264 F.3d 201, 263-64 (3d Cir. 2001) (citing id. § 78u-4(a)(3)(B)(iii)(I)(cc)).  The Perrigo Group had the largest financial interest of the four movants, Op. 6:16-8:6, and met Rule 23's requirements, id. 9:4-11:22.  The Perrigo Group accordingly became the presumptively adequate lead plaintiff.

Under step two, other class members can rebut a party's presumptive lead status by offering "proof" that, among other things, the lead plaintiff "is subject to unique defenses that render such plaintiff incapable of fairly representing the class."  Id. § 78u-4(a)(3)(B)(iii)(II)(bb).  Kleinerman argued that the Perrigo Group would be subject to three unique defenses.  He contended that the Perrigo Group members bought their shares in foreign markets, did not have beneficial title to the Perrigo shares, and did not rely on Papa and Perrigo's public statements when rejecting the Mylan tender offer.  Op. 16:12-17:11.  The first two defenses challenge standing, the third claims non-reliance.

Judge Wettre disagreed.  Quoting Beck v. Maximus, she stated, "a rebutting party must show 'some degree of likelihood that a unique defense will play a significant role at trial.'"  Op. 17:15-20 (quoting 457 F.3d 291, 300 (3d Cir. 2006)).  Applying that standard, Judge Wettre rejected the standing defenses because the Perrigo Group submitted a certification that all shares were traded on the New York Stock Exchange and were held by group members as beneficial

owners. Id. 17:21-18:2; see also Himmel Decl. Ex. A ¶¶ 8, 12, Dkt. No. 25-2.

Judge Wettre also rejected the non-reliance argument.  Kleinerman offered several public statements as evidence that the Perrigo Group members may have relied on information other than Defendants' public representations.  This included a news article from September 2015 in which Moshe Rabinan, a Meitav executive, gave reasons for rejecting the Mylan tender offer that did not expressly reference Papa or Perrigo's fraudulent statements; another news article opining that certain Perrigo Group members entities should reject the Mylan tender offer because the takeover could cause their portfolios to underperform in relation to a market index[1]; statements by a prominent analyst who works for a nonparty affiliate of Migdal that the Perrigo stock was overrated and that the Mylan offer would probably fail because a separate transaction which made the tender offer attractive broke down; and the possibility that Migdal representatives had "unique knowledge" about the offer because they attended an investor presentation with Mylan's CFO during the offer period.  See Opp'n Br. at 11-20, Dkt. No. 18.  Judge Wettre deemed these arguments "highly speculative," and noted alternatively that, "assuming these non-reliance arguments could be raised at trial, it is not clear that . . . the time needed to address them would be to the detriment of the other class members."  Op. 18:4, 12-16.  Since Kleinerman failed to rebut the prima facie showing, the Perrigo Group became lead plaintiff.  Kleinerman timely objected. Fed. R. Civ. P. 72(a); L.Civ.R. 72(c)(1)(A).

## II.  STANDARD OF REVIEW

Judge Wettre had jurisdiction to hear and determine the motion under 28 U.S.C. § 636.

---

[1] The article states that Migdal and Clal's investment portfolios are measured against the performance of an important Israeli stock market index, the TA-25.  The article explains that Mylan's takeover of Perrigo would cause the TA-25 index to rise at a higher rate than Migdal and Clal's portfolios, making it seem like their portfolios were underperforming the market.  Sommers Decl. Ex. 3, Dkt. No. 18-4.

Section 636(b)(1)(A) grants magistrate judges authority to consider non-dispositive pre-trial motions.  See 28 U.S.C. § 636(b)(1)(A); see also Ross v. Abercrombie & Fitch Co., No. 05-819, 2007 WL 895073, at *3 (S.D. Ohio Mar. 22, 2007) ("[A]ppointment of lead Plaintiff is not a dispositive matter."); Bhojwani v. Pistiolis, No. 06-13761, 2007 WL 9228588, at *2 (S.D.N.Y. July 31, 2007) (considering magistrate judge's lead plaintiff choice a nondispositive matter); In re Comverse Tech., Inc. Derivative Litig., No. 06-1849, 2006 WL 3511375, at *3 (E.D.N.Y. Dec. 5, 2006) (same).

