Michael G. Bongiorno (*pro hac vice*)
Ryan M. Chabot
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8800 Telephone
212-230-8888 Facsimile
michael.bongiorno@wilmerhale.com
ryan.chabot@wilmerhale.com

*Attorneys for Marc Coucke*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROOFERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:16-cv-02805-MCA-LDW |
| Plaintiff, | ECF Case<br>Document Electronically Filed |
| v. | **Motion Day**: November 20, 2017 |
| PERRIGO CO., PLC, JOSEPH PAPA, JUDY BROWN, LAURIE BRLAS, GARY M. COHEN, MARC COUCKE, JACQUALYN A. FOUSE, ELLEN R. HOFFING, MICHAEL R. JANDERNOA, GERALD K. KUNKLE, JR., HERMAN MORRIS, JR., and DONAL O'CONNOR, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARC COUCKE'S MOTION TO DISMISS THE AMENDED COMPLAINT AND REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |

# TABLE OF CONTENTS

I.    Introduction.................................................................................................1

II.   Background..................................................................................................2

      A.    Mr. Coucke's Positions at Perrigo. .....................................................2

      B.    Mr. Coucke's Alleged Misstatements. ..................................................4

III.  Argument ....................................................................................................5

      A.    Plaintiffs' Exchange Act Claims (Counts I & III) against Mr. Coucke
            Do Not Satisfy the PSLRA's Strict Pleading Standards. .......................5

            1.    Mr. Coucke Is Not Liable for Statements He Did Not Make and
                  Over Which He Had No Control. ...............................................6

            2.    Plaintiffs' Exchange Act Claims Based on Mr. Coucke's
                  Alleged Misstatements Also Fail. ..............................................9

            3.    Plaintiffs Have Failed to Allege That Mr. Coucke Had Any
                  Motive to Engage in Fraud. ....................................................14

      B.    Plaintiffs' Israeli Law Claim (Count IV) Fails for the Same Reasons
            and Because It Lacks Any Connection to the United States...............15

IV.   Conclusion ................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999), *abrogated on other grounds by
    Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007)........................10

*In re Amarin Corp. PLC.*,
    No. 13-CV-6663 FLW TJB, 2015 WL 3954190 (D.N.J. June 29,
    2015) .........................................................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................2

*Bartesch v. Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013)..........................................................................7

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
    380 F. Supp. 2d 574 (D.N.J. 2005)....................................................................12, 13

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .....................................................................................4

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
    No. 09 CIV. 2255 TPG, 2011 WL 5331648 (S.D.N.Y. Sept. 28,
    2011) ...................................................................................................................16, 17

*Clearfield Bank & Tr. Co. v. Omega Fin. Corp.*,
    65 F. Supp. 2d 325 (W.D. Pa. 1999).........................................................................6

*In re Donald J. Trump Casino Sec. Litig.*,
    793 F. Supp. 543 (D.N.J. 1992), *aff'd sub nom. In re Donald J.
    Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357 (3d Cir.
    1993) .......................................................................................................................14

*Dura Pharm., Inc., v. Broudo*,
    544 U.S. 336 (2005).................................................................................................11

*Gannon v. Cont'l Ins. Co.*,
    920 F. Supp. 566 (D.N.J. 1996)...............................................................................13

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
    No. CIV. 09-1043, 2009 WL 4798148 (D.N.J. Dec. 7, 2009) ..........................12

*Instit. Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ................................................................14

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007)......................................................12

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011).......................................................................7, 8

*Lapiner v. Camtek, Ltd.*,
    No. C-08-1327 MMC, 2009 WL 1542708 (N.D. Cal. June 2, 2009) ..........16, 17

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp.
    Co.*, 724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63
    (2d Cir. 2011).................................................................................11

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)..........................................................................16

*Nat'l. Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010)......................................................4, 9

*OFI Asset Mgmt. v. Cooper Tire & Rubber Co.*,
    834 F.3d 481 (3d Cir. 2016) .................................................................9

