# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROOFER'S PENSION FUND**, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>**JOSEPH PAPA**, *et al.*,<br><br>Defendants | Civil Action No. 16-2805<br><br>Hon. Madeline Cox Arleo<br>Magistrate Judge Leda Dunn Wettre<br><br>**JOINT [PROPOSED] DISCOVERY PLAN** |

The parties have used the D.N.J. Form to draft this Plan and the paragraph numbering follows the numbering scheme in the Court's Form.

1.   Set forth below are the names of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented:

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Alan S. Naar
99 Wood Avenue South
Iselin, New Jersey 08830
(732) 476-2530
(732) 476-2531 (fax)
anaar@greenbaumlaw.com

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
James D. Wareham (*pro hac vice*)
James E. Anklam (*pro hac vice*)
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
(202) 639-7003 (fax)
james.wareham@friedfrank.com
james.anklam@friedfrank.com

Samuel P. Groner (*pro hac vice*)
One New York Plaza
New York, New York 10004
(212) 859-8000

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Jonathan Lindenfeld
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jlindenfeld@pomlaw.com

*Co-Lead Counsel for Lead Plaintiff*

(212) 859-4000 (fax)
samuel.groner@friedfrank.com

*Attorneys for Defendant Perrigo Company plc*

**GIBSON, DUNN & CRUTCHER LLP**
Reed Brodsky (*pro hac vice*)
Aric H. Wu (*pro hac vice*)
Marshall R. King
200 Park Ave
New York, New York 10166
(212) 351-4000
(212) 351-4035 (fax)
rbrodsky@gibsondunn.com
awu@gibsondunn.com
mking@gibsondunn.com

*Attorneys for Defendant Joseph Papa*

**SULLIVAN & CROMWELL LLP**
John L. Hardiman (*pro hac vice*)
Brian T. Frawley
Michael P. Devlin (*pro hac vice*)
125 Broad Street
New York, New York 10004
(212) 558-4000
(212) 558-3588 (fax)
hardimanj@sullcrom.com
frawleyb@sullcrom.com
devlinm@sullcrom.com

*Attorneys for Defendant Judy Brown*

*Counsel for parties dismissed without prejudice
are listed below solely for the Court's reference.
Those parties and their counsel did not
participate in the preparation or submission of
this report.*

**SKOLOFF & WOLFE, PC**
Jonathan W. Wolfe
Jane J. Felton
293 Eisenhower Parkway
Livingston, NJ 07039
(973) 232-2988
jwolfe@skoloffwolfe.com
jfelton@skoloffwolfe.com

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
James A. Harrod (*pro hac vice*)
Jesse L. Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
jesse.jensen@blbglaw.com

*Co-Lead Counsel for Lead Plaintiff*

**LOWENSTEIN SANDLER LLP**
Michael B. Himmel
Michael T.G. Long
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com

*Liaison Counsel for Lead Plaintiff*

**MILBANK, TWEED, HADLEY, & McCLOY
LLP**
Alan J. Stone (*pro hac vice*)
28 Liberty Street
New York, New York 10005
(202) 530-5000
astone@milbank.com

*Attorneys for Laurie Brlas, Gary
M. Cohen, Jacqualyn A. Fouse, Ellen R.
Hoffing, Michael Jandernoa, Gerald K.
Kunkle, Jr., Herman Morris, Jr., and Donal
O'Connor (dismissed without prejudice)*

**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
Ryan M. Chabot
Michael G. Bongiorno (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8800 Telephone
212-230-8888 Facsimile
ryan.chabot@wilmerhale.com
michael.bongiorno@wilmerhale.com

Peter J. Kolovos (*pro hac vice*)
Alexandra C. Boudreau (*pro hac vice*)
Ivan Panchenko (*pro hac vice*)
60 State Street
Boston, MA 02109
617-526-6000 Telephone
617-526-5000 Facsimile
peter.kolovos@wilmerhale.com
alexandra.boudreau@wilmerhale.com
ivan.panchenko@wilmerhale.com

