**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com

# FRIED FRANK

Direct Line: +1.202.639.7040
Email: james.wareham@friedfrank.com

January 22, 2019

Via ECF

The Honorable Leda Dunn Wettre
U.S. Magistrate Judge
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Federal Building & Courthouse
50 Walnut Street, Room 2060
Newark, NJ 07102

    Re:   *Roofer's Pension Fund v. Papa, et al.*, Civ. No. 2:16-cv-2805-MCA-LDW
           and ten Opt Out cases (list of the ten cases appears at end of this letter)

           **Discovery Dispute: Plaintiffs' Requests for Production of Materials
           that Perrigo Produced to Government Entities in
           Response to Government Investigations**

Dear Judge Wettre:

       This firm, together with Greenbaum, Rowe, Smith & Davis LLP, represents Defendant Perrigo Company plc ("Perrigo") in all of the above-captioned actions. On behalf of Perrigo, we submit this reply letter about a discovery dispute regarding Perrigo materials produced in response to government investigations. This issue was discussed during the conference with the Court on November 28, 2018.

       Since November 28, the parties held two meet and confer sessions and exchanged emails but were unable to resolve this dispute. The Class Plaintiffs (joined by opt out plaintiffs) and Defendant Perrigo each filed initial submissions on January 14, 2019. (ECF 169; ECF 170) Under the parties' agreement concerning these submissions, simultaneous responses of no more than five pages are due on January 22, 2019 by 5:30 pm. There will be no other written submissions thereafter; absent a request from the Court, of course.

*Dispute Regarding Documents Perrigo Produced to Government Agencies during Investigations.*

       During a December 11, 2018 meet and confer session, Perrigo proposed that Plaintiffs have their anonymous economist identify an additional number (in the range of six) Perrigo generic Rx drugs that Plaintiffs' economist thought might also exhibit indicia of collusive

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Leda Dunn Wettre
January 22, 2019
Page 2

pricing.[1] In doing so, Perrigo followed this Court's indication that while the Court was inclined to go beyond the six generic Rx drugs identified in the operative Complaint, there "have to be some rational limits." Conf. (11-28-18) Tr. at 18-19.

Perrigo's proposal that the anonymous economist identify additional products for Plaintiffs to add to the six original products was meant to increase the potential that there is some rational basis for seeking any additional products.[2] Perrigo proposed to produce materials that mention any of the additional products identified by Plaintiffs' economist from the materials provided during government investigations, in addition to the materials germane to the six products analyzed in the Amended Complaint.

Plaintiffs' counterproposal (issued December 18, 2018) does not retreat one iota from Plaintiffs' original position that Plaintiffs should receive *all* documents produced during government investigations (whether already produced or produced in the future), regardless of whether the documents mentioned any of the six products named in the Amended Complaint or any additional products that Plaintiffs would rationally identify. Indeed, Plaintiffs seek further searches for the six products, and they even proposed to identify up to an additional nine Perrigo generic Rx products at any point during the discovery process for yet further searches. All the while, Plaintiffs also propose to reserve the right to seek additional, unidentified responsive materials that Lead Plaintiffs may later designate. In reality, they propose no resolution of the issue, never mind one consistent with the Federal Rules of Civil Procedure and prior decisions of this Court.

Plaintiffs' counterproposal is not a compromise at all. They insist (under their proposal (a)) on all materials produced to government agencies without any relevance linkage to their allegations of collusive pricing. In addition, they propose an open-ended opportunity and "full reservation of rights to seek" more materials (nine additional products plus unlimited "additional responsive material" that they designate).[3] *See* Plaintiffs' proposal (b) and the sentence immediately following in their email of Dec. 18, 2018 (Exhibit 1 to Plaintiffs' January 14, 2018 Letter). Were this Court to order production of all materials produced to government agencies without limitation, the Rule 26(b)(1) relevance principle will be completely turned on its head.

