

|  |  |
|---|---|
| Michael T.G. Long<br>**Partner** | One Lowenstein Drive<br>Roseland, New Jersey 07068<br>**T**: **973 422 6726**<br>**F**: **973 422 6727**<br>**E**: **mlong@lowenstein.com** |

January 22, 2019

**By ECF**

Hon. Leda Dunn Wettre
United States District Court for the
 District of New Jersey
Martin Luther King Building &
 U.S. Courthouse
50 Walnut Street
Newark, NJ  07101

      Re:    *Roofers' Pension Fund v. Papa, et al.*,
              Civil Action No. 16-2805 (MCA) (LDW)

Dear Judge Wettre:

      We write on behalf of Lead Plaintiff and in response to Perrigo's letter dated January 14, 2019, regarding its refusal to produce relevant, responsive documents regarding generic drug pricing.[1]  Because Perrigo's generic drug pricing practices are central to this litigation, Lead Plaintiff served Requests for Production ("RFPs") on September 7, 2018, seeking documents that Perrigo had already reviewed and produced in generic drug price-fixing investigations and lawsuits, and certain other categories of generic drug pricing documents to be culled specifically for this litigation.  To date, although 137 days have passed, ***Perrigo has not produced even a single document in response to Lead Plaintiff's generic drug price fixing RFPs***.  Nor has Perrigo responded to the generic drug pricing search terms that Lead Plaintiff proposed 62 days ago.  Even now, Perrigo's arguments resisting discovery merely recycle what it submitted to the Court in November, and which the Court addressed during the November 28, 2018 status conference.

      Perrigo's delays prejudice Lead Plaintiff.  This Court has allotted 330 days for fact discovery.  As of today, Perrigo has squandered more than a quarter of that time.  Without ***any*** of the generic drug pricing documents, Lead Plaintiff is unable to begin its review of those documents or prepare for depositions that may involve that portion of the litigation.  In order to complete fact discovery prior to its close on September 19, 2019, Lead Plaintiff respectfully requests that the Court: (1) direct Perrigo to immediately produce the generic drug pricing

---

[1] Counsel for Lead Plaintiff are informed that all individual action plaintiffs join in this letter.

documents it has already produced elsewhere; and (2) direct Perrigo to substantially complete its production of documents to be culled using search terms and custodians by March 7, 2019, *i.e.*, six months after the RFPs were served upon Perrigo.

**Previously-produced documents can easily be produced here:** Perrigo has already culled, reviewed and produced to investigators documents highly relevant to Lead Plaintiff's generic price-fixing claims. Such documents likely: (a) reflect communications that Perrigo had with competitors regarding pricing (a massive red flag, as such communications do not normally occur in competitive markets); (b) demonstrate whether Perrigo's actual pricing strategy matched the "flat to up slightly" strategy it described to investors; (c) show Perrigo's actual beliefs about the competitive environment it described to investors as "highly competitive," though it and competitors contemporaneously implemented 300-500% price increases; and (d) address specific price increases for the Six Example Drugs and other generic prescription drugs impacted by collusive conduct.[2] Accordingly, Lead Plaintiff's RFP 8 sought "All documents produced to any Government Agency regarding the pricing of generic prescription drugs."

Perrigo can easily provide the same documents here. *See* Transcript of November 28, 2018 teleconference ("Tr.") at 22:2-9. Pursuant to a protocol agreed upon by Lead Plaintiff and Perrigo in a November 1, 2018 meet-and-confer, Perrigo would merely need to restamp those documents for production in this case, and copy the hard drives.

Perrigo has previously represented that such restamping would alleviate any concerns with respect to the order referenced in Perrigo's January 14, 2019 letter that was entered in the generic drug price-fixing litigation pending in the Eastern District of Pennsylvania ("E.D.Pa. Order"). The E.D.Pa. Order—to the extent it has any bearing on Perrigo's actions in this case—does not restrict the production of the previously-produced documents. It expressly provides that such documents may be produced, requiring only that the manner of production obscure identification of whether those documents were previously produced to the United States Department of Justice:

> A person responding to a discovery request (*e.g.,* subpoena, request for production of documents, notice of deposition) ("Responding Person") must not disclose what documents or other information has been provided to the Department of Justice in the course of its criminal investigation into the generic pharmaceuticals industry, provided that ***nothing in this paragraph prohibits a Responding Person from providing documents or other information that previously had been provided to the Department of Justice*** so long as the production is made in a manner that does not indicate whether those documents or other information previously had been provided to the Department of Justice.

