**Lowenstein Sandler**

One Lowenstein Drive
Roseland, New Jersey 07068

T: 973 422 6726
F: 973 422 6727
E: mlong@lowenstein.com

April 1, 2019

**By ECF**

Hon. Leda Dunn Wettre
United States District Court for the
 District of New Jersey
Martin Luther King Building &
 U.S. Courthouse
50 Walnut Street
Newark, NJ  07101

Re:  *Roofers' Pension Fund v. Papa, et al.*,
 Civil Action No. 16-2805 (MCA) (LDW)

Dear Judge Wettre:

As discussed during the March 4, 2019 telephonic status conference, we write on behalf of Lead Plaintiff, with the agreement of all Individual Plaintiffs, to respectfully request that Court order Defendant Perrigo to: (1) promptly produce non-privileged documents from the Investigative Productions produced to the Department of Justice ("DOJ") or State AGs that "hit" on search terms the Parties have agreed upon in connection with Perrigo's collection of documents from the Generic Drug Price-Fixing custodians (the "Generic Drug Search Terms," attached as Ex. A); and (2) substantially complete its production of documents responsive to Lead Plaintiff's requests served on September 7, 2018 no later than May 1, 2019, and fully complete production of all responsive documents by May 31, 2019.

> I. **Perrigo should be required to produce those documents from the Investigative Productions that match the Generic Drug Search Terms agreed to in this case**.
>
> A. **The evidence sought is relevant and proportional to the needs of this action.**

The generic drug collusion misrepresentations alleged in Lead Plaintiff's Amended Complaint substantially overlap with the coordinated government investigations and civil litigation into Perrigo's conduct.  Both involve the same Perrigo division, the same alleged collusive practices, substantially the same time period, many of the same "competitors," and almost certainly some of the same drugs.  *Compare, e.g.,* Amended Complaint (ECF No. 89) ("Compl."), ¶¶69, 176-204 (alleging, among other things, that Defendants inflated the prices of select Generic Rx drugs including six identified example drugs (the "Six Example Drugs") and misrepresented the "competitive environment" and "flat to up slightly" pricing strategy of its Generic Rx division) *with In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-MD-2724 (the "E.D. Pa. Action"), Opinion, ECF No. 857 (February 15, 2019 opinion largely sustaining private antitrust claims that Perrigo and other generic manufacturers "engaged in an unlawful scheme or schemes to fix,

maintain and stabilize prices, rig bids, and engage in market and customer allocations of certain generic pharmaceutical products," including certain of the Six Example Drugs). Indeed, the government's investigations are directly referenced in the claims sustained by Judge Arleo. *See, e.g.*, Compl., ¶¶20-21; *Roofers*, 2018 WL 3601229, at *21 ("[T]hat the Department of Justice raided Perrigo's offices as part of a criminal price-fixing probe . . . is somewhat probative of scienter."). Accordingly, to jump-start discovery and minimize the burden upon Perrigo, on September 7, 2018, Lead Plaintiff requested relevant documents from the Investigative Productions. As this Court acknowledged during the November 28, 2018 telephonic conference, "***the burden's taken away if it's already been culled for production, reviewed, and produced***." Transcript of Nov. 28, 2018 Conference (ECF No. 167) ("Nov. Tr."), at 22:2-9.

For more than four months, Lead Plaintiff has sought a compromise consistent with this Court's statement that Lead Plaintiff is entitled to "go broader" than the Six Example Drugs, subject to "some rational limits." Nov. Tr., 18:23-19:2. Lead Plaintiff believes that the middle ground suggested by this Court on February 8, 2019—running the Generic Drug Search Terms against ***both*** the Investigative Productions and the agreed custodians—is reasonable and should be implemented:

. . . [A]fter this call, the counsel should speak very quickly about running searches through the investigative files, ***not just through the 11 separate custodians***. . . . , I think the plaintiffs are legitimately concerned that they're missing a whole trove of relevant materials . . . . But back to subject matter requests, I don't see why, if it's a relevant subject matter, it can't be run through those government files in addition to whatever custodians' files you've agreed."