On non-dispositive motions, a district court judge reviews timely objections and may modify or set aside any part of the magistrate judge's determination it finds to be "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a).  The clearly erroneous rule applies to the magistrate judge's findings of facts.  Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir.1992).  "[T]he phrase 'contrary to law' indicates plenary review as to matters of law."  Haines, 975 F.2d at 91.  "A decision is considered contrary to law if the magistrate judge has 'misinterpreted or misapplied applicable law.'" Merck Sharp & Dohme Corp. v. Sandoz, Inc., No. 12-3289, 2014 WL 1494592, at *7 (D.N.J. Apr. 16, 2014) (quoting Doe v. Hartford Life & Accident Ins. Co., 237 F.R.D. 545, 548 (D.N.J. 2006)).

Kleinerman argues that a different standard of review applies.  He maintains that motions to appoint lead plaintiffs are dispositive, and therefore reviewed de novo.  The Court find it unnecessary to resolve this dispute because, even if it accepts Kleinerman's proposal and reviews the record de novo, the Court would nevertheless affirm Judge Wettre's order to appoint the Perrigo Group.

III.   ANALYSIS

The Court now turns to the substance of the objections.  Kleinerman objects to Judge

Wettre's finding that he failed to rebut the Perrigo Group's presumptive adequacy.  He argues that he did so for two reasons, both of which turn on unique defenses.  He claims that Judge Wettre applied the wrong legal standard for unique defenses, and incorrectly applied that standard to the evidence he offered to show lack of standing and non-reliance.

### A.  Legal Standard for "Unique Defenses"

First, he claims that Judge Wettre applied the wrong legal standard for the unique defenses analysis.

Judge Wettre stated that the standard for evaluating whether a presumptive lead plaintiff should be disqualified because of a potential unique defense is whether the rebutting party shows "'some degree of likelihood that a unique defense will play a significant role at trial.'"  Op. 17:15-20 (quoting Beck, 457 F.3d at 300).  Kleinerman maintains that the standard is whether "there is some degree of probability that the defense might 'become a major focus' in the case."  Br. at 4 (quoting In re Enzymotec Ltd. Sec. Litig., No. 14-5556, 2015 WL 918535, at *2 (D.N.J. Mar. 3, 2015)).  Boiled down, he objects to Judge Wettre's use of "will" instead of "might" and "at trial" instead of "in the case."  This is a trivial difference.  In Beck, the Third Circuit considered a similar semantic quibble.  The court compared the standard it applied up that point (which Judge Wettre quoted) to the standard applied by other courts of appeals (which used language similar to Kleinerman's that "the defense might become a . . . major focus of the litigation") and concluded that, "[d]espite some variation in language, we believe all of these cases set forth standards that are, in substance, the same."  Beck, 457 F.3d at 300 (internal quotes omitted).  Then, to clarify any ambiguity, it settled on the phrasing, "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  As such, the wording used by Judge Wettre comports with the standard selected

by the Third Circuit in <u>Beck</u>.

Kleinerman responds that <u>Beck</u> concerned appointment of a lead plaintiff at the class certification stage, so the <u>Beck</u> standard should not apply. Another triviality. <u>Beck</u> appears to be the only standard for appointing lead plaintiffs, regardless of whether it is part of class certification or a standalone motion. In fact, the two cases Kleinerman cites in support of his proposition that a different test should apply both cite <u>Beck</u> in their standalone motions. <u>See</u> <u>Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.</u>, No. 11-6247, 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012) (quoting <u>Beck</u>); <u>In re Netflix, Inc., Sec. Litig.</u>, No. 12-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (citing <u>Beck</u>); <u>see also</u> <u>Sklar v. Amarin Corp. PLC</u>, No. 13-6663, 2014 WL 3748248, at *5 n.2 (D.N.J. July 29, 2014) (same); <u>Grodko v. Cent. European Distribution Corp.</u>, No. 12-5530, 2012 WL 6595931, at *3 (D.N.J. Dec. 17, 2012) (same). Kleinerman's argument is unpersuasive.