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
    47 F. Supp. 2d 546 (D.N.J. 1999), *vacated on other grounds by
    Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) ................................6

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001)......................................................15

*In re Radian Sec. Litig.*,
    No. CIV.A.07-3375, 2010 WL 1767195 (E.D. Pa. Apr. 30, 2010)...................15

*Roach v. SCI Graterford Med. Dep't*,
    178 F. App'x 181 (3d Cir. 2006) ........................................................15

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    No. 1:12-CV-00993, 2015 WL 3833849 (M.D. Pa. June 22, 2015) .................10

*Sodhi v. Gentium S.p.A.*,
  No. 14–CV–287 (JPO), 2015 WL 273724 (S.D.N.Y. Jan. 22, 2015) .................7

*In re Synchronoss Sec. Litig.*,
  705 F. Supp. 2d 367 (D.N.J. 2010) .....................................................................14

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
  176 F. Supp. 3d 387, 393 (D. Del. 2016) .............................................................6

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ................................................................................8

**Federal Statutes**

Securities Exchange Act of 1934. § 10, 15 U.S.C. § 78j.................................*passim*

Securities Exchange Act of 1934, § 14, 15 U.S.C. § 78n...............................*passim*

Securities Exchange Act of 1934, § 21D, 15 U.S.C. § 78u-4 *et seq.* .............*passim*

Securities Exchange Act of 1934, § 21E, 15 U.S.C. § 78u-5 *et seq.*...............*passim*

**Rules**

SEC Rule 10b-5, 17 CFR 240.10b5.......................................................................16

## I.    Introduction

Plaintiffs seek to hold Defendant Marc Coucke, ten other Individual

Defendants, and Perrigo Company plc ("Perrigo")[1] liable for alleged violations of

Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange

Act") and Israeli securities law.  (Amended Complaint, Dkt. 89 (the "Complaint"

or "AC").)  Plaintiffs' allegations against Mr. Coucke fall well short of satisfying

the exacting pleading standards of the Private Securities Litigation Reform Act

("PSLRA"), which require Plaintiffs to plead with particularity that Mr. Coucke

made a material misstatement with the intent to defraud Perrigo's shareholders.

Unable to offer particularized facts specific to Mr. Coucke, Plaintiffs instead

impermissibly attempt to use his brief tenure as a Perrigo officer and board

member to hold him liable for statements that others made and over which he had

no control.  Specifically, of the forty-nine alleged misstatements Plaintiffs identify,

they allege that Mr. Coucke made only three.

The Court must dismiss all claims against Mr. Coucke based on the

remaining forty-six challenged statements because he did not make them and had

---

[1] In addition to Perrigo and Mr. Coucke, the Complaint names as defendants
Joseph Papa, Judy Brown, Laurie Brlas, Gary M. Cohen, Jacqualyn A. Fouse,
Ellen R. Hoffing, Michael R. Jandernoa, Gerald K. Kunkle, Jr., Herman Morris,
Jr., and Donal O'Connor.  Defendants Brlas, Cohen, Fouse, Hoffing, Jandernoa,
Kunkle, Morris, O'Connor, and Papa are collectively referred to as the "Director
Defendants."  "Individual Defendants" include all of the Director Defendants and
Defendants Brown and Coucke.

no control over them.  The claims based on the three statements that Plaintiffs attribute to Mr. Coucke are also unavailing.  Despite its over 140 pages, the Complaint is bereft of any allegations establishing the requisite strong inference that Mr. Coucke made any statement with an intent to defraud shareholders. Additionally, Plaintiffs have failed to plead facts suggesting that Mr. Coucke had a motive to engage in fraud.  Indeed, during the Class Period, Mr. Coucke did not sell Perrigo stock and, thus, did not profit from any alleged "scheme" to inflate Perrigo's share price.

Finally, Plaintiffs' failure adequately to allege their Exchange Act claims against Mr. Coucke is fatal to their Israeli law claim insofar as it relies on an underlying violation of United States securities law.  And to the extent Plaintiffs base this claim exclusively on Israeli law and on shares purchased on an Israeli stock exchange, the Court should dismiss the claim because it lacks any basis to exercise supplemental jurisdiction.