*Attorneys for Marc Coucke (dismissed without
prejudice)*

2.      Set forth below is a brief description of the case, including the causes of action and
defenses asserted:

On June 21, 2017, Lead Plaintiff[1] filed the operative Amended Complaint (Dkt. No. 89),

---

[1] Lead Plaintiff Perrigo Institutional Investor Group ("PIIG") consists of: Migdal Insurance Company Ltd., Migdal Makefet Pension and Provident Funds Ltd., Clal Insurance Company Ltd.,

which asserts violations of Sections 10(b), 14(e), and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), U.S. Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5), and parallel provisions under Israel's Securities Law, 1968, which applies the standards of the Exchange Act to purchases on the Tel Aviv Stock Exchange.  The Amended Complaint asserts claims on behalf of three putative classes of investors that purchased Perrigo Company plc ("Perrigo" or the "Company") shares between April 21, 2015 to May 3, 2017, inclusive (the "Class Period"), or who held Perrigo shares as of November 13, 2015, when a tender offer made by Mylan N.V. ("Mylan") to acquire Perrigo expired unsuccessful.

The Amended Complaint alleges that Defendants made misrepresentations during the Class Period concerning the Company's organic growth rate; the value, business, and integration of its Omega Pharma N.V. ("Omega") acquisition; the use of collusive and/or anti-competitive practices in its generic drug business; and its characterization of and accounting for a royalty stream for the drug Tysabri.  These allegations, and the parties' views related thereto, are addressed in greater detail in briefing on Defendants' motions to dismiss (Dkt. Nos. 114, 119, 126, 131 and 132).

On July 27, 2018, the Court entered an Order sustaining claims related to misrepresentations concerning Omega and generic drug price fixing, as against Perrigo and its former Chief Executive Officer Joseph Papa ("Papa") and Chief Financial Officer Judy Brown ("Brown", collectively with Perrigo and Papa, "Remaining Defendants"), and dismissing without prejudice claims related to misrepresentations involving Perrigo's organic growth rate and Tysabri.  (Dkt. No. 136; 2018 WL 3601229)  The July 27, 2018 Order also dismissed without prejudice all claims against Defendants Laurie Brlas, Gary M. Cohen, Jacqualyn A. Fouse, Ellen R. Hoffing, Michael Jandernoa, Gerald K. Kunkle, Jr., Herman Morris, Jr., Donal O'Connor, and Mark Coucke. (*Id*.)

The parties filed a stipulation on August 9, 2018 that indicated that Lead Plaintiff did not intend to further amend its complaint at this time and that Remaining Defendants' Answers would be due on September 7, 2018.  The Court approved that stipulation on August 10, 2018 (Dkt. No. 139). On September 6, 2018 the parties filed a proposed stipulation to extend the dates for Mr. Papa and Ms. Brown to file their Answers to September 14, 2018 (Dkt. No. 141).

Lead Plaintiff's Position:

Lead Plaintiff alleges that beginning in April 2015, Perrigo, Papa, and Brown issued false and materially misleading statements in response to Mylan's efforts to acquire the Company, including through a hostile tender offer.   Most significantly, Remaining Defendants misrepresented and omitted material facts regarding the business prospects and integration of Omega, the largest and most important acquisition in Perrigo's 100-year history, and regarding collusive practices used to inflate results in Perrigo's Generic Rx division, the Company's most profitable division throughout the Class Period.

These misrepresentations and omissions were successful in defeating Mylan's tender

---

Clal Pension and Provident Ltd., Atudot Pension Fund for Employees and Independent Workers Ltd., and Meitav DS Provident Funds and Pension Ltd.

offer, thereby depriving Lead Plaintiff and the Class of the opportunity to receive stock and cash consideration worth $174.36 per Perrigo share as of November 12, 2015. After Defendants thwarted Mylan's tender offer, Perrigo shares opened at $140.54, $33.82 less than the tender offer consideration.[2] Lead Plaintiff alleges that these false and misleading statements also caused Perrigo's stock to trade at artificially inflated prices and that when the truth became known to the market, Perrigo's stock price declined, resulting in damages to Lead Plaintiff and other shareholders.