Perrigo's January 14, 2019 letter provides clear case law supporting Perrigo's position. Plaintiffs' claims related to alleged collusive pricing focused on six specific generic Rx drugs, not all generic Rx drugs manufactured by Perrigo. As the cases cited by Perrigo demonstrate, this Court has recognized that a party seeking discovery is not entitled, as a matter of routine, to all documents produced in response during investigations by government agencies. *In re*

---

[1] Perrigo suggested an additional six products (for a total of twelve) and indicated a willingness to consider alternative numbers if Plaintiffs provided an explanation for additional products based on their economist's analysis.
[2] In making this compromise proposal, Perrigo did not concede the validity of the initial analysis by the anonymous economist used in the Amended Complaint or any later identification of additional products by the economist.
[3] Their proposal also includes in the paragraph above (a) that there be searches for the six products under agreed search terms to reach any materials not produced to the government agencies.

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Leda Dunn Wettre
January 22, 2019
Page 3

*Schering-Plough Corp.*, 2008 WL 11381889, *3-*4 (D.N.J. Apr. 22, 2008) (Shipp, M.J.); *Eisai Inc. v. Sanofi-Adventis U.S., LLC*, 2011 WL 5416334, *9 (D.N.J. Nov. 7, 2011) (Arpert, M.J.). Indeed, during the discovery conference on November 28, 2018 in this matter, this Court noted: "I can't sustain, plaintiffs' counsel, all documents and communications concerning essentially all of the Generic drugs." Conf. (11-28-18) Tr. at 18. Plaintiffs' January 14, 2019 letter offers no case law in support of their position that they should be entitled to every Perrigo document produced during any government investigation without regard for Plaintiffs' allegations in this case or the Rule 26(b)(1) relevance test. Requiring production of all materials provided to government agencies does precisely what this Court has said it will not do.

The Court should simply follow the *Schering-Plough* and *Eisai* rulings. Perrigo should produce to Plaintiffs materials that were provided to the government agencies only if the materials are potentially relevant -- that is, that they mention the six products referenced in the Amended Complaint and other products that the anonymous economist can identify using the methodology that led to the initial identification of the six products named in that Complaint.[4]

*Perrigo's Document Production to Date and Its Efforts to Address Discovery Matters.*

To date Perrigo has produced in excess of 1.3 million pages of material to Plaintiffs on a variety of topics. Plaintiffs' Letter fails to acknowledge the sheer magnitude of Perrigo's production. Perhaps Plaintiff's January 14 Letter is silent because describing Perrigo's production would demonstrate that Plaintiffs have been afforded access to a huge amount of relevant information. For example, Perrigo's initial production included the Omega confidential information package of July 2014 and the entire September 2014 data room that Omega's prior owners gave to Perrigo during the due diligence process while Perrigo was considering whether to bid to acquire Omega. The Amended Complaint (at ¶ 55) asserts that the confidential package and the data room revealed to Perrigo "considerable integration and operating challenges with Omega." Perrigo rejects that allegation of the Amended Complaint. Nonetheless, at the earliest stage of the discovery process, Perrigo most certainly has provided Plaintiffs an opportunity to examine the entire Omega confidential package and the data room.

Moreover, Plaintiffs apparently have not reviewed the detailed material Perrigo has already produced. *See* Plaintiffs' January 14, 2019 Letter at 2 (complaining about the purported lack of materials from custodial files). Within the Perrigo produced materials are internal Perrigo documents related to the acquisition of Omega in 2014-2015 and post-acquisition Omega matters. These materials came from the custodial files and were used as exhibits in the arbitral filings.[5] Had Plaintiffs bothered to review the produced arbitral materials with care, they could

---

[4] Perrigo proposes that the number of additional products be limited to six. Perrigo offered to consider a higher number and stands by its offer. In all events, in designating additional products, Plaintiffs should provide some indicia of analysis (similar to the analysis in the Amended Complaint) that there might have been collusive pricing activity related to the designated additional products.

[5] In accordance with Plaintiffs' document request, Perrigo has produced (with designations under the Confidentiality Order) the parties' filings in the confidential arbitral proceedings. (As noted during the initial Scheduling Conference in October 2018, this task included the complexity surrounding ensuring conformity with European

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Leda Dunn Wettre
January 22, 2019
Page 4

not have truthfully asserted on January 24, 2019 that they have received no Perrigo documents from custodial files. In short, Plaintiffs' contention that Perrigo has produced no internal Perrigo documents is demonstrably false.