---

[2] For example, an antitrust complaint filed last week by insurance giant United Healthcare accuses Perrigo of colluding with other generic "competitors" to fix prices for a topical drug called nystatin, as well as certain of the Six Example Drugs. *See United Healthcare Servs., Inc. v. Actavis Holdco U.S., Inc., et al.*, No. 0:19-cv-00121 (D. Minn. Jan. 16, 2019).



*See* E.D.Pa. Order at paragraph 4 (emphasis added), previously submitted as part of ECF No. 153.

In a November 1, 2018 meet-and-confer, Perrigo's counsel indicated to Lead Plaintiff's counsel that it believed that restamping and aggregating the generic drug pricing productions that Perrigo has previously made to government investigators (such as the Department of Justice or state Attorneys General) or to a private antitrust litigant, without distinguishing to whom the production was previously made, would satisfy its obligations under the E.D.Pa. Order. *See also* Perrigo's letter dated November 14, 2019, ECF No. 153 at 2 fn.2 (acknowledging that the parties had resolved how to address production without violating the E.D.Pa. Order) and Lead Plaintiff's letter dated November 19, 2019, ECF No. 156 at 3 (describing the negotiated agreement). Perrigo should be held to the process it negotiated. The E.D.Pa. Order posed no impediment to production then, and poses no impediment now. Nothing has changed on this subject since those letters were submitted in November, or since the November 28, 2018 teleconference with the Court.

Perrigo's attempt to re-litigate the production of generic prescription drug-related documents it previously provided to government entities serves no purpose other than delay. Perrigo raises no credible basis for resisting production of previously-produced documents. Because subsequent productions of documents already culled, reviewed and produced to regulators involve minimal burden, the "prevailing practice" in this Circuit and elsewhere is to require that such documents be produced. *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *12 (E.D. Pa. Nov. 29, 2004) (ordering production); *see also In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK)(JCF), 2013 WL 5788687, at *4 (S.D.N.Y. Oct. 28, 2013); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2013 WL 2237887, at *1 (N.D. Cal. May 21, 2013); *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 111 (S.D.N.Y. 2013); *Pension Tr. Fund for Operating Eng'r v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 917 (E.D. Wis. 2013); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1113 (N.D. Cal. 2012); *King Drug Co. of Florence, Inc. v. Cephalon, Inc., et al*, No. 2:06-cv-01797 (E.D. Pa. Apr 27, 2006) (slip order, ECF No. 219); *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 385 (D.N.J. 1990), *aff'd*, 949 F.2d 653 (3d Cir. 1991).[3]

---

[3] The few inapposite cases cited by Perrigo are exceptions that prove the rule. In *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, Civil Action No. 08-4168 (MLC), 2011 WL 5416334, at *9-10 (D.N.J. Nov. 7, 2011), the court declined to compel production from a prior proceeding involving "a different party that manufactured a different drug . . . and made allegations about different Lovenox contracts that were offered under different market conditions." *See also In re Schering-Plough Corp.*, Civil Action No. 06-5774 (SRC), 2008 WL 11381889, at *3-4 (D.N.J. Apr. 22, 2008) (declining in light of pending motion to dismiss and significant differences identified between government investigation and private litigation to compel, at that time, production of previously-produced documents). In *Pegoraro v. Marrero*, 281 F.R.D. 122, 132 (S.D.N.Y. 2012), the plaintiff sought whistleblowing reports "regardless of the specific nature of the proceeding and factual circumstances underlying those proceedings." Here, Lead Plaintiff seeks



Perrigo's claim that even the ***already produced*** documents should be limited to the Six Example Drugs merely rehashes the same argument that this Court heard and rejected in November. *See* Tr. at 18:23-19:2 ("I am going to let them go broader than the six"). As Lead Plaintiff previously explained, such limitation would be highly prejudicial and inconsistent with Judge Arleo's decision upholding misrepresentations beyond the Six Example Drugs. *See* ECF Nos. 152 and 156. As with before, Perrigo makes no showing that the previously-produced generic drug pricing documents relate to issues distinct from this case, or would be burdensome to produce. *See Barton v. RCI, LLC*, Civil Action No. 10-3657 (PGS), 2013 WL 1338235, at *3 (D.N.J. Apr. 1, 2013) ("The party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden" and "must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined in Fed. R. Civ. P. 26(b)(1) or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

If anything, Perrigo's attempt to conceal previously-produced documents is less compelling today than when argued in November. In the interim, an article describing the growing investigation of the state Attorneys General explained how industry executives used "a form of shorthand" to communicate coded pricing signals. *See* C. Rowland, "Investigation of generic 'cartel' expands to 300 drugs," THE WASHINGTON POST, Dec. 10, 2018.[4] Because Lead Plaintiff lacks the government investigators' understanding regarding the shorthand used to communicate coded pricing signals, such messages may escape search term review. They would, however, likely be contained in the previously-produced collection.