Transcript of Feb. 8, 2019 Conference (ECF No. 175), at 36:21-37:9.[1] Lead Plaintiff accepted this compromise. Perrigo, however, has refused to agree to this search.

### B. Screening by search terms will ensure that production is tailored to the subject matter of this litigation.

Lead Plaintiff and Perrigo have agreed on a set of relevant Generic Drug Search Terms to search the custodial files of 11 Perrigo custodians. Those terms are carefully tailored to the subject matter of the Amended Complaint and to respond to Lead Plaintiff's document requests. *See* Ex. A. The search terms include:

- the names and national drug codes for the Six Example Drugs identified in Lead Plaintiff's Amended Complaint;

- the email domains of the competitor manufacturers for the Six Example Drugs identified in Lead Plaintiff's Amended Complaint—with whom there should be few communications under normal competitive circumstances;[2]

---

[1] The Court also affirmed that Lead Plaintiff is not limited to the Six Example Drugs. *Id.* 17:12-15 ("I wasn't going to rule in the -- during the course of discovery, you could never get anything beyond the six. And I said so in so many words.").



- terms aimed at isolating Perrigo's internal communications about the pricing of competitor manufacturers for the Six Example Drugs and regarding Perrigo's interactions with those manufacturers;

- five terms aimed at locating documents about industry anticompetitive practices, the companies and persons who first confessed to widespread industry price-fixing and market allocation, and pricing pressures that the anticompetitive practices were intended to overcome; and

- five terms aimed at locating documents about the industry conferences that both Lead Plaintiff's Amended Complaint and the Attorneys General of 45 states, Puerto Rico, and the District of Columbia in the E.D. Pa. Action allege were used to fix prices.  *Compare, e.g.*, Compl., ¶82 ("industry meetings" were identified "for their role in facilitating price-fixing in the generic drug industry") *with* Plaintiff States' Consolidated Amended Complaint, E.D. Pa. Action (Civil Action No. 17-3768, ECF No. 15) ("States AG Compl. (E.D. Pa. Action)"), ¶¶85-86 (generic pharmaceutical sales representatives would "meet with their competitors and discuss competitively sensitive information" at "what they refer[red] to as a . . . 'Women in the Industry' meeting or dinner").

### C. New evidence from the unsealed State AG Complaint confirms the need for documents beyond the eleven custodians.

Although Perrigo has conceded, as it must, that the Generic Drug Search Terms should be run on the 11 agreed-to custodians, running the full array of search terms against the Investigative Productions is equally critical.  Indeed, new evidence revealed in the recently-unsealed States AG Complaint in the E.D. Pa. Action confirms that the 11 custodians alone will not provide complete information.

The 11 custodians here were derived from Perrigo's representation in sworn interrogatory answers that only those persons were involved in pricing decisions, other than in a purely clerical capacity.  However, the States AG Complaint establishes that a broader group of Perrigo executives were involved in price-fixing communications.  Specifically, the States AG Complaint alleges that a Perrigo executive not among the 11 agreed-to custodians—referenced by the initials "P.H." and believed to be ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—was among the pharmaceutical executives present at a May 2014 industry conference with whom a purported competitor was able to "reach and/or confirm agreements" regarding "price increase strategies":

The following week, A.S. met in person and ***discussed the price increase strategies with a number of different competitors at the MM CAP conference***. During that conference she was

---

[2] As this Court observed in November, "all documents and communications between Perrigo and competitors regarding the pricing of products . . . sounds broad, but . . . 95 percent of what's responsive to that might be highly relevant."  Nov. Tr., 18:8-14.



able to personally reach and/or confirm agreements with at least Defendants Aurobindo (Fosinopril/HCTZ, Glyburide and Glyburide/Metformin), Sandoz (Carisoprodol and Fosi-HCTZ) and Lannett (Doxy Mono), among other competitors. She advised Malek of her success via email on May 15, 2014:

Hi Jason: At the MMCAP meeting yesterday, ***spoke with some other industry reps and found similar like minding on the pricing strategies we discussed***. Overall, spoke with Aurobindo ([T.G.]), Sandoz ([C.B.]), **_Perrigo ([P.H.]) (Colistimethate)_**, Xgen ([B.P.]) (Colistimethate), and Lannett ([T. S.]). . . . I will try to meet with the Teva rep, L.P., today. Supposedly, Midlothian is here too –but I have not seen G. S. yet. . . .