In sum, Kleinerman must provide proof that the Perrigo Group "is subject to a unique defense that is likely to become a major focus of the litigation." <u>Beck</u>, 457 F.3d at 301. He must show that the Perrigo Group's "interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." <u>Beck</u>, 457 F.3d at 297. He does not have to prove the defense, but he must provide enough evidence to show that it is not speculative or meritless. <u>Id.</u> at 300, 301. Ultimately, the question is whether he can show that the Perrigo Group will not do a "fair and adequate job" representing the class. <u>Cendant</u>, 264 F.3d at 268. With those principles in mind, the Court turns to Kleinerman's asserted unique defenses.

## B. Applicability of "Unique Defenses" Argument to the Perrigo Group

Kleinerman claims that Perrigo Group is subject to unique standing and non-reliance

defenses, and that Judge Wettre applied the law to the facts incorrectly.  The Court will address each defense in turn.

> ### 1.  *Standing*

Of the several standing arguments raised before Judge Wettre, Kleinerman objects only to her finding that he failed to demonstrate how the Perrigo Group did not own or have an interest in the securities at issue.

In order to have Article III standing, a plaintiff must adequately establish, among other things, "an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest)."  Sprint Comm's Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 273-74 (2008).  In securities fraud cases, a plaintiff must establish some interest in the securities fraud claim, such as a direct interest or interest by assignment, in order to bring that claim.  See id. at 285; Lowry v. Baltimore & Ohio R. Co., 707 F.2d 721, 729 (3d Cir. 1983) ("[T]he availability of such Rule 10b-5 actions should be limited to those investors who themselves have been defrauded, or who are express assignees of defrauded parties.").

Before Judge Wettre, the Perrigo Group submitted a declaration containing a list of its member's transactions in Perrigo securities during the Class Period.  See, e.g., Lieberman Decl. Ex B ¶ 5, Dkt. No. 6-4.  The list contains various unnamed investment accounts and a description of each trade, but it did not expressly identify the holders of those accounts.  Kleinerman claimed that the Perrigo Group's decision not to identify the accountholders raised doubts about its standing.  So the Perrigo Group submitted an additional declaration from executives of Meitav, Migdal, and Canaf-Clal stating that their companies traded the Perrigo securities through the listed investment accounts and "are the title holder[s] of the securities set forth in its respective Certification, and beneficially own[ ] said securities on behalf of their clients and/or customers."

Reply Decl ¶ 8, Dkt. No. 25-2. Kleinerman did not provide any evidence to contradict the declaration but said that the Perrigo Group's evidence was not good enough to dispel standing concerns. The Court disagrees.

The argument that the Perrigo Group must identify every accountholder and explain their arrangement on the chance it could show a lack of standing is speculative, as Judge Wettre correctly found. Despite having the burden of proof in rebutting the Perrigo Group's adequacy, Kleinerman has not supported his claim that the Perrigo Group members do not, in fact, have a right to the shares. Nor does he provide any substantiated allegation or reason to believe that the Perrigo Group executives' sworn declaration attesting to their ownership is incorrect or false. He has therefore not established a probability that the Perrigo Group would focus much, if any, time during the litigation establishing standing; or that such time would be spent at the expense of issues that are common and controlling for the rest of the class.

Kleinerman's lack of evidence distinguishes his argument from Steamfitters, the case on which he principally relies. 2012 WL 3638629, at *11. There, the court noted the Second Circuit's non-binding decision that investment advisors lack standing if they do not own the underlying securities. Id. at *10 (citing W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 103 (2d Cir. 2008)). The court found that the presumptive lead plaintiff could be subject to that kind of standing challenge. The court reached that conclusion because the rebutting class members provided evidence that several members of the presumptive lead plaintiff group did not own the securities. The evidence consisted of certifications and party admissions attesting to the fact that that several group members never received assignments of interest in the claim. Id. at *11 (citing certification, oral argument transcript, and admissions in presumptive lead plaintiff's brief). And the remaining group members who did have interests in the claim were susceptible to

unrelated procedural challenges.  Id. at *11-12.   As such, the standing argument in Steamfitters is distinguishable because it is grounded in colorable evidence, not speculation.