## II.    Background

### A.    Mr. Coucke's Positions at Perrigo.

Mr. Coucke is the co-founder and former Chief Executive Officer of Omega Pharma N.V. ("Omega"), formerly one of Europe's largest over-the-counter

healthcare companies.  (AC ¶¶ 36, 53.)[2]  In late 2014, Perrigo entered into an

agreement to acquire Omega.  (AC ¶ 53.)  The transaction closed on March 30,

2015, and Omega merged into Perrigo.  (*Id.*)  After the acquisition, Mr. Coucke

served as the Executive Vice President and General Manager of Perrigo's Branded

Consumer Healthcare ("BCH") division from March 30, 2015 until April 28, 2016.

(AC ¶ 36.)  The BCH division includes legacy Omega businesses and various other

European brands and is separate from other Perrigo divisions that manage its

generic prescription drug products (Generic Rx) and royalty streams (Specialty

Sciences).  (AC ¶ 51.)

　　　Mr. Coucke also served as a member of Perrigo's Board of Directors

between November 2015 and April 2016.  (AC ¶ 36.)  However, the Complaint

contains no credible allegations that anyone alerted Mr. Coucke to any alleged

anti-competitive activities related to Perrigo's generics business or Perrigo's

allegedly improper accounting of royalty streams during his tenure on the Board.

(*See* AC ¶¶ 57-62.)[3]  To the contrary, none of the former Perrigo or Omega

employees quoted in the Complaint claims to have ***ever*** spoken personally with

Mr. Coucke, attended a meeting at which he was present, or sent him any

---

[2] Mr. Coucke accepts the factual allegations of the Complaint as true solely for
purposes of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).
[3] Indeed, there are no allegations that Mr. Coucke had any responsibilities with
respect to any Perrigo division other than the BCH division.

documents relating to these issues.  (*See id.*)[4]  Further, the allegations from these former employees relate primarily to one isolated issue (the integration of Perrigo and Omega's IT systems), regarding which Plaintiffs never allege Mr. Coucke ever made a public statement.  (*See id.*)

## B.    Mr. Coucke's Alleged Misstatements.

Plaintiffs only allege that Mr. Coucke made three purported misstatements during the relevant period.[5]

*First*, Plaintiffs allege that on June 2, 2015, during "a conference call for analysts and investors," Mr. Coucke described Omega's management team as "exceptional" and "best-in-class."  (AC ¶ 137.)  He also allegedly stated that, "[o]ver the last three years as a private company," Omega (1) "optimized its commercial infrastructure to deliver superior results"; (2) "streamlined [its]

---

[4] Plaintiffs' second-hand allegations that one former Perrigo employee "was told" by another former Omega employee that Mr. Coucke had "personally instructed" him "to put integration on hold pending resolution of [problems with Omega's supply chain]" and that "various issues were causing 'discord' between [Omega and Perrigo executives]" are unavailing.  (AC ¶¶ 58-59.)  Allegations "based upon rumor or conjecture are undisputedly insufficient to satisfy [the PSLRA's] heightened pleading standard."  *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 146-148, 155 (3d Cir. 2004); *see also Nat'l. Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 540 (D.N.J. 2010) (rejecting, as "speculative and conclusory," reports from witnesses who lacked first-hand information).

[5] The Complaint also attributes several alleged misstatements to the "Defendants." (*See* AC ¶¶ 149, 153, 164, 170.)  Because Plaintiffs have failed to allege that Mr. Coucke played any role in the composition, approval, or dissemination of these statements, any claims against Mr. Coucke based on these statements necessarily fail.  *See infra* Section III.A.1.

operations"; and (3) "instituted an efficient management structure with real efficient direct short reporting lines between Omega Pharma leadership team and country management."  (*Id.*)

*Second*, Plaintiffs allege that Mr. Coucke signed a Form 10-KT, which Perrigo filed on February 25, 2016 and which included a purportedly false statement that Perrigo's Generics Rx division "operate[d] in a highly competitive environment" and "face[d] vigorous competition from other pharmaceutical companies that may threaten the commercial acceptance and pricing of [Perrigo's generic] products."  (AC ¶ 194.)