By the end of the Class Period, Perrigo's stock had declined more than 62% as the market gradually learned the truth of the Company's operations.

Defendants' Position:

At all times relevant to the allegations in the Amended Complaint, Defendants' disclosures were sufficient to meet the standards under federal securities laws and Israeli securities laws. There are no bases for Defendants to be held liable for any of the claims made by Plaintiffs.

In April 2015, Mylan approached Perrigo with an unsolicited offer to purchase the Company for combination of cash and Mylan stock. Another company was considering attempting to acquire Mylan at the time. Perrigo's Board of Directors (the "Board") rejected Mylan's proposal. As 2015 progressed, Mylan revised its offer several times, and each time offered a combination of cash and Mylan stock. Perrigo's Board continued to advise against Mylan's offers, informing shareholders that each offer failed to properly value Perrigo or to account for the risks of Mylan's offer. Mylan eventually launched a formal tender offer in September 2015, which failed on November 13, 2015 when only approximately 40% of Perrigo shareholders tendered. Since then, Mylan has been sued in federal court by a putative class of Mylan shareholders (including one of the named plaintiffs in this case as a lead plaintiff) alleging that Mylan's disclosures over several years (including 2015) violated the securities laws.[3] Mylan

---

[2] The Mylan litigation referred to below in Defendants' discussion has no relation to Perrigo's misrepresentations in this lawsuit. The referenced Mylan litigation commenced in October 2016, nearly a year after the Mylan tender offer to acquire Perrigo failed, and does not involve the tender offer in any way. Indeed, the amended complaints filed in the Mylan action do not even mention Perrigo or the tender offer. *See In re Mylan N.V. Sec. Litig.*, Case No. 1:16-CV-07926 (JPO) (S.D.N.Y.) (ECF Nos. 39 & 89). Judge Oetken's order entered on March 28, 2018 addressing the Mylan defendants' motion to dismiss was also silent as to Perrigo and the tender offer. *Id.* (ECF No. 69). The two cases simply do not impact each other.

[3] Plaintiffs' efforts in footnote 2 *supra* to downplay the ongoing *Mylan* case in the Southern District of New York are unavailing. During 2015, Perrigo explicitly warned its shareholders that Mylan was heavily reliant on its EpiPen® product and that Mylan had poor corporate governance practices, among the various reasons given for rejecting Mylan's tender offer. Thus, one of the plaintiffs in the case asserts before this Court that Perrigo's shareholders should have accepted the Mylan tender offer of 2.3 Mylan shares plus cash in November 2015 as part of the plaintiff's § 14(e) claim even though that same plaintiff is advocating in another forum (S.D.N.Y.) that Mylan stock in 2015 (and other years) had significant problems, including overreliance on the EpiPen® product and corporate governance issues. The incongruity of the plaintiff's varying positions is obvious.

has also been the subject of antitrust class actions for its activities during the same period.

Plaintiffs' purported valuation of the Mylan offer is significantly inflated for several reasons. While not setting forth all possible reasons that the Plaintiffs' calculation is flawed, Defendants note the following flaws. First, Plaintiffs appear to derive their loss figure by comparing the price of Perrigo shares after the tender offer was known to have failed with the purported value of the tender offer before the tender date. In doing so, the Plaintiffs create a false view of the choice that Perrigo shareholders faced: at the time each shareholder would decide to stay with Perrigo shares (valued at the price before the outcome of the tender offer was known) or to tender for the purported value of the tender offer before the outcome was known. That comparison leads to a significantly smaller damages number. That is not the only reason why the damages are smaller than Plaintiffs contend. Second, Plaintiffs' damages calculation above also fails to account for the fact that Mylan's offer was a combination of Mylan stock and cash, not an all-cash offer. Had 100% of the Perrigo shares been tendered, the Perrigo shareholders would have owned approximately 40% of Mylan stock; indeed, had even just 50% of Perrigo shareholder tendered, they would have owned 20% of Mylan stock. Such large percentages of Mylan shares in play meant that, had the tender offer succeeded, the tendering Perrigo shareholders would not have been able to immediately sell the Mylan stock they received without causing a significant and immediate drop in the Mylan share price. Plaintiffs' damages assertions related to the tender offer simply fail to take into account these and basic and obvious aspect of market principles.