 Despite the complaints in Plaintiffs' Letter, Perrigo has provided to Plaintiffs proposed revised search terms on all of the topics unrelated to collusive pricing allegations (including the Omega integration topic referenced in Plaintiffs' Letter). (The materials related to collusive pricing contentions are discussed above.) Perrigo has reviewed search terms that were proposed by Plaintiffs and, in some instances, made counterproposals intended to minimize the collection and review of irrelevant materials. The proposed search terms are nearly 100 search strings and terms across a variety of topics. By way of example, Perrigo determined while reviewing Plaintiffs' proposed terms that some search concepts and abbreviated terminology are overbroad because the abbreviated terms could have multiple meanings, including meanings that were entirely unrelated to the case. By adding proximity connectors (for example, w/30 or w/15 instead of using the universal connector "and") the problem appears to diminish. It did take the Perrigo legal team time to identify these types of problems, to consider them, and to arrive at potential solutions. Those proposed solutions have now been presented to Plaintiffs.

 The Court should reject Plaintiffs' latest effort to seek a document discovery cutoff.[6] Plaintiffs' inaccurate presumption is that Perrigo has not made any progress in producing materials or in resolving issues. As noted above, Perrigo has made a large production of relevant materials, after appropriate review and having given due regard to privacy law issues, and those materials include internal Perrigo historical communications. Issues with search terms are being resolved, as Perrigo awaits Plaintiffs' response to Perrigo's proposed revised search terms. There is simply no justification for the Court to reverse course now. The Court recognized at the Initial Scheduling Conference on October 24, 2018 and in its subsequent Pretrial Scheduling Order that there is no call in this complex matter for Plaintiffs' proposed document production deadline. Nothing has changed to disturb the Court's prior ruling on this issue.

*********************

 In sum, Plaintiffs have not established that their request for all Perrigo documents provided during government investigations meets the relevance standard of Rule 26(b)(1) as interpreted by this Court in prior cases. The Court should reject Plaintiffs' demands. Instead, the Court should approve Perrigo's position: Perrigo will produce all materials already produced to government agencies that mention the six products in the Amended Complaint using the agreed upon custodian list for the relevant discovery period negotiated by the parties. Perrigo also stands by its good faith offer to produce materials from the production made to government agencies that mention a limited number of additional generic Rx drugs if Plaintiffs' anonymous

---

privacy laws.) Because of the confidentiality obligations and designations, Perrigo cannot provide more detailed, explanatory information in this public Court filing.

[6] At no time during the meet and confer process did Plaintiffs indicate that they intended to raise the document production cutoff proposal anew. That is why Perrigo's January 14, 2019 letter makes no reference to any such issue.

economist identifies purportedly unusual pricing activity for those drugs during the relevant period set forth in the Amended Complaint. As explained above, Perrigo has already made extensive production of highly relevant materials. Plaintiffs also have not presented any legitimate rationale for imposing a document production deadline upon Defendant Perrigo.

Respectfully submitted,

*James D. Wareham*

and

GREENBAUM, ROWE, SMITH & DAVIS LLP

*Alan S. Naar*

cc via ECF: Counsel for all parties
18072163

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Leda Dunn Wettre
January 22, 2019
Page 6

### List of Ten Opt Out Cases

*Carmignac Gestion, S.A. v. Perrigo Company plc, et al.*, No. 2:17-cv-10467-MCA-LDW

*Manning & Napier Advisors, LLC v. Perrigo Company plc, et al.*, No. 2:18-cv-674-MCA-LDW

*Mason Capital L.P., et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-1119-MCA-LDW

*Pentwater Equity Opportunities Master Fund Ltd., et al. v. Perrigo Co. plc, et al.*, 2:18-cv-1121-MCA-LDW

*Harel Insurance Company, Ltd., et al. v. Perrigo Company plc, et al.*, 2:18-cv-2074-MCA-LDW

*First Manhattan Co. v. Perrigo Company plc, et al.*, No. 2:18-cv-2291-MCA-LDW

*TIAA-CREF Investment Management, LLC, et al. v. Perrigo Company plc, et al.*, No. 2:18-cv-8175-MCA-LDW

*Nationwide Mutual Funds, et al. v. Perrigo Company plc, et al.*, No. 2:18-cv-15382-MCA-LDW

*WCM Alternatives: Event-Driven Fund, et al. v. Perrigo Co., plc, et al.*, No. 2:18-cv-16204-MCA-LDW

*Hudson Bay Master Fund Ltd., et al. v. Perrigo Co., plc, et al.*, No. 2:18-cv-16206-MCA-LDW