Perrigo's only new argument—that denying production of previously-produced documents would make it easier for Perrigo to prepare witnesses for deposition—makes little sense. *See* ECF No. 170 at 3. Securities fraud class actions almost always involve large document productions. *See, e.g., In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 864 (S.D.N.Y. 2018) (more than 25 million pages); *Youngers v. Virtus Inv. Partners Inc.*, No. 15-cv-8262, 2017 WL 5991800, at *1 (S.D.N.Y. Dec. 4, 2017) (over 4.5 million pages, including over 3.2 million pages of materials previously-produced to the SEC); *In re Schering-Plough Corp.*, Civil Action No. 08-397 (DMC) (JAD), 2013 WL 12174570, at *21 (D.N.J. Aug. 28, 2013) (12 million pages). Deponents are never required to review or memorize every document produced. Instead, they are deposed based upon their personal knowledge.

---

only documents submitted regarding generic drug pricing—an issue central to this case. *MacDermid Printing Solutions, L.L.C. v. E.I. du Pont de Nemours & Co.*, Civil Action No. 07-4325 (MLC), 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008) did not involve a prior production to a government agency, and the documents sought were patently irrelevant.

[4] Available at https://www.washingtonpost.com/business/economy/investigation-of-generic-cartel-expands-to-300-drugs/2018/12/09/fb900e80-f708-11e8-863c-9e2f864d47e7_story.html?utm_term=.e4d5f15d36d3



Finally, Perrigo's contention that its involvement in government investigations does not prove its guilt is a red herring. *See, e.g.,* ECF No. 170 at 4. The issue is not whether the government has charged Perrigo, but whether the documents it produced to government investigators and private antitrust litigants are likely to be relevant here. Fed. R. Civ. P. 26. They are. That Perrigo is itself a target of such investigations, *see* ECF No. 89 at ¶20, has had its facilities raided by government investigators, *see id.* at ¶21, and has been named as a defendant in multiple civil antitrust lawsuits regarding generic drug price fixing suggests that the prior productions relate to Perrigo's own generic prescription drug pricing practices. Uncovering the facts regarding Perrigo's conduct is the very purpose of discovery. Therefore, Lead Plaintiff expects that the previously-produced documents will be highly probative to its claims.

**Lead Plaintiff's proposed compromise drastically lowers the burden of search term review:** By negotiation of the parties, search term review in this case will only be applied against eleven generic drug pricing custodians. Accordingly, even without any further restriction the burden will not be excessive given the needs of this case. To further reduce the burden, Lead Plaintiff has agreed that if Perrigo turns over the already-produced documents, the scope of production for search term-culled documents may be limited to documents related to the Six Example Drugs, and a small number of additional drugs that Lead Plaintiff may identify. Under Lead Plaintiff's proposal, Perrigo would be required to produce documents related to no more than fifteen generic prescription drugs in total—10% or less of Perrigo's generic prescription drug portfolio.[5]

Lead Plaintiff's proposal alleviates Perrigo from applying search terms and producing documents specific to 90+% of Perrigo's generic prescription drugs, drastically reducing its burden even with respect to the small number of custodians. However, timing remains critical, as Lead Plaintiff needs time to review the documents and prepare for and take depositions. Therefore, Lead Plaintiff respectfully requests that the Court order search term production to be substantially completed by March 7, 2018—six months after Lead Plaintiff served the RFPs requesting those documents.

To the extent it would be helpful, Lead Plaintiff is available to discuss these issues at the Court's convenience.

Respectfully submitted,

*/s/ Michael T.G. Long*
Michael T.G. Long

---

[5] Lead Plaintiff has also proposed a reasonable method of discerning whether a document pertains to an identified drug: a document relates to an identified drug if it mentions the drug specifically, by use of an abbreviation or nickname, by use of an NACDS code or SKU, by reference to the drug category, etc., or discusses generic drug practices generally without any limitation, and thus facially could relate to any generic prescription drug in Perrigo's portfolio.