States AG Compl. (E.D. Pa. Action), ¶287.  This allegation from the States AG Complaint—which implicates both a Perrigo executive not among the 11 agreed to by the parties and a drug (Colistimethate) not among the Six Example Drugs—demonstrates the undeniable relevance of documents from the Investigative Productions that go beyond the 11 custodians.

Given this unmistakable evidence of price collusion involving Perrigo, the Court should order Perrigo to run the Generic Drug Search Terms across the entire Investigative Productions, without limiting the number of custodians.  This is especially appropriate given that collusion is almost always demonstrated by circumstantial evidence rather than direct, express admissions. *See, e.g., Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) ("proving a conspiracy is usually difficult and often impossible without resort to discovery procedures. This is particularly true in antitrust actions, where 'the proof is largely in the hands of the alleged conspirators.'") (quoting *Poller v. Columbia Broad. Sys. Inc.*, 368 U.S. 464, 473, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962)); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29160, at *7-9 (E.D. Pa. Oct. 29, 2004) ("In antitrust cases, courts often take a liberal view of relevance and permit broad discovery.") (collecting cases).  And, as the Court properly recognized, Perrigo would incur minimal burden because the documents have already been culled and reviewed.  Nov. Tr., 22:2-9.  Perrigo's delays in producing these clearly responsive documents must end.[3]

### D. Producing a search term-generated subset of the Investigative Productions will not violate the E.D. Pa. Order.

To hide relevant but incriminating documents, Perrigo has invoked a pre-trial order entered in the private antitrust action proceeding against it and other generic drug manufacturers in the Eastern District of Pennsylvania.  *See In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 2:16-md-02724-CMR (E.D. Pa.) (the "E.D. Pa. Action"), Pre-Trial Order No. 44 (the "E.D. Pa. Order").  Perrigo's claim that it will violate the order if it is ordered to produce

---

[3] In the private antitrust action, Perrigo has agreed to search twenty (20) custodians.  *See* E.D. Pa. Action, ECF No. 744-5, at ¶3.  Here, anticipating the complete production of relevant portions of the Investigative Productions, the parties negotiated only 11 generic drug custodians.  Without the documents from the Investigative Productions, relevant production in this case would require at least as many custodians—twenty (20)—as in the private antitrust litigation.



documents from the Investigative Productions is baseless.  The order explicitly provides for such production:

A person responding to a discovery request (*e.g.,* subpoena, request for production of documents, notice of deposition) ("Responding Person") must *not disclose what documents or other information has been provided to the Department of Justice* in the course of its criminal investigation into the generic pharmaceuticals industry, provided that *nothing in this paragraph prohibits a Responding Person from providing documents or other information that previously had been provided to the Department of Justice so long as the production is made in a manner that does not indicate whether those documents or other information previously had been provided to the Department of Justice*.

E.D. Pa. Order, ¶4 (emphasis added).