### 2. *Non-Reliance*

The Court turns next to Kleinerman's reliance argument.   Kleinerman argues that he has raised enough of a possibility that the Perrigo Group's did not rely on the Defendants' misstatements, and the possibility of that issue becoming a focus of the case, that the Perrigo Group cannot lead the class.

Both section 10(b) and 14(e) claims include a reliance requirement.  See In re ValueVision Int'l Inc. Sec. Litig., 896 F. Supp. 434, 448 (E.D. Pa. 1995) (internal citations omitted).  The traditional way a plaintiff demonstrates reliance is directly, i.e., "by showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation."  Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014) (internal citation omitted).  A plaintiff can also satisfy the reliance requirement by invoking a rebuttable presumption of reliance.  Basic Inc. v. Levinson, 485 U.S. 224, 245-47 (1988).  In such a case, anyone who buys or sells the stock at the market price may be considered to have relied on those misstatements.  Id. at 245.  The presumption is rebuttable, however.  "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."  Id. at 248.  "In that case, a plaintiff would have to prove that he directly relied on the defendant's misrepresentation in buying or selling the stock."  Halliburton, 134 S. Ct. at 2408.

Kleinerman claims that the various public statements he submitted create a sufficient question over whether the Perrigo Group relied on their own research or Papa and Perrigo's misstatements when voting against the Mylan tender offer.  The Court again disagrees.

The Court first considers the merit of Kleinerman's argument. See Beck, 457 F.3d at 300 ("If a court determines an asserted unique defense has no merit, the defense will not preclude class certification."). Successful non-reliance cases of the kind asserted by Kleinerman are "exceedingly rare," but they are possible. GAMCO Inv'rs, Inc. v. Vivendi, S.A., 927 F. Supp. 2d 88, 104 (S.D.N.Y. 2013), aff'd, 838 F.3d 214 (2d Cir. 2016). The evidence submitted by Kleinerman is meager, however. For example, Kleinerman strongly relies on the September 10, 2015 news article as evidence of non-reliance. The article contains a number of quotes from Rabinan, the Meitav executive, explaining why Meitav opposed the tender offer. Included in those reasons are Rabinan's belief that Perrigo shareholders should not "giv[e] up on such a company and a manager like Joseph Papa, who has generated amazing value for investors," Sommers Decl Ex 2 at 1, Dkt. No. 18-3; that Mylan will not be able to take advantage of synergy, id. at 2; and that Papa had "argued that the [tender offer] price was not right," concluding that he "think[s] that in this case, [Papa] acted correctly;" id. at 2. These reasons are similar to the misstatements in the Complaint. That is, Papa allegedly falsely claimed that the company had a "strong competitive position" and "strong organic growth," id. ¶¶ 20, 23; that the company was expecting "tremendous revenue synergies," id. ¶ 24; and that Mylan's tender offer was too low, id. ¶ 20. Moreover, the article came out in September 2015, after Papa and Perrigo made the bulk of these alleged misstatements. See Compl. ¶¶ 20-30. It is hard to see how this article is probative evidence that the Perrigo Group did not rely on Defendants' statements when it echoes those same statements.

The two other articles Kleinerman relies on are equally unhelpful. One article, where the author opined that the Perrigo Group members should reject the tender offer because it could hurt their performance relative to the TA-25 index, does not demonstrate non-reliance. It does not contain any statements from Perrigo Group members themselves and does not suggest that Papa's

statements would not have an impact on the Perrigo Group's rejection of the offer.  See Sommers Decl. Ex. 3.  The other article, where an analyst who works for a nonparty affiliate of Migdal predicted that the Mylan offer would probably break down and that the Perrigo stock price was off, also does not tie back to the Perrigo Group members themselves.[2]  Id. Exs. 4-7.  Were these few articles with quotes from non-parties enough to subject the Perrigo Group to a unique reliance defense, there is little chance any decent sized institutional investor would be able to serve as lead plaintiff.