*Third*, Plaintiffs allege that this same Perrigo Form 10-KT also falsely stated that Perrigo's financial statements accounted for the royalty stream from its multiple sclerosis drug (Tysabri®) in accordance with U.S. generally accepted accounting principles ("GAAP") and failed to disclose Tysabri®'s true fair market value.  (*Id.* ¶ 215-16.)[6]

## III.    Argument

### A.    Plaintiffs' Exchange Act Claims (Counts I & III) against Mr. Coucke Do Not Satisfy the PSLRA's Strict Pleading Standards.

The Court should dismiss Plaintiffs' claims under Sections 10(b) and 14(e) against Mr. Coucke because the Complaint does not contain sufficient facts to

---

[6] The Complaint mistakenly notes a Form 10-KT filed on February 22, 2016 contained these statements (AC ¶ 215), but the only Form 10-KT filed during that period is dated February 25, 2016.

satisfy the PSLRA's heightened pleading requirements.[7]  Stripped to their essence,
Plaintiffs' claims rest solely on Mr. Coucke's short tenure as a Perrigo officer (just
over one year) and board member (less than six months) and seek to impose
liability by status for statements that others made.  But such allegations are plainly
insufficient to meet Plaintiffs' pleading burden.  Plaintiffs cannot hold Mr. Coucke
liable for statements that he did not make or control.  And without any
particularized allegations to support the required strong inference that Mr. Coucke
made the three statements that Plaintiffs attribute to him with an intent to defraud
shareholders, their claims must fail.

### 1.   Mr. Coucke Is Not Liable for Statements He Did Not Make and Over Which He Had No Control.

The Complaint identifies forty-nine alleged misstatements, the
overwhelming majority of which Mr. Coucke did not make, and to which he has no
connection.  (*See, e.g.*, AC ¶¶ 139, 155 (Judy Brown); *id.* ¶¶ 135, 141, 145, 157
(Joseph Papa); *id.* ¶¶ 147, 171 ("Director Defendants").)  "Only the 'maker' of a
fraudulent statement may be held liable under Section 10(b)."  *Universal Am.*

---

[7] The elements of Sections 10(b) and 14(e) claims are "virtually identical."  *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 47 F. Supp. 2d 546, 560-61 (D.N.J. 1999), *vacated on other grounds by Semerenko v. Cendant Corp.*, 223 F.3d 165, 169 (3d Cir. 2000).  Given this similarity, courts frequently interpret Section 14(e)'s requirements as co-extensive with those of Section 10(b), though they limit Section 14(e)'s reach to alleged misstatements made in connection with tender offers.  *See id.  See also, e.g.*, *Clearfield Bank & Tr. Co. v. Omega Fin. Corp.*, 65 F. Supp. 2d 325, 343 (W.D. Pa. 1999).  For this reason, and for efficiency's sake, Mr. Coucke will address Plaintiffs' claims under both sections together.

*Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 393 (D. Del. 2016); *see also Sodhi v. Gentium S.p.A.*, No. 14–CV–287 (JPO), 2015 WL 273724, at *3 (S.D.N.Y. Jan. 22, 2015) (noting that "[t]o be liable under Section 14(e), the defendant must 'make' the allegedly fraudulent statement or control the person who does."). "[T]he maker of a statement is the person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011) (emphasis added).

Plaintiffs do not allege that Mr. Coucke had any role whatsoever in the composition, approval, or dissemination of the forty-two statements that Plaintiffs attribute to other named Defendants.  Indeed, Defendants other than Mr. Coucke made the great majority (thirty) of these challenged statements before Mr. Coucke even became a member of Perrigo's Board in November 2015.  (*See, e.g.*, AC ¶¶ 151-73, 176-89 (alleged misstatements made between April 21, 2015 and October 22, 2015.)  *See also Bartesch v. Cook*, 941 F. Supp. 2d 501, 511 (D. Del. 2013) ("[N]o fraud liability can exist against any defendant who was not a director or officer of [defendant corporation] at the time of the challenged statement because they would not have had the required" level of control).  Given the absence of any allegations connecting Mr. Coucke to these challenged statements, the Court

should dismiss any claims against him that are premised on these statements.  *See*

*Janus Capital Grp.*, 564 U.S. at 142.

Similarly, any claims based on the four alleged misstatements that Plaintiffs

generically attribute to "Defendants" also fail as against Mr. Coucke because

Plaintiffs do not specify what role, if any, he played in making, authorizing, or

endorsing those statements.  (*See* AC ¶¶ 149, 153, 164, 170.)  *See also Winer*

*Family Tr. v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) (rejecting "group

pleading doctrine" and holding that PSLRA requires plaintiffs to "specify the role

of *each defendant*, demonstrating *each defendant's involvement* in misstatements

and omissions" (emphasis added)).  Indeed, other Defendants made three of these

statements before Mr. Coucke joined the Perrigo Board, and Plaintiffs do not

allege that Mr. Coucke had any role in their drafting.  (*See, e.g.*, AC ¶¶ 153, 164,

170.)  Although one of these statements is from the period of Mr. Coucke's Board

tenure (AC ¶ 149), Plaintiffs have not articulated any facts supporting the

conclusion that Mr. Coucke had control over the content of this statement or the

individual who made it.  *See Janus Capital Grp.*, 564 U.S. at 142.  For these

reasons, the Court should dismiss any claims against Mr. Coucke based on these statements.[8]

### 2. Plaintiffs' Exchange Act Claims Based on Mr. Coucke's Alleged Misstatements Also Fail.

Plaintiffs' claims as to the three statements Mr. Couke allegedly made also fail because the statements are inactionable puffery and because the Complaint contains no allegations to support the required strong inference that Mr. Coucke made any statement with an intent to defraud shareholders.

Plaintiffs allege that Mr. Coucke misled investors on a June 2015 conference call when he stated that Omega's management team was "exceptional" and "best-in-class" and that Omega had, over the last three years, (1) "optimized its commercial infrastructure to deliver superior results"; (2) "streamlined [its]

---

[8] Plaintiffs' claims as to these statements also fail because the majority of them are forward-looking and, thus, protected by the PLSRA's safe harbor and the bespeaks caution doctrine.  15 U.S.C. §§ 78u-5(c)(l)(A), (B); *OFI Asset Mgmt. v. Cooper Tire & Rubber Co.*, 834 F.3d 481, 502-03 (3d Cir. 2016).  Nor are Plaintiffs' generalized allegations that Defendants "were keenly aware" that the statements were false sufficient to impose liability on Mr. Coucke for statements made by others.  (*See, e.g.*, AC ¶¶ 255-56, 259.)  Such "must have known" allegations, which depend entirely on Mr. Coucke's positions within the company to infer knowledge, cannot satisfy Plaintiffs' heightened burden under the PSLRA.  *See, e.g.*, *In re Amarin Corp. PLC.*, No. 13-CV-6663 FLW TJB, 2015 WL 3954190, at *12 (D.N.J. June 29, 2015) (rejecting plaintiff's allegation that "it is simply not plausible that . . . senior management . . . were not privy to the internally known adverse facts"); *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 556 ("Plaintiff's attempt to impute knowledge to the Individual Defendants by virtue of their employment [as high-ranking executives] has been rejected as a basis for an inference of scienter.").

operations"; and (3) "instituted an efficient management structure."  (AC ¶ 137.)

These statements are classic, inactionable puffery.  *See In re Advanta Corp. Sec.*

*Litig.*, 180 F.3d 525, 537-39 (3d Cir. 1999) (dismissing claims based on statements

that "[defendant's] credit quality [was] the best in the industry" and that defendant

had "an experienced management team"), *abrogated on other grounds by Tellabs,*

*Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007); *Se. Pa. Transp. Auth. v.*

*Orrstown Fin. Servs., Inc.*, No. 1:12-CV-00993, 2015 WL 3833849, at *20 (M.D.

Pa. June 22, 2015) (dismissing claims based on statements that defendant had

"[d]eep and experienced management team with . . . [a] proven track record of

acquisition integration").

Further, alleged reports by former Omega employees do not support an

inference that Mr. Coucke knew that any statement he made during the June 2015

conference call was false when made because those reports concern the post-

merger Perrigo-Omega integration—not Omega's efforts in the three years leading

up to the acquisition, the subject of Mr. Coucke's challenged statements.  (*See,*

*e.g.*, AC ¶ 58.)  Nor are any of these purported reports inconsistent with the

statement that Omega had "exceptional" or "best in class" management.  (*See, e.g.*,

*id.* (alleging only that there was "cultural discord between Omega and Perrigo

management").)  Indeed, none of the former employees quoted in the Complaint

claims to have *ever* personally communicated with Mr. Coucke, much less alerted

him to concerns regarding Omega's "optimized commercial infrastructure" or "efficient management structure." *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (holding allegations based on confidential witness information insufficient to establish scienter because, though plaintiffs alleged that confidential witnesses were aware of adverse information, they did not allege that confidential witnesses (or anyone else) "presented [this] information to management around the time of Defendants' allegedly misleading statements"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).[9]

---

[9] Moreover, Plaintiffs fail to plead what, if any, economic loss they suffered as a result of these statements that Mr. Coucke made, which addressed Omega's management and pre-merger infrastructure. Instead, they allege only that Perrigo's share price dropped when the market learned of problems with the Omega integration and an impairment charge related to certain Omega assets. (AC ¶¶ 225-26.) Such allegations are insufficient to allege loss causation because they do not establish that the subject of the fraudulent statement was the cause of the actual loss suffered. *See Dura Pharm., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005). Additionally, Plaintiffs' Section 14(e) claim with respect to Mr. Coucke's June 2015 statements fails because they were not made "in connection with a tender offer." 15 U.S.C. § 78n(e). During the call in question, both Perrigo's vice president of investor relations and then-Perrigo CEO Joseph Papa stated that the call would focus on Perrigo's acquisition of various pharmaceutical brands from GSK—not the Mylan tender offer. (*See* Tran. of Perrigo Conf. Call, dated June 2, 2015, Ex. 39 to Decl. of Samuel P. Groner, Dkt. 114-10, at 139 ("We will only be taking questions on today's [GSK] announcement and on the Omega Pharma business."); *id.* at 144 ("For clarity, we will not be commenting today on Mylan's unsolicited offer to acquire the Perrigo Company. I will defer that to future forums.").) Plaintiffs do not explain how any statements made in this context— much less the immaterial statements attributed to Mr. Coucke—could be construed as having been made "in connection with" the Mylan tender offer.

Similarly, Plaintiffs' claims against Mr. Coucke arising from Perrigo's February 25, 2016 Form 10-KT also fail because Plaintiffs set forth no allegations showing that Mr. Coucke made any statement with the intent to defraud shareholders. Although Plaintiffs allege that this Form 10-KT falsely represented that Perrigo's generics business "operate[d] in a highly competitive environment" and "face[d] vigorous competition from other pharmaceutical companies," (AC ¶ 194), and that Perrigo's financial statements accurately accounted for the fair market value of the Tysabri® royalty stream under GAAP (AC ¶ 215), they do not offer a single allegation that Mr. Coucke had any knowledge of these issues or that he otherwise had access to information showing the statements were false.[10] *See In re Heartland Payment Sys., Inc. Sec. Litig.*, No. CIV. 09-1043, 2009 WL 4798148, at *7-*8 (D.N.J. Dec. 7, 2009); *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 596 (D.N.J. 2005) ("Mere allegations of knowledge on the part of subordinates do not provide a sufficient basis for imputing knowledge to executives.").

---

[10] Plaintiffs' allegations that "the sheer size of the misrepresentations" and the "temporal proximity between Defendants' false reassurances . . . and contradictory revelations" (AC ¶¶ 264-65) are similarly unavailing because Plaintiffs have not alleged any particularized allegations of "red flags" alerting Mr. Coucke to alleged anti-competitive activity or accounting problems. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 286 (D.N.J. 2007) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (citation and quotation marks omitted)).

Plaintiffs' failure to tie Mr. Coucke to these challenged statements is not at all surprising, given that, at the time of the statements, Mr. Coucke had been the General Manager of the BCH division for a little less than a year.  (AC ¶ 36.) Plaintiffs do not allege that, in this role, Mr. Coucke had any insight into Perrigo's generics division or its accounting for royalty streams.  Indeed, the two divisions responsible for these aspects of Perrigo's business were completely separate from the division in which Mr. Coucke worked.  (AC ¶ 51.)  Nor can Plaintiffs rely on Mr. Coucke's board service to suggest that he "must have known" these statements were false given that, in February 2016, Mr. Coucke had been a Board member for less than three months.  In any event, the Complaint offers no allegations to suggest that Mr. Coucke had any specific responsibilities or knowledge regarding either of those topics, which were unrelated to the BCH division.  *See In re Bio-Tech.*, 380 F. Supp. 2d at 584 ("Where the complaint fails to allege why a defendant's position necessarily entails a particular duty or why a specific corporate policy requires the defendant to have responsibility for particular press releases or SEC filings, allegations concerning group-published information should be rejected for failing to plead scienter with particularity.").[11]

---

[11] In addition, Plaintiffs' Section 14(e) claims with respect to these statements fail because they came three months after the expiration of Mylan's tender offer and, thus, have no connection to it.  Nor could Plaintiffs plausibly allege that any class member relied on these statements to his detriment.  *See Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) ("It is well established that . . . no liability

3.   **Plaintiffs Have Failed to Allege That Mr. Coucke Had Any Motive to Engage in Fraud.**

Plaintiffs' claims against Mr. Coucke fail for the additional reason that the Complaint does not allege what, if any, motive Mr. Coucke may have had to commit fraud.  Courts are clear that motive and opportunity without particularized allegations supporting a strong inference of scienter are insufficient under the PSLRA.  *See Instit. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 277-78 (3d Cir. 2009).  Here, Plaintiffs lack both.  There are, for instance, no allegations suggesting that Mr. Coucke "benefited in a *concrete and personal way* from the purported fraud" through suspicious stock sales or any other means.  *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 399 (D.N.J. 2010) (citation and quotation marks omitted) (emphasis added).  Indeed, during the Class Period, Mr. Coucke did not sell ***any*** of his significant Perrigo holdings, which he acquired through Perrigo's acquisition of Omega.  (Marc Coucke Form 4, dated March 1, 2016, Ex. 4 to Decl. of Samuel P. Groner, Dkt. 114-13, at 31-33 (noting Mr. Coucke acquired 5,397,711 shares of Perrigo stock through Perrigo's acquisition of Omega).)  Where, as here, a defendant does not sell any shares, it makes no

---

attaches to statements made after the transaction in question."); *In re Donald J. Trump Casino Sec. Litig.*, 793 F. Supp. 543, 565 (D.N.J. 1992) ("Plaintiffs cannot rely on statements made subsequent to their purchases in order to state a securities fraud claim, because plaintiffs could not have relied on the statements in making their purchases in the first place."), *aff'd sub nom. In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357 (3d Cir. 1993).

14

economic sense to infer fraudulent intent because "retained holdings suggest that [he] had every incentive to keep [the company] profitable" and, thus, that his and stockholders' interests were aligned. *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) (alterations in original omitted) (citation and internal quotation marks omitted); *In re Radian Sec. Litig.*, No. CIV.A.07-3375, 2010 WL 1767195, at *12 (E.D. Pa. Apr. 30, 2010).

> **B.   Plaintiffs' Israeli Law Claim (Count IV) Fails for the Same Reasons and Because It Lacks Any Connection to the United States.**

Plaintiffs also assert claims for alleged violations of Israeli law and United States law on behalf of the Tel Aviv Stock Exchange ("TASE") Purchaser Class, which includes all shareholders who purchased Perrigo's publicly traded common stock between April 21, 2015 and May 3, 2017 on the TASE.  (AC ¶¶ 273(b), 305.)  Plaintiffs' failure to allege sufficient facts to support their claims against Mr. Coucke under United States securities law is fatal to their Israeli law claims because they are based on violations of the same.  Moreover, to the extent Plaintiffs base these claims on Israeli law, the Court must dismiss them because, absent any valid claims under United States law, the Court has no basis to exercise supplemental jurisdiction over those claims.  *See Roach v. SCI Graterford Med. Dep't*, 178 F. App'x 181, 182 n.1 (3d Cir. 2006) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

remain, the federal court should decline the exercise of jurisdiction." (citation omitted)).

Plaintiffs assert that because an Israeli court may look to United States securities law to decide the claims of the TASE Purchaser Class, this Court can also hear and decide those claims under Section 10(b). However, this argument only serves to circumvent the United States Supreme Court's holding that Section 10(b) applies "only [to] transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). Indeed, courts have previously dismissed claims of Perrigo investors who purchased shares exclusively on the TASE because those claims were not based on domestic transactions. *See CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 CIV. 2255 TPG, 2011 WL 5331648, at *2 (S.D.N.Y. Sept. 28, 2011) (dismissing Sections 10(b) and 20(a) and Rule 10b-5 claims of TASE purchaser class). *See also Lapiner v. Camtek, Ltd.*, No. C-08-1327 MMC, 2009 WL 1542708, at *2 (N.D. Cal. June 2, 2009) (dismissing Sections 10(b) and 20(a) and Rule 10b-5 claims where plaintiff "failed to expressly allege or otherwise to show he purchased his shares on a United States exchange"). Where, as here, foreign transactions form the basis of the securities claims of a proposed class, the Court must dismiss them for lack of subject matter jurisdiction. *See, e.g., Morrison*, 561 U.S. at 283 n.11 (Stevens, J.) (concurring in dismissal of

*foreign* plaintiffs' claims against *foreign* issuer based on securities transactions in a *foreign* country); *CLAL Fin. Batucha Inv. Mgmt., Ltd.*, 2011 WL 5331648, at *2; *Lapiner*, 2009 WL 1542708, at *2.[12]

## IV.   Conclusion

For these reasons, Mr. Coucke respectfully requests that the Court dismiss all claims against him with prejudice.

---

[12] The Israeli cases that Plaintiffs cite (AC ¶ 305) hold only that United States law applies when adjudicating securities claims against certain companies in Israel, not that courts in the United States have subject matter jurisdiction over such claims. *See Verifone Holdings, Inc. v. Stern*, Class Action 3912-01-08, decision rendered Sept. 11, 2008 (holding that "applicable law in the instant case is the American law and not the Israeli law"); *Stern v. Verifone Holdings, Inc.*, Class Action 3912-01-08, decision rendered Aug. 25, 2011 (same).

Dated: August 25, 2017        */s/ Ryan M. Chabot*

Ryan M. Chabot
Michael G. Bongiorno (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8800 Telephone
212-230-8888 Facsimile

Peter J. Kolovos (*pro hac vice*)
Alexandra C. Boudreau (*pro hac vice*)
Ivan Panchenko (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
617-526-6000 Telephone
617-526-5000 Facsimile

*Attorneys for Marc Coucke*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2017, I caused a copy of the foregoing

Memorandum in Support of Motion to Dismiss Plaintiffs' Amended Complaint

to be served via ECF upon counsel of record.

*/s/ Ryan M. Chabot*
Ryan M. Chabot