In February 2016, Perrigo disclosed to shareholders that it had missed EPS guidance primarily due to poor performance at the Omega unit and that Perrigo had identified an impairment of certain intangible assets that were acquired in conjunction with Perrigo's purchase of Omega. (The Omega acquisition, which was announced in November 2014 and closed in March 2015, was Perrigo's largest acquisition to date.) Since the acquisition, Perrigo and Omega had been working on integrating their activities into a coordinated business. That integration process was not complete at the time of Perrigo's February 2016 announcement.

On May 2, 2017, the U.S. Department of Justice Antitrust Division ("DOJ") executed search warrants at Perrigo facilities in Allegan, Michigan and other locations in connection with an Antitrust Division investigation relating to drug pricing in the generics prescription pharmaceutical industry. The DOJ had been investigating pricing and sales within the U.S.-based generic prescription pharmaceutical manufacturing industry since at least 2014, and has used the raid tactic at several pharmaceutical companies. No civil or criminal charges have been brought against Perrigo or any of its employees by any government agency in connection with antitrust investigations. Nor has the DOJ accused Perrigo of wrongdoing.

3.    The parties will report orally to Magistrate Judge Wettre during the Fed. R. Civ. P 16 conference about this topic.

4.    The parties have met and conferred telephonically pursuant to Fed. R. Civ. P. 26(f) on August 20, 2018, on August 23, 2018, and on August 29, 2018, and also have exchanged additional views in writing which are reflected in this report.

5.    The parties have not already exchanged the information required by Fed. R. Civ. P.

26(a)(1).  Lead Plaintiff seeks disclosure by September 21, 2018.  Defendants seek disclosure on or before October 19, 2018 (approximately 45 days after Perrigo filed its Answer) which gives the parties appropriate time to assemble the required information.

6.  Set forth below are the parties' positions as to problems in completing the disclosures required by Fed. R. Civ. P. 26(a)(1):

Lead Plaintiff's position:

Lead Plaintiff does not believe that any party should have difficulty completing the disclosures required by Fed. R. Civ. P. 26(a)(1) by September 21, 2018, which is almost sixty (60) days after the Court's July 27, 2018 Order lifted the discovery stay imposed by the Private Securities Litigation Reform Act of 1995.  For its own disclosures, Lead Plaintiff will provide all information required by Fed. R. Civ. P. 26(a)(1), including the "identification of the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information" that it "may use to support its claims or defenses, unless the use would be solely for impeachment," whether or not such individuals were referenced by name in the Amended Complaint.  To the extent that Defendants seek further details beyond the information specified by Fed. R. Civ. P. 26(a)(1), it is incumbent upon Defendants to seek such information under standard civil discovery procedures.  Lead Plaintiff reserves any objections related thereto.  Lead Plaintiff further notes that Fed. R. Civ. P. 26(a)(1) does not address expert disclosures.  Lead Plaintiff will disclose its experts consistent with Fed. R. Civ. P. 26(a)(2).  Finally, Lead Plaintiff notes that since discovery has not yet commenced, the factual information in its possession is limited to what is currently publicly available and may require it to supplement its disclosures as it obtains additional information during discovery.

Defendants' position

Defendants anticipate problems in completing disclosures required by Fed. R. Civ. P. 26(a)(1).  Defendants anticipate that Plaintiffs will not comply with Rule 26(a)(1)'s obligation to disclose the identities, addresses or phone numbers of the unnamed expert witness or economic analyst identified in Amended Complaint ¶¶ 64, 70, 73, 76, 78, 80, 82, 84, 86, 88, 91, and the "numerous" unnamed individuals who are referenced in Amended Complaint ¶¶ 62, 62.a-62.e as providing factual information supporting the allegations of the Plaintiffs.  Plaintiffs relied upon the assertions made by these individuals in the Amended Complaint in their argument against the defendants' Motions to Dismiss, and the Court's ruling explicitly references the unnamed individuals providing factual information as support for its ruling not to dismiss certain claims.  Op. at 48-49 & n. 21; 2018 WL 3601229, at *23.  In such circumstances it is incumbent upon Plaintiffs to reveal the identity of those individuals in its Rule 26(a)(1) disclosures.  Defendants note that Plaintiffs have not filed a motion for a Protective Order that would allow them to obscure the identities of any of these individuals nor have Plaintiffs explained how they can meet the requirements to seal this information pursuant to L.Civ.R. 5.3.

7.  The parties have not conducted any discovery thus far.  Prior to July 27, 2018, discovery was stayed under the automatic stay of the Private Securities Litigation Reform Act of

1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(3)(B).   Additionally, under Fed. R. Civ. P. 26(d)(1), discovery is not permitted until after the parties have conferred pursuant to Fed. R. Civ. P. Rule 26(f).

8.     Proposed discovery plan (setting out the position of each side):

(a)     Discovery is needed on the following subjects:

Lead Plaintiff's Position:

After consideration of the proportionality factors set forth in Federal Rule of Civil Procedure 26(b)(1), Lead Plaintiff anticipates needing discovery on the following subjects, without limitation:

(1)     Perrigo's acquisition of Omega, including pre-acquisition due diligence;

(2)     Efforts to integrate Omega and Perrigo business operations;

(3)     Omega's performance and valuation;

(4)     Perrigo's analysis of and accounting for any impairments related to the goodwill associated with the acquisition of Omega;

(5)     Competition, pricing, and financial impacts of non-competitive pricing in Perrigo's Generic Rx division;

(6)     Efforts to engage in non-competitive pricing with other manufacturers of generic drugs, including communications and coordination;

(7)     Receipt and consideration of merger and/or acquisition proposal(s) and/or offer(s), including from Mylan;

(8)     Efforts to defeat Mylan's hostile takeover bid and tender offer;

(9)     Perrigo's internal financial forecasts and valuation analyses, including but not limited to: (a) valuations of Perrigo as a standalone entity; (b) projections for Omega; and (c) projections for Perrigo's Generic Rx division;

(10)   Perrigo's financial reporting, especially with respect to Omega and its Generic Rx division;

(11)   Perrigo's internal controls over financial reporting;

(12)   Perrigo's legal compliance efforts, including with respect to antitrust laws;

(13)   The resignation of Papa, Brown, and Coucke, including any related severance agreements, arbitrations, or lawsuits;

(14) Remaining Defendants' statements and alleged omissions to the public, including those identified in the Amended Complaint;

(15) Defendants' communications with regulators, governmental agencies, and auditors, both in the ordinary course and in response to the investigation by the Department of Justice;

(16) Perrigo's document retention policies and practices;

(17) Evidence relevant to class certification, including market efficiency; and

(18) Evidence relevant to damages suffered by investors as a result of Remaining Defendants' alleged false and misleading statements.

Lead Plaintiff reserves the right to seek discovery on any additional topics it deems necessary to prosecute its claims. Additionally, Lead Plaintiff reserves all objections with respect to any discovery that Defendants may ultimately serve with respect to the topics listed below.

<u>Defendants' Position</u>:

After consideration of the proportionality factors set forth in Federal Rule of Civil Procedure 26(b)(1), Defendants anticipate needing discovery on the following subjects, without limitation:

(1) Identity of each individual included in the allegations of the Amended Complaint and each expert or analyst identified in the Amended Complaint, as well as subsequent discovery of the knowledge of such individuals.

(2) Information about the trading history and trading strategy of each of the plaintiff PIIG members and all investment advisors consulted by PIIG members.

(3) Information about the formation of PIIG and the decision to seek to become lead plaintiffs in this case

(4) Evidence relevant to PIIG's purported damages arising from stock transactions within the United States, including all related expert testimony.

(5) Evidence relevant to PIIG's purported damages arising from stock transactions within Israel, including all related expert testimony.

(6) Identity of members of PIIG who are also class plaintiffs in any class action against Mylan, including but not limited to *In re Mylan N.V. Securities Litigation*, No. 16-cv-7926-JPO, as well as subsequent discovery from such individuals.

(7) Identity of all PIIG members who are also party to any antitrust litigation relating to generic prescription pharmaceuticals, or who are cooperating with federal or state law enforcement officials who are investigating that industry

or market, as well as subsequent discovery of such individuals.

(8) Class certification discovery, including the adequacy of PIIG members as lead plaintiffs for each of the three alleged classes, including discovery concerning any experts that PIIG intends to rely upon.

Defendants reserve the right to seek discovery on any additional topics they deem necessary to establish their defenses.

In the interest of making the Court aware of discovery issues arising from the Plaintiffs' list of Discovery Topics, Defendants provide the following explanations of where Defendants have identified significant scope issues with the Plaintiffs' Topics.

- Plaintiffs' Topic 1:  Defendants are willing to produce the contents of the electronic data room that was generated in connection with the Perrigo-Omega transaction.  It is unclear exactly what materials Plaintiffs' seek beyond those shown to Perrigo as a potential buyer in 2014.
- Plaintiffs' Topic 5:  The Amended Complaint (Part IV.D) identified six specific products, which Plaintiffs contend were the subject of collusive pricing activities: Desonide; Econazole; Permethrin; Tretinoin; Clobetasol; and Halobetasol propionate.  Plaintiffs should not be permitted to now launch a broad discovery effort relating to all the products manufactured by Perrigo's Generic Rx division; instead, any discovery should be limited to those six products.
- Plaintiffs' Topic 6:  Defendants are willing to produce materials in connection with the six products that are referenced in the Amended Complaint: Desonide; Econazole; Permethrin; Tretinoin; Clobetasol; and Halobetasol propionate.  *See infra* 8(a)(5).
- Plaintiffs' Topic 7:  Defendants object to producing information about any proposals for mergers or acquisitions other than the Mylan effort in 2015 referenced in the Amended Complaint.
- Plaintiffs' Topic 9:  Defendants object to the effort to obtain financial data untethered to the allegations of the Amended Complaint.
- Plaintiffs' Topic 10:  Defendants object to the effort to obtain financial data untethered to the allegations of the Amended Complaint.
- Plaintiffs' Topic 11:  Defendants object to the effort to obtain financial information untethered to the allegations of the Amended Complaint.
- Plaintiffs' Topic 12:  Defendants object to this topic on the basis that it calls for the production of privileged materials.
- Plaintiffs' Topic 15:  The U.S. Department of Justice may object to disclosure of information related to any investigation conducted by it.  It is unclear what "ordinary course" contact with regulators is intended to reach or why contacts with all regulators would have relevance to the issues in the Amended Complaint.  Defendants also note that Belgian law provides protections for auditor-client communications which Defendants will assert as necessary.

(b)     As reflected in the competing schedules described below, the parties recognize that class certification discovery and motion practice will occur early in the

discovery period.

(c)     Proposed schedule and limits on depositions and interrogatories:

| Fact Discovery | Lead Plaintiff's Position | Defendants' Position |
|---|---|---|
| *Fed. R. Civ. P. 26(a)(1) disclosures* | September 21, 2018 | October 19, 2018, so that the parties can take Defendants' Answers to the Amended Complaint into account in crafting their respective disclosures and so that the Court has ample time to hold the Rule 16 conference in advance of disclosures |
| *Service of initial discovery* | At any time after the Fed. R. Civ. P. 26(f) conference, as Fed. R. Civ. P. 26(d) provides. Lead Plaintiff intends to serve its own initial discovery upon Defendants prior to September 30, 2018, but takes no position as to any discovery issued by Defendants | by 30 days of entry of the Court's Pretrial Scheduling Order but no earlier than October 12 |
| *Number of interrogatories* | Each side may serve up to 30 interrogatories on any party | Each side may serve up to 30 interrogatories on any party |
| *Number of depositions* | Each side may take up to 30 fact witness depositions, including fact witnesses whose testimony concerns class certification. | Each side may take up to 30 fact witness depositions.  Depositions taken for class certification discovery shall not count against this limit. |

| | | |
|---|---|---|
| *Class certification* | Motion by December 15, 2018<br>Response by March 1, 2019<br>Reply by April 12, 2019<br><br>No alteration to the standard practice in securities fraud class actions (and that both sides propose for all other experts in this action) permitting the moving party to submit expert report(s) responding to an expert report submitted by a party opposing the motion. | Motion by November 15, 2018<br>Response by March 15, 2019<br>Reply by May 2, 2019<br><br>No reply expert brief shall be allowed without leave of Court. Defendants' longer period for class certification discovery and motion practice takes into account the fact that Plaintiffs are asserting three separate classes. AC ¶ 273. These include a class of persons who traded on the Tel Aviv Stock Exchange and a class seeking to recover under U.S. Securities Exchange Act § 14(e), both of which will present novel issues that require more time than in other securities class action cases where only a § 10(b) claim is asserted. |
| *Completion of document production* | Any rolling production of documents responsive to requests served by September 30, 2018 shall begin by October 30, 2018 and be substantially completed by December 31, 2018. | Any production of documents responsive to requests served by September 30, 2018 shall be substantially completed by August 31, 2019. Any production of Plaintiffs' documents related to class certification issues shall be completed by December 31, 2018. |
| *Amendment of pleadings* | Pleadings may be amended (including any amendment to add or join parties) without further leave of Court by March 15, 2019. Thereafter, amendment may only be made with leave of Court for good cause shown. | Pleadings may be amended (including any amendment to add or join parties) without further leave of Court by December 14, 2018. Thereafter, amendment may only be made with leave of Court for good cause shown. |
| *Fact discovery deadline* | June 28, 2019 | January 31, 2020 |
| Expert discovery | | |
| *Affirmative expert reports* | Affirmative expert report(s) shall be served by the party bearing the burden of proof for a subject by July 26, 2019 | Plaintiffs' expert reports shall be served by March 16, 2020; deposition of Plaintiffs' experts completed by April 15, 2020 |
| *Rebuttal expert reports* | By August 30, 2019. | Defense experts reports shall be served by May 28, 2020; deposition of Defense experts completed by June 30, 2020 |
| *Reply expert* | By September 27, 2019 | Reply expert report(s), if any, |

| | | |
|---|---|---|
| *reports* | | shall be served by August 11, 2020; deposition of Reply experts completed by September 15, 2020. |
| *Expert depositions* | By October 31, 2019 | *See* above |
| Pre-trial and trial | | |
| *Dispositive motion deadline* | November 26, 2019 | Per the District of New Jersey's local rules and practices for complex cases, the deadline by which dispositive motions shall be served will not be set at this time. Defendants also propose that either side may request to submit motions for partial summary judgment on discrete issues if warranted during the discovery period.  In advance of such a submission, the parties will confer on a proposed briefing schedule. |
| *Pre-trial conference* | January 6, 2020 | Per the District of New Jersey's local rules and practices for complex cases, the date for a pretrial conference will not be set at this time |
| *Trial* | February 7, 2020 (Jury Trial) | Per the District of New Jersey's local rules and practices for complex cases, the date for a trial will not be set at this time |

9.    Anticipated special discovery needs:

The parties anticipate that multiple fact witnesses reside and electronically-stored information ("ESI") is maintained outside the United States, which may necessitate additional accommodations.  The parties intend to meet and confer on such issues as they arise.  The parties do not anticipate that any special discovery mechanism or procedure will be required at this time.