Nothing in the E.D. Pa. Order remotely suggests that it restricts discovery in any other proceeding—to the contrary, it specifically contemplates it.  The interests that the order seeks to protect—the specific identification of the documents produced to the DOJ—are not implicated here. As the DOJ explained in a filing in the E.D. Pa. Action on June 22, 2018, it has no objection to the production of materials that it had previously received, provided that they are not produced in a manner that makes explicit they had been produced to the DOJ.  The DOJ specifically explained that it is concerned that "*the subjects of the federal criminal investigation*"—*not* private plaintiffs—will learn what documents have been previously produced to the DOJ (such as through "a Bates numbering system that includes 'DOJ,' 'USA,' or another element indicating that documents had been provided to federal authorities"), which would give them "greater insight into the scope of the investigation and more opportunities to try and interfere with it."  United States Statement of Position, E.D. Pa. Action, ECF No. 631, at 1-2 & n.2, attached hereto as Ex. B.  But no generic drug manufacturer is party to this action other than Perrigo, and thus Perrigo's re-production of its own documents, under the Confidentiality Protective Order entered by this Court, could not reveal anything to any "subject[] of the federal criminal investigation."

Regardless, Lead Plaintiff has agreed to extensive safeguards that fully eliminate even the theoretical possibility that production here could disclose the scope of the DOJ production.  In November 2018, Lead Plaintiff and Perrigo agreed that Perrigo need not produce correspondence with the DOJ describing the productions to that agency, and could simply re-stamp the Investigative Productions in such a way that the Bates stamp would not indicate whether a document had been produced to the DOJ, thereby addressing the concerns that the DOJ had raised in its Statement of Position.

At the time, Perrigo agreed those steps would be sufficient to allow production.  *See* Perrigo's November 14, 2019 Letter, ECF No. 153 at 2, fn.2; Lead Plaintiff's November 19, 2019 Letter, ECF No. 156 at 3. When it came time to produce, however, Perrigo changed its position.  For example, it claimed that metadata in the custodian field might indicate who the DOJ sought as custodians.

In the interest of compromise, Lead Plaintiff agreed to multiple additional layers of safeguards (even though none are needed).  Specifically, Lead Plaintiff agreed that Perrigo could obscure or



overwrite the custodian metadata field as it deemed necessary. Lead Plaintiff also agreed that Perrigo could intersperse documents that were in the Investigative Productions with other responsive documents to obscure the scope of the Investigative Productions. Lead Plaintiff even agreed that at Perrigo's option, it could intersperse with documents from up to three additional unidentified custodians that were not part of the Investigative Productions and would not be revealed to Lead Plaintiff, to remove even the slightest possibility that a comparison of custodians could yield any information about the scope of the DOJ production. With these multiple, overlapping safeguards, there is no danger of violating the E.D. Pa. Order, if it even applied to production in this case (which it does not). The E.D. Pa. Order is just being used as a ruse to avoid producing damaging documents,

### E. Defendants' proposal to slash the scope of the Investigative Productions beyond the Generic Drug Search Terms would conceal highly relevant information.

During most of the parties' extensive negotiation regarding the Investigative Productions, Perrigo proposed only to screen the Investigative Productions for the same search terms, date ranges and custodians as the custodial review, a process designed to yield no additional documents beyond those *it was already required to produce* from the custodial production. This proposal, by design, was entirely redundant and was not a compromise in any sense of the word.

More recently, during a meet-and-confer on February 27, 2019, and again during the March 4 status conference, Perrigo floated a "potential proposal" that was equally designed to hide relevant documents from production. It suggested it *might* be willing to search the Investigative Productions without a custodian constraint—but *only* for documents that expressly referenced the name or national drug code of the Six Example Drugs. Importantly, Perrigo's latest attempt to slash the scope of the proposal has nothing to do with the E.D. Pa. Order. Instead, it appears aimed at concealing from production damaging documents and communications that Perrigo produced to the DOJ and State AGs, including documents concerning the allegations from the unsealed States AG Complaint detailing the involvement of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ in the price-fixing conspiracy described above. States AG Compl. (E.D. Pa. Action), ¶287. Because communications about this arrangement do not expressly reference the Six Example Drugs, and involve a custodian (▆▆▆▆▆) not among the 11 custodians here, they would escape production under Perrigo's "potential proposal," *even though they involve highly illegal price-fixing conduct directly relevant to the practices alleged in Lead Plaintiff's Amended Complaint.*