Based on the record before the Court, it is not convinced that Kleinerman's non-reliance argument has merit.  At best, these articles support a speculative inference that the Perrigo Group did not rely, either directly or indirectly, on the alleged misstatements.  The Court agrees with Judge Wettre's finding on this point.

Kleinerman disagrees, and likens the statements here to those in In re Petrobas Securities Litigation, 104 F. Supp. 3d 618 (S.D.N.Y. 2015), where the presumptive lead plaintiff's public comments were a factor in finding that it was subject to reliance defenses.  But the disqualifying statements in that cases were substantially different than the ones here.  There, a member fund of the lead plaintiff group publicly stated that the defendant company was operating poorly; then, after the alleged fraud was revealed, the fund made "a significant investment" in the company after the class period, stating publicly that its decision to purchase was based on "significant production upside, which is not reflected in the current depressed valuation."  Id. at 623.  The court found that such statements "provide fodder for defendants to argue that [the fund] relied on its own valuation

---

[2] Kleinerman also argued below that Mylan's CFO presented the offer to certain Perrigo Group members, as well as other Perrigo investors, at an investor presentation.  See Reply Br. at 19-20, Dkt. No. 18.  He does not reassert the argument now.  Nonetheless, the Court agrees with Judge Wetter's finding that it does not demonstrate non-reliance.

of Petrobas securities, and not on their market price." Id. (citing Rocco v. Nam Tai Electronics, Inc., 245 F.R.D. 131, 136 (S.D.N.Y. 2007) for the proposition that post-class purchases show reliance on one's own assessment of stock value, not on the market).

Here, however, there is only one article attributable to the Perrigo Group members and the statements therein support reliance, instead of cut away at it. Nor are there any allegations that the Perrigo Group made similar post-Class Period transactions in Perriogo securities, a focus of the Petrobas court's decision. Moreover, the statements in Petrobas must be read in context. By that point, the court had already explained that the presumptive lead plaintiff was a "lawyer-driven artificial grouping," had a convoluted structure, had little dealings with one of its attorneys, had no relationship with another firm it sought to appoint as co-counsel, included several entities that traded only a small number of shares late in the Class Period, and placed its trades after the fraud was partially disclosed, which raised "serious questions" about reliance. Id. at 623. In the Courts view, it was the collection of these issues, coupled with the post-Class Period trades, that undid the Petrobas presumptive lead plaintiff, not the mere existence of public statements explaining a trading decision.

Kleinerman also claims that even if the non-reliance argument has little merit it will still be a distraction and waste resources. Reliance issues will be raised in discovery and later in the litigation, he claims. That may be true. But it does not necessarily mean the Perrigo Group cannot be lead plaintiff. Kleinerman must show more than the possibility an issue will arise. He must show that reliance will be addressed at the expense of the class such that the Perrigo Group cannot do a fair and adequate job as lead plaintiff. The Court is not convinced Kleinerman has made such a showing. This is so, in part, because the Perrigo Group has demonstrated that it is an organized group of sophisticated entities with independent general counsel who have lead plaintiff

experience in prior securities fraud cases.  <u>See</u> Op. 16:1-8.  And their chosen counsel are similarly sophisticated and experienced in these matters.  <u>See</u> <u>id.</u> 19:11-21.  Should they be required to address reliance issues in discovery or later in the litigation, there is no evidence the tasks will be too burdensome to handle without impacting the rest of the class.[3]

**IV.   CONCLUSION**

For the reasons set forth herein, Judge Wettre's Order dated February 10, 2017 is **ADOPTED** in full.

<u>*/s Madeline Cox Arleo*</u>
**Hon. Madeline Cox Arleo**
**United States District Judge**

---

[3] The Court does not suggest that time spent in discovery and defending arguments can never factor into a successful unique defenses rebuttal.  But, in this case, the Court's conclusion that the issue will not waste resources or burden the party must be read in conjunction with the dubious merit of the reliance defense offered here.