Defendants' additional statement re special discovery needs:
The issues likely will include translations of foreign-language materials and translations during depositions.  The production of foreign-based materials will also require a special review to ensure compliance with the European privacy laws and the laws of various European countries regarding taking discovery in their jurisdiction.

10.     As part of their conference pursuant to Fed. R. Civ. P. 26(f), the parties met and conferred regarding issues related to the review and production of ESI on August 20, 2018, including the issues specified by L. Civ. R. 26.1(d).  The parties are currently negotiating a protocol for the disclosure of ESI, including the form or forms in which it should be produced.

11.     The parties anticipate that discovery will involve confidential information which will require a Discovery Confidentiality Order pursuant to L. Civ. R. 5.3(b) and Appendix S. The parties expect to submit a Proposed Discovery Confidentiality Order by September 30, 2018.

12.     The parties do not currently anticipate any discovery related issues arising, other than those identified and described above.

13.     The parties do not believe that this case is one that may be resolved in whole or in part by voluntary arbitration.  The parties will report orally on related issues during the status conference that the Court will schedule.

14.     The parties do not believe this case is appropriate for bifurcation.  Defendants believe there may be opportunities for partial summary judgment on certain issues before the close of discovery. This would allow the claims to be narrowed before the end of the discovery period when remaining claims would be addressed in a summary judgement motion.

15.     The parties suggest that an interim status conference be held in November 2018.

16.     The parties do not consent to the trial being conducted by a Magistrate Judge.

17.    At this time, the parties believe that there are no other issues to address at the Rule 16 Scheduling Conference.


Date:  9/7/2018
By: ___/s/ Alan S. Naar_____

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Alan S. Naar
99 Wood Avenue South
Iselin, New Jersey 08830
(732) 476-2530
(732) 476-2531 (fax)
anaar@greenbaumlaw.com

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
James D. Wareham (*pro hac vice*)
James E. Anklam (*pro hac vice*)
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
(202) 639-7003 (fax)
james.wareham@friedfrank.com
james.anklam@friedfrank.com

Samuel P. Groner (*pro hac vice*)
One New York Plaza
New York, New York 10004
(212) 859-8000
(212) 859-4000 (fax)
samuel.groner@friedfrank.com

*Attorneys for Defendant Perrigo Company plc*


Date:  9/7/2018
By: ___/s/ Aric H. Wu_____

**GIBSON, DUNN & CRUTCHER LLP**
Reed Brodsky (*pro hac vice*)
Aric H. Wu (*pro hac vice*)
Marshall R. King
200 Park Ave
New York, New York 10166

Date:  9/7/2018
By: ___/s/ Michael T. G. Long_____

**LOWENSTEIN SANDLER LLP**
Michael B. Himmel
Michael T.G. Long
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com

*Liaison Counsel for Lead Plaintiff*

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Jonathan Lindenfeld
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jlindenfeld@pomlaw.com

*Co-Lead Counsel for Lead Plaintiff*

(212) 351-4000
(212) 351-4035 (fax)
rbrodsky@gibsondunn.com
awu@gibsondunn.com
mking@gibsondunn.com

*Attorneys for Defendant Joseph Papa*

Date: 9/7/2018
By: __/s/ John L. Hardiman_____

**SULLIVAN & CROMWELL LLP**
John L. Hardiman (*pro hac vice*)
Brian T. Frawley
Michael P. Devlin (*pro hac vice*)
125 Broad Street
New York, New York 10004
(212) 558-4000
(212) 558-3588 (fax)
hardimanj@sullcrom.com
frawleyb@sullcrom.com
devlinm@sullcrom.com

*Attorneys for Defendant Judy Brown*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
James A. Harrod (*pro hac vice*)
Jesse L. Jensen (*pro hac vice)*
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
jesse.jensen@blbglaw.com

*Co-Lead Counsel for Lead Plaintiff*