Subject matter searches—addressed at subjects like price fixing, communications with competitors, and market allocation—are critically necessary to discovery in this case. Moreover, Perrigo's attempt to limit the Investigative Productions to only those documents expressly referencing the Six Example Drugs contradicts the arguments it made to Judge Arleo in its motion to dismiss. In its motion, Perrigo contended that the pricing of its *entire generic drug portfolio* was relevant to assessing the truthfulness of statements to investors regarding a "flat to slightly up" pricing strategy. *See* ECF No. 114-16, at ECF page 67 ("Defendants never stated that the pricing for each of its myriad generic products was kept 'flat to up slightly.' Instead, Mr. Papa explained that Perrigo took a *'portfolio approach' to pricing*."). Subject matter searches are crucial to establish the veracity or falsity of those representations.



Finally, the collusive behavior here involved not just a few drugs, but rather was part of an overarching conspiracy of market allocation. Specifically, as alleged by the State AGs in the E.D. Pa. Action, competitors set "general rules of the road," pursuant to which each was entitled to a certain percentage of market share, taking into account the number of competitors in a particular market and adjusting for timing of entry. *See* States AG Compl. (E.D. Pa. Action), ¶¶91, 106-109.[4] Only subject matter searches will reveal communications related to those practices.

For all of these reasons, any proposal to slash the scope of Generic Drug Search Terms to be applied to the Investigative Productions will necessarily conceal relevant documents. Given that there is virtually no burden to apply the full scope of Generic Drug Search Terms to these already culled and reviewed collections, Rule 26 requires that Perrigo produce such relevant, responsive documents.

## II. The Court should impose a Substantial Completion Deadline of May 1, 2019.

Perrigo is nowhere close to substantially completing the production of documents responsive to Lead Plaintiff's requests served 185 days ago on September 7, 2018. At the initial discovery conference in October 2018, Lead Plaintiff asked that a substantial completion deadline of December 31, 2018 be set. After Perrigo made extensive representations assuring that a large amount of documents would be produced as quickly as possible, the Court declined to set a substantial completion deadline at that time. Perrigo has not produced documents promptly as it indicated it would. Perrigo did not produce any documents until December 13, 2018 (more than three months after the requests were served), and did not produce documents pursuant to search terms until February 20, 2019 (more than five months after the requests are served).

Lead Plaintiff and the Individual Plaintiffs have been extremely prejudiced by Perrigo's delays, which have already squandered nearly half of the discovery period allowed by the Court. With the minimal productions made to date, Plaintiffs are not yet in a position to notice depositions. To complete discovery within the timeframe allotted by the Court, Lead Plaintiff needs to quickly receive and review responsive documents, and begin depositions. Accordingly, Lead Plaintiff believes that the substantial completion deadline suggested by the Court—May 1, 2019—is essential to keeping the parties on track. Lead Plaintiff notes that the proposed substantial completion deadline is also eminently fair to Perrigo. By May 1, Perrigo would have had nearly *eight months* to complete its document production, and by the proposed full completion deadline of May 31, it would have had almost nine months to do so.

\*   \*   \*

---

[4] *See also* Compl., ¶¶69 ("In the six quarters preceding the Class Period, Perrigo's Generic Rx unit **relied on anti-competitive markets** to generate its 'star' performance."); 176-204 (alleging as false and misleading Defendants' statements that Perrigo's Generic Rx unit participated in a "competitive" environment and had a "flat to up slightly" pricing policy when, in fact, Perrigo's strategy was to "to wildly increase pricing in select generic drugs where they could fix the market price in collusion with competitors and/or join an existing price-fixing conspiracy").



Accordingly, Lead Plaintiff respectfully requests that the Court enter an order: (1) compelling Perrigo to search and produce nonprivileged documents from the Investigative Productions that are responsive to the Generic Drug Search Terms; and (2) set substantial completion and full completion deadlines of May 1, 2019 and May 31, 2019, respectively.

Respectfully submitted,

*/s/ Michael T.G. Long*

Michael T.G. Long

