# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROOFERS' PENSION FUND, on behalf of itself and all others similarly situated, | Civ. A. No.: 16-cv-2805-MCA-LDW |
| Plaintiff, | CLASS ACTION |
| v. | |
| PERRIGO COMPANY PLC and JOSEPH C. PAPA, and JUDY BROWN, | |
| Defendants. | |

---

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

---

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................... 1

ARGUMENT .................................................................................. 2

I.    INDIVIDUAL ISSUES REGARDING RELIANCE DO NOT DEFEAT PREDOMINANCE ............................................................. 2

    A. The Supreme Court's market efficiency standard was satisfied for the TASE, as it was for the NYSE. ................................................. 4

        1. Perrigo trading on the TASE was efficient, satisfying the "cause and effect test" of *Cammer* factor five ........................... 5

           a. Near-perfect price parity between TASE and U.S. markets further proves that both were efficient.................................. 7

           b. Investors who traded on the Israeli exchange had access to the same information as investors trading in the U.S. ......... 8

        2. The other *Cammer* factors also prove TASE market efficiency .................................................................................. 9

    B. Reliance is also presumed for the Tender Offer Class................. 10

II.    THE §14(e) CLAIMS OF THE TENDER OFFER CLASS DO NOT INVOLVE INDIVIDUAL TENDER ISSUES ................................. 11

III.    NEITHER DAMAGES NOR LOSS CAUSATION DEFEAT PREDOMINANCE ......................................................................... 13

IV.    PLAINTIFF IS TYPICAL, ADEQUATE, AND HAS ADVANCED THE INTERESTS OF CLASS MEMBERS ...................................... 15

    A. Plaintiff is highly engaged and knowledgeable ........................... 15

    B. Plaintiff's claims are identical to those of other Class members . 16

C.  Additional purchases by Plaintiff do not impact adequacy .......... 17

D.  Plaintiff has no interests antagonistic to the Class ...................... 18

E.  Plaintiff is independent ................................................................ 19

V.    THE CLASS PERIODS ARE CORRECTLY DEFINED ................ 19

CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S. Ct. 1456 (1972)... 3

*Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978 (1988) ............................ 4

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ................................. *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .......................................................................... 5

*Church v. Consol. Freightways, Inc.*, No. C-90-2290 DLJ, 1991 WL 284083
(N.D. Cal. 1991).................................................................................................. 10

*City of Livonia Employees' Retirement Sys. v. Wyeth*, 284 F.R.D. 173
(S.D.N.Y. 2012) ................................................................................................. 18

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
No. CIV.A. 12-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) ............. 13, 14

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013) ................................................... 14

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) .... 18, 19

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179
(2011) ................................................................................................................. 15

*Fitch v. Radnor Indus., Ltd.*, Civ. A. No. 90-2084, 1990 WL 158547
(E.D. Pa. Oct. 9, 1990)....................................................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 134 S. Ct. 2398
(2014) ........................................................................................................ *passim*

*Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418
(N.D. Cal. Dec. 22, 2016) ................................................................................... 5

*Herbst v. Int'l Tel. & Tel. Corp.*, 495 F.2d 1308 (2d Cir. 1974) ...................... 10

*Hundahl v. United Ben. Life Ins. Co.*, 465 F. Supp. 1349 (N.D. Tex. 1979) ...  12

*Hurwitz v. R. B. Jones Corp.*, 76 F.R.D. 149 (W.D. Mo. 1977)......................  12

*In re DaimlerChrysler AG Securities Litig.*, 216 F.R.D. 291 (D. Del. 2003) ..  18

*In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) ........................  16, 18

*In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011)....................................  4

*In re Groupon, Sec. Litig.*, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ............  5

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009) .............  5

*In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433
(S.D.N.Y. Sep. 29, 2015) ......................................................................................  6

*In re Merck & Co., Sec. Derivative & ERISA Litig.*, MDL No. 1658 (SRC),
2013 WL 396117 (D.N.J. Jan. 30, 2013)  ....................................................  17, 18

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)......  15

*In re Petrobras Sec. Litig.*, 862 F.3d 250 (2d Cir. 2017)....................................  6

*In re Petrobras Sec. Litig.*, 312 F.R.D. 354 (S.D.N.Y. 2016) ............................  4

*In re PHLCORP Securities Tender Office Litigation*, No. 88 Civ. 0306
(PNL), 1989 WL 251578 (S.D.N.Y. 1989) ......................................................  12

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ..  16, 17

*Li v. Aeterna Zentaris Inc.*, No. 14-cv-7081 (PGS) (TJB),
2018 WL 1143174 (D.N.J. Feb. 28, 2018) .................................................  13, 14

*Lumen v. Anderson*, 280 F.R.D. 451 (W.D. Mo. 2012)......................................  4

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015)............  13, 14

*Plaine v. McCabe,* 797 F.2d 713 (9th Cir. 1986)  ............................................ 11

*Roofer's Pension Fund v. Papa*, Civil Action No. 16-2805, 2017 WL 1536222, (D.N.J. Apr. 27, 2017) ................................................................................... 10

*Roofer's Pension Fund v. Papa*, Civil Action No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)................................................... 4, 20

*Schreiber v. Burlington N., Inc.*, 731 F.2d 163 (3d Cir. 1984)........................ 12

*Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir.)............................... 11

*Spivak v. Petro-Lewis Corp.*, 120 F.R.D. 693 (D. Colo. 1987)........................ 12

*Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) ........................... 11, 14

*Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112 (S.D.N.Y. 2008) ................... 18

*Wilson v. LSB Indus.*, 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .... 6, 14, 20

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, Civ. A. No. 13-6731, 2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ................. 13

**Other**

5 *Bromberg & Lowenfels on Securities Fraud* § 7:484 (2d ed.) ....................... 9

Halling, et al., "Volume Dynamics and Multimarket Trading," *Journal of Financial and Quantitative Analysis* 48, no. 2 (2013)..................... 8

## INTRODUCTION

Defendants' limited opposition only confirms that this case is well-suited for class certification.[1]   They do not contest that this case arises from common misrepresentations and omissions, or that trial will focus on common proof.   Nor do Defendants dispute numerosity, superiority, or adequacy of counsel.

Defendants also apparently agree and do not challenge that Perrigo shares traded efficiently on the NYSE, allowing a presumption of reliance.   Their narrow challenge related to shares purchased on the Tel Aviv Stock Exchange ("TASE") does not address the controlling Supreme Court standard, which is satisfied.   Record evidence easily proves that TASE trading, like NYSE trading, was "generally efficient."   *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 279, 134 S. Ct. 2398, 2414 (2014) ("*Halliburton II*").   Specifically, Plaintiff demonstrates that Perrigo trading on the TASE satisfies all five of the "*Cammer* factors*" that evidence market efficiency and provide for a presumption of reliance.   Critically, Plaintiff's expert has conducted an event study for TASE trading as well as U.S. trading,

---

[1] "Plaintiff" refers to Lead Plaintiff Perrigo Institutional Investor Group.  "Brf. ___ " is used to cite pages in Plaintiff's opening brief (ECF No. 163-1).  "Resp. ____ " is used to cite pages in Defendants' response brief (ECF No. 189).  "Complaint" refers to the Amended Complaint for Violation of the Federal Securities Laws (ECF No. 89).   A name followed by "Tr." and page:line citations refers the deposition transcript of that person, excerpts of which are provided herewith in the declaration of Joshua B. Silverman ("Silverman Decl.").  All capitalized terms are defined in Plaintiff's opening brief, unless otherwise indicated.

proving a "cause and effect" relationship (*Cammer* factor five) in both markets. Defendants did not conduct their own event study and only offer tangential criticisms. In addition, trading on the TASE was in lockstep with U.S. trading, the efficiency of which is uncontested. The other four *Cammer* factors also strongly support a finding of efficiency for both the TASE and the NYSE.

Defendants' remaining arguments also fail. Their attempt to distinguish the §14(e) claims between tendering and nontendering shareholders has been repeatedly rejected, and their minor objections to damages models and loss causation arguments have no bearing on class certification. Moreover, Defendants show no infirmity in proposed representatives, who have effectively advanced the interests of absent Class members and bring identical claims. Finally, the Class Period properly starts when Defendants first issued misrepresentations to investors. Because Plaintiff has proved each element of Rule 23, class certification should be granted.

## **ARGUMENT**

## I. **INDIVIDUAL ISSUES REGARDING RELIANCE DO NOT DEFEAT PREDOMINANCE**

Like most securities fraud litigations, trial here will focus on common evidence of falsity and scienter. For example, Plaintiff expects to present common evidence that ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████  Plaintiff will present similarly

damaging common evidence regarding its Generic Rx claims.

Like falsity and scienter, reliance will be established at trial through common proof. Perrigo shares traded efficiently on both the NYSE and TASE, allowing reliance to be presumed for all Classes under the fraud-on-the-market doctrine.[2]  Brf. at 15-23.  No individualized proof of reliance will be needed.  Defendants do not dispute that Perrigo traded efficiently in the United States, and do not contend that TASE trading of Perrigo shares was inefficient.  Instead, Defendants raise only limited criticisms which do not address the controlling standard for market efficiency and have no bearing on class certification.  Because unrefuted record evidence demonstrates that TASE trading met the Supreme Court's market efficiency standard, the TASE Purchaser Class is entitled to a presumption of reliance.[3]

---

[2] Defendants do not contest that Israeli law adopts a U.S. §10(b) cause of action for dual-listed shares like Perrigo. *See* Declaration of Professor Amir N. Licht (ECF No. 163-4) at ¶59.  Therefore, §10(b) standards including the presumption of reliance are available to TASE purchasers. *Id.* at ¶¶52-89.  Moreover, for the Israeli statutory law claims that the TASE Purchaser Class pleads in the alternative, reliance is not required. *Id.* at ¶¶96-106.

[3] Plaintiff also demonstrated that reliance may be presumed under *Affiliated Ute*. *See* Brf. at 23-24.  Though this Court ruled that Plaintiff's generic drug pricing

### A. The Supreme Court's market efficiency standard was satisfied for the TASE, as it was for the NYSE.

The fraud-on-the-market presumption is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Halliburton II,* 134 S. Ct. at 2410. That investors in such markets rely on the integrity of the market price, and consequently all misrepresentations and omissions incorporated into that market price, reflects both "common sense and probability." *Basic Inc. v. Levinson*, 485 U.S. 224, 246-47, 108 S. Ct. 978, 991 (1988). Neither Defendants nor their expert address the Supreme Court's ruling that only proof of a "generally efficient market" is required, and that debates "about the precise *degree* to which stock prices accurately reflect public information are thus largely beside the point." *Halliburton II*, 134 S. Ct. at 2410, 14 (emphasis in original)*; see also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011) (perfect efficiency is not required).[4]

---

allegations concern "omi[ssions] of material facts," *Roofer's Pension Fund v. Papa*, Civil Action No. 16-2805, 2018 WL 3601229, at *12 (D.N.J. July 27, 2018), Defendants protest that *Affiliate Ute* is inapplicable because "[t]his is not a pure omissions case[.]" Resp. at 16. That is not the applicable standard. The *Affiliated Ute* presumption of reliance applies where a case *primarily*—not, purely—concerns omissions. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 1472 (1972).

[4] At least six courts have discredited Defendants' expert, Dr. Gompers, for using an "absolutist view of market efficiency" that "[t]he Supreme Court has rejected." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 371 (S.D.N.Y. 2016); *see also Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo. 2012) (rejecting Dr. Gompers' market efficiency opinion as "not legally relevant" and concerning a "different conception

1. **Perrigo trading on the TASE was efficient, satisfying the "cause and effect test" of *Cammer* factor five.**

Dr. Nye conducted an event study, which proved that TASE prices and NYSE prices demonstrated identically-significant (at the 95% level) price reactions to Perrigo earnings releases, except for a single date when the TASE was closed for a market holiday:

| Date | Event | TASE statistically-significant reaction | NYSE statistically-significant reaction |
|------|-------|------|------|
| 4/21/2015 | Perrigo announces quarterly results for former fiscal Q3 2015 (prior to calendar year realignment) | Market closed | ✓ |
| 8/5/2015 | Perrigo announces Q2 2015 results | ✓ | ✓ |
| 10/22/2015 | Perrigo announces Q3 2015 results | ✓ | ✓ |
| 2/18/2016 | Perrigo announces Q4 and FY 2015 results | ✓ | ✓ |
| 4/25/2016 | Perrigo issues preliminary Q1 2016 results | ✓ | ✓ |
| 8/10/2016 | Perrigo issues Q2 2016 results | ✓ | ✓ |
| 11/10/2016 | Perrigo issues Q3 2016 results | ✓ | ✓ |

of an efficient market than is used by the law"); *In re Groupon, Sec. Litig.*, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015) (rejecting Dr. Gompers' efficiency standard as an "argument . . . squarely rejected by the *Halliburton* Court"); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 84 n.98 (S.D.N.Y. 2015) (criticizing Dr. Gompers for his "misconceptions about what the law requires"); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *7 (N.D. Cal. Dec. 22, 2016) (rejecting Dr. Gompers' reasoning as disregarding "the finding of '*general efficiency*' articulated by the Supreme Court in *Halliburton II*"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 102 (S.D.N.Y. 2009) (rejecting Dr. Gompers' market efficiency view as inconsistent with the Supreme Court standard). Dr. Gompers testified that he rejects the Supreme Court market efficiency standard as "irrelevant" to his work. Gompers Tr. at 111:1-18.

| 2/27/2017 | Perrigo issues preliminary Q4 2016 and FY 2016 results | ✓ | ✓ |
|-----------|--------------------------------------------------------|---|---|

Source: Nye Report, Exh. 12.

These reactions demonstrate market efficiency on TASE as well as NYSE. *See* Nye Report at ¶48, Nye Rebuttal at ¶¶37-65, Exh. D to Silverman Decl. Dr. Gompers agreed that Dr. Nye chose proper event dates and calculated his study without error. Gompers Tr. at 100:15-19 and 17:2-15, Exh. E to Silverman Decl. Defendants offer no event study or comparable proof of their own to refute Plaintiff's affirmative evidence of efficiency. As a result, *Cammer* factor five establishes market efficiency unless Defendants can show that the event study is so flawed that it must be disregarded entirely. *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *6-7 (S.D.N.Y. Sep. 29, 2015).

Defendants cannot, and do not, show *any* flaws in Dr. Nye's event study. Defendants' minor criticism about directionality ignores that directionality is not required by the standard articulated in *Halliburton II. See, e.g., In re Petrobras Sec. Litig.*, 862 F.3d 250, 277 (2d Cir. 2017); *Wilson v. LSB Indus.*, 2018 WL 3913115, at *14 (S.D.N.Y. Aug. 13, 2018). Regardless, as supplemental evidence of efficiency, Dr. Nye objectively and reliably proved that directionality on each of the event dates was exactly what one would expect in an efficient market. Nye Rebuttal at ¶¶37-49. Defendants' other criticism, an erroneous claim that intraday reactions were different on the TASE when the NYSE was closed, also fails. Reactions were

identical when U.S. pre-market trading is considered. *Id.* at ¶¶50-65; *see also infra* at Section I.A.1.a. Moreover, *Halliburton II* rejects Defendants' attempt to require perfect efficiency. *See* 134 S. Ct. 2398 at 2410 (presumption does not require proof of how "completely publicly available information is reflected in market price.").

### a. Near-perfect price parity between TASE and U.S. markets further proves that both were efficient.

A price parity analysis confirms that Perrigo trading on the TASE was in lockstep with trading in the U.S., for which Defendants do not contest efficiency. TASE and U.S. trading occur simultaneously for 26 hours per week: when TASE is open and U.S. pre-market trading is available (4:00 a.m. ET – 9:30 a.m. ET) and when both TASE and NYSE are open (9:30 a.m. ET – 10:30 a.m. ET), Monday through Thursday. As Dr. Nye has proved, ***during all such periods, Perrigo traded at near-perfect price parity***, demonstrating that the efficiency of U.S. markets (which Defendants concede) was equally present on the TASE. Nye Rebuttal at ¶65; Nye Report at ¶¶57-58.

Neither Defendants nor their expert examined the 5.5 hours of simultaneous trading before the NYSE opened on Monday through Thursday, and their examination of the overlapping hour in which both TASE and NYSE were open confirms price parity. Dr. Gompers admits that price discrepancies he observed averaged only **0.201%** (and had a median of 0.14%). *See* Gompers Report ¶49 & Exh. 8 (ECF No. 189-47). Even these negligible discrepancies were likely due to

Dr. Gompers observing trades executed at slightly different times, or slight variations in foreign exchange rates. *See* Nye Rebuttal at ¶9; *see also* Gompers Tr. 71:9-12 (conceding he was aware of no instance in which anyone exploited a cross-market price discrepancy). Consistent with these findings, a peer-reviewed article Dr. Gompers cites confirms that most dual-listed markets are "highly integrated from a pricing perspective at both the daily and the intraday frequency." *See* Halling, et al., "Volume Dynamics and Multimarket Trading," *Journal of Financial and Quantitative Analysis* 48, no. 2 (2013), 489–518 at 492 n.9, Exh. F to Silverman Decl.

### b. Investors who traded on the TASE had access to the same information as investors trading in the U.S.

Unrefuted record evidence demonstrates that Israeli investment professionals, like U.S. investment professionals, "consider[ed] most publicly announced material statements about [Perrigo], thereby affecting stock market prices" – the essence of market efficiency. *Halliburton II*, 134 S. Ct. at 2410. All of Perrigo's public filings were replicated on the TASE website. *See, e.g.,* Nye Report at ¶ 26 n.41. Israeli business publications regularly reported on Perrigo, and there was "a lot of data" available about Perrigo in Israel. Rabbanyan Tr. 49:15-51:13, Exh. G to Silverman Decl.; Bar Tov Tr. 33:23-34:10, Exh. H to Silverman Decl. Both U.S. analyst reports, and additional reports by analysts at Israeli firms, could be accessed in Israel. *See, e.g.,* Nye Report at ¶24; Nye Rebuttal at ¶23. It is also unrefuted that Israeli

institutions readily traded Perrigo shares on the TASE in reaction to company-specific news, just as on U.S. markets. *See, e.g.,* Deposition Exh. 2 (chart of Perrigo trades for Plaintiff members on TASE and NYSE), Exh. I to Silverman Decl.

### 2. The other *Cammer* factors also prove TASE market efficiency.

Each of the remaining four *Cammer* factors also supports market efficiency.

***Cammer* factor one (weekly volume):** For *Cammer* factor one, "[w]here securities are traded in more than one market . . . the focus should be on the primary market for the security since the secondary market is likely to move in close parallel to the primary market." 5 *Bromberg & Lowenfels on Securities Fraud* § 7:484 (2d ed.) (the treatise cited in *Cammer*), Exh. J to Silverman Decl. Properly measured, *Cammer* factor one unquestionably supports a "strong presumption" of market efficiency for all venues on which Perrigo shares trade, including TASE. Nye Report at ¶20; Nye Rebuttal at ¶¶19-22. Defendants cite no authority supporting their alternate proposed measurement, *see* Resp. at 12, which violates *Bromberg* and is econometrically unsound. *See* Nye Rebuttal at ¶¶21-22.

***Cammer* factor two (analyst coverage):** By Defendants' count, analysts published 514 reports on Perrigo during the Class Period, over 34 times the number of analyst reports deemed sufficient in *Cammer*. *See* Gompers Report Exh. 3. Defendants provide no evidence calling into doubt the ability of investors trading in Israel to access all 514 reports. *See also* Nye Rebuttal ¶¶23-24.

*Cammer* **factor three (market makers):** At least 17 professional firms made markets in Perrigo stock on the TASE during the Class Period, ***more than three times*** the threshold in *Cammer*. *See* 711 F. Supp. at 1293; Nye Rebuttal at ¶¶28-29. Narrow bid-ask spreads on TASE also confirm efficiency. *See id.,* at ¶¶30-35.

*Cammer* **factor four:** *Cammer* instructs that Form S-3 eligibility indicates market efficiency because it shows that companies have a reasonable float and have publicly disclosed at least three years of financial results. *Id.*, 711 F. Supp. at 1285. Perrigo indisputably satisfied these attributes, which apply just as much to Israel as to the U.S.: Defendants' expert agrees that all of Perrigo's shares were available for trading in either Israel or the United States, and its disclosures were available in Israel. Gompers Tr. at 47:9-17; *see* Nye Rebuttal at ¶36; Nye Report at ¶ 26 n.41.

### B. Reliance is also presumed for the Tender Offer Class.

Reliance is presumed for the §14(e) claim asserted by the Tender Offer Class under the fraud-on-the-market presumption. *Roofer's Pension Fund v. Papa*, Civil Action No. 16-2805, 2017 WL 1536222, at *5 (D.N.J. Apr. 27, 2017). Reliance is also presumed because "once [plaintiffs] have sufficiently alleged and subsequently established the objective materiality of . . . misrepresentations in the tender documents . . . individual reliance by each class member need not be established but [is] presumed." *Church v. Consol. Freightways, Inc.*, No. C-90-2290 DLJ, 1991 WL 284083, at *8 (N.D. Cal. 1991); *accord Herbst v. Int'l Tel. & Tel. Corp.*, 495 F.2d

1308, 1318 (2d Cir. 1974) ("individual reliance is not a part of plaintiff's [§14(e)] case").

Defendants do not rebut this presumption.  A defendant seeking to sever a presumption of reliance must demonstrate "by a preponderance of the evidence" that a plaintiff did not in fact rely on their misrepresentations. *Waggoner v. Barclays PLC*, 875 F.3d 79, 101 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1702, 200 L. Ed. 2d 954 (2018).  Defendants make no such showing, nor could they.  As deposition testimony proved, Plaintiff members would have considered the truth if disclosed during the tender period.  *See, e.g.,* Drucker Tr. at 87:18-22, Exh. K to Silverman Decl.; Cohen-David Tr. at 65:4-66:8, Exh. L to Silverman Decl.; Rabbanyan Tr. at 116:19-117:5; Beer Even Tr. at 116:12-25, Exh. M to Silverman Decl.  Accordingly, there can be no question that Plaintiff relied on the alleged misrepresentations, just like other Tender Offer Class members.

## II.   THE §14(e) CLAIMS OF THE TENDER OFFER CLASS DO NOT INVOLVE INDIVIDUAL TENDER ISSUES

A shareholder injured by tender offer fraud has standing under §14(e) "***whether or not she has tendered her shares***."  *Plaine v. McCabe,* 797 F.2d 713, 718 (9th Cir. 1986) (emphasis in original) (quoting *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S. Ct. 134 (1974) (a plaintiff has standing if "injured by fraudulent activities of others perpetrated in

connection with a tender offer, whether or not he has tendered his shares.")).  Thus, §14(e) does not require individual inquiry into tender decisions.

§14(e) treats tendering and non-tendering shareholders equally because it is "principally . . . a disclosure statute," and non-disclosure of material facts prevents **both** tendering and non-tendering shareholders from "intelligently decid[ing] how to respond to [the] tender offer." *Schreiber v. Burlington N., Inc.*, 731 F.2d 163, 165–66 (3d Cir. 1984), *aff'd,* 472 U.S. 1 (1985).  Here, both tendering and non-tendering shareholders suffered the same economic damages, because both lost the opportunity to receive the same consideration when Defendants' fraud defeated the tender offer.

As other courts have determined, economic differences between tendering and non-tendering shareholders are insignificant, and do not prevent class certification. *In re PHLCORP Securities Tender Office Litigation*, No. 88 Civ. 0306 (PNL), 1989 WL 251578 (S.D.N.Y. 1989); *see also Hurwitz v. R. B. Jones Corp.*, 76 F.R.D. 149, 163 (W.D. Mo. 1977).  The lone §14(e) class certification case Defendants cite, *Spivak v. Petro-Lewis Corp.*, 120 F.R.D. 693 (D. Colo. 1987), stands solely for the unremarkable proposition that a proposed class representative is neither typical nor adequate where record evidence conclusively establishes that he knew the allegedly concealed information all along.  *Id.* at 697-99.[5]  By contrast, here Defendants

---

[5] Defendants' citation of *Hundahl v. United Ben. Life Ins. Co.*, 465 F. Supp. 1349, 1353-54 (N.D. Tex. 1979), is equally misplaced.  *Hundahl* involved the exact opposite factual scenario as this case.  In *Hundahl*, the <u>tender offeror</u> was accused

concealed from both Plaintiff and the Class alike crucial information about Perrigo's most important acquisition, Omega, and its most profitable division, Generic Rx. Brf. at 3-7.

## III.  NEITHER DAMAGES NOR LOSS CAUSATION DEFEAT PREDOMINANCE

In securities cases, once liability is established, the computation of damages is "purely mechanical" based upon the transactions of each Class member. *Fitch v. Radnor Indus., Ltd.*, Civ. A. No. 90-2084, 1990 WL 158547, at \*5-6 (E.D. Pa. Oct. 9, 1990).  Third Circuit law "forecloses" Defendants' contention that individual calculations of securities fraud damages defeats class certification. *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, Civ. A. No. 13-6731, 2016 WL 4138613, at \*14-15 (E.D. Pa. Aug. 4, 2016) (discussing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015)); *see also City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. CIV.A. 12-5275, 2015 WL 5097883, at \*7 (D.N.J. Aug. 31, 2015).  Such damages are appropriately proved on a classwide basis at trial by event studies. *See, e.g., Li v. Aeterna Zentaris Inc.*, No.

---

of making misrepresentations to inflate the value of its tender offer.  There, the court merely held that investors who did not tender despite the tenderor's misrepresentations could not possibly have been impacted by those misrepresentations. *Id.*  Here, Defendants' misrepresentations successfully thwarted Mylan's tender altogether, depriving every shareholder of the ability to fairly evaluate the tender offer and the lucrative benefits of the tender consideration.

14-cv-7081 (PGS) (TJB), 2018 WL 1143174, at *2 (D.N.J. Feb. 28, 2018).

Defendants' disagreements about damages methodologies are not properly resolved at class certification. *Prudential*, 2015 WL 5097883, at *12-13. Plaintiff is "not required to produce a detailed damages model" at this stage. *Li*, 2018 WL 1143174, at *2 (citations omitted). An event study, as Dr. Nye has provided, is sufficient. *Id*.; *see also Prudential*, 2015 WL 5097883, at *13. Courts "need not assess the validity of Plaintiff's damages model at this stage," so disputes regarding event study parameters or disaggregation of event dates cannot defeat class certification. *Prudential*, 2015 WL 5097883, at *13; *see also Waggoner*, 875 F.3d at 106; *Wilson,* 2018 WL 3913115, at *16-17.

Defendants' citation to *Comcast v. Behrend*, 133 S. Ct. 1426 (2013) is misplaced. *See* Resp. at 20. As the Third Circuit explained in *Neale*, *Comcast* "was specific to the antitrust claim at issue," and the unique facts of that case. *Neale*, 794 F.3d at 374. Generally, courts continue to hold that "individual damages calculations do not preclude class certification under Rule 23(b)(3)." *Id*.at 375. Thus, denying class certification solely on the basis of individual damage calculations would be an abuse of discretion. *Id.*

Defendants' loss causation arguments are also not ripe for adjudication here. *See* Resp. at 15, 21, 24 n.12, 26 (speculating that Defendants' fraud might not have caused the Mylan offer to fail or might not have caused certain losses). Those are

common questions that affect all Class members on the merits of their claims, and it is reversible error to require a plaintiff "to show loss causation as a condition of obtaining class certification." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813, 131 S. Ct. 2179, 2186 (2011) ("*Halliburton I*").

## IV.   PLAINTIFF IS TYPICAL, ADEQUATE, AND HAS ADVANCED THE INTERESTS OF CLASS MEMBERS

### A. Plaintiff is highly engaged and knowledgeable.

Plaintiff's service to the Class has not just been adequate; it has been exemplary.  Plaintiff members had dozens of communications with counsel and multiple in-person meetings to keep abreast of the litigation, received regular updates, and six representatives traveled halfway around the world to participate in depositions. *See, e.g.,* Drucker Tr. at 14:19-16:13,18:3-13; Cohen-David Tr. at 12:21-15:21, 49:8-19, 77:2-5; Maderer Tr. at 11:10-17, 42:9-43:25, 74:18-25, 83:23-85:12, Exh. N to Silverman Decl.  They regularly review draft filings, and suggest revisions where appropriate.  *See, e.g.,* Drucker Tr. at 48:18-49:10, 61:10-19, 72:2-23; Cohen-David Tr. at 45:11-47:6, 74:6-76:21; Maderer Tr. at 40:21-42:8; 43:16-25.   Each also duly responded to written discovery. Plaintiff's high level of participation and understanding far exceed the "minimal degree of knowledge about the litigation" required by Rule 23.  *In re NFL Players Concussion Injury Litig.*, 821

F.3d 410, 430 (3d Cir. 2016) (quotation and citation omitted).

**B. Plaintiff's claims are identical to those of other Class members.**

Plaintiff's claims are not just typical of absent Class members; they are identical. All arise from the exact same facts and assert (within each Class) the exact same legal theories. *See* Brf. at 12-13. Defendants do not dispute this fundamental alignment, instead limiting their typicality challenge to an argument they wrongly label a "unique defense." Specifically, they point to a handful of visits by Mylan executives unsuccessfully seeking to persuade Plaintiff members (all large Israeli institutional investors) to tender their Perrigo shares. Defendants' argument fails to defeat typicality for three reasons: (1) it does not raise even a colorable defense; (2) it is not unique; and (3) it is not "likely to become a major focus of the litigation." *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Defendants cite no case law holding that a conversation with a tender offeror constitutes a "defense" to any securities claim, especially given Defendants' failure to adduce any evidence that material non-public information was exchanged. Courts "decline to find that an investor will be precluded from serving as class representative merely because of his private communications with corporate insiders about publicly available information." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 202-03 (E.D. Pa. 2008). Regardless, no Plaintiff member was swayed by Mylan. None tendered shares. *See* Bar Tov Tr. at 63:6-15; 88:10-20; Rabbanyan Tr. 90:25-

91:15; Beer Even Tr. 54:14-55:7.

Additionally, Mylan's visit to Plaintiff members was not unusual. As Mylan publicly disclosed, it made similar visits to other Perrigo investors both inside and outside of Israel.[6] Executives of publicly-traded companies frequently meet with investors, and Defendants' attempt to portray this as disqualifying would severely hamper institutional investors from acting as lead plaintiff in securities fraud class actions, as Congress intended in the PSLRA. *See* Senate Report 104-98 (lead plaintiff provisions intended to increase the role of institutional investors).

Nor is there any chance that this issue will "become a major focus" at trial. *See Schering Plough*, 589 F.3d at 599. Testimony on this issue took only a few minutes at deposition. Such "nuances" are "no more than minor factual differences" and do not impact certification. *In re Merck & Co., Sec. Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2013 WL 396117, at *6-7 (D.N.J. Jan. 30, 2013).

**C. Additional purchases by Plaintiff do not impact adequacy.**

Defendants' attempt to rebut adequacy by pointing to post-disclosure purchases has been rejected by the overwhelming majority of courts to consider the

---

[6] *See, e.g.,* https://en.globes.co.il/en/article-coury-1001079801 (Mylan CEO came to Israel "to meet with institutions that hold shares in Perrigo Company") and http://investor.mylan.com/news-releases/news-release-details/mylan-comments-misleading-statements-made-perrigo (Mylan executives spoke to "many Perrigo shareholders . . . about this combination over the past several weeks").

issue, which almost uniformly hold that such purchases "have 'no bearing on whether or not [investors] relied on the integrity of the market during the class period.'"  *Merck*, 2013 WL 396117, at *7 (quoting *City of Livonia Employees' Retirement Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012)); *see also DVI*, 249 F.R.D. at 203-04.  Plaintiff members testified that they purchased to take advantage of lower prices for Perrigo shares following the disclosures.  *See, e.g.,* Beer Even Tr. at 113:23-124:19, Rabbanyan Tr. at 107:9-21.  This is "a common investment strategy," and does not impact class certification.  *In re DaimlerChrysler AG Securities Litig.*, 216 F.R.D. 291, 298 (D. Del. 2003); *see also Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 116-17 (S.D.N.Y. 2008).

### D. Plaintiff has no interests antagonistic to the Class.

A purported conflict can affect adequacy only if it is actual and "fundamental."  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012).  That Meitav is also part of a lead plaintiff group in a separate securities litigation against Mylan presents neither an actual nor a fundamental conflict.  *See* Resp. at 37.  The Mylan litigation involves entirely different facts, and none of the claims in the Mylan litigation are adverse to Class members here.

That both Perrigo and Mylan were dishonest to investors in no way changes the indisputable conclusion that the tender offer was far better for Perrigo investors than the standalone value of its shares after artificial inflation was removed.  *See*

Nye Report at ¶¶66-69; Nye Rebuttal at ¶66.[7]  Moreover, the Mylan litigation does not assert that investors knew of Mylan's fraud while its tender offer for Perrigo was pending.  For all of these reasons, Defendants cannot establish a "fundamental conflict."[8]  *See Dewey*, 681 F.3d at 184.  Meitav's willingness to serve in a representative capacity is a benefit to Class members in both cases.

### E. Plaintiff is independent.

Record evidence thoroughly demonstrates that the Plaintiff group is independent, not "lawyer-driven."  As deposition testimony established, Plaintiff members largely decided to join forces on their own initiative.  *See* Drucker Tr. at 44:2-45:4; Maderer Tr. at 33:24-34:18.  Plaintiff brought the lawyers together, rather than vice-versa.  Drucker Tr. at 41:7-42:21.  And, Plaintiff members had "at least a dozen" communications with each other outside the presence of litigation counsel.  Drucker Tr. at 16:14-17:10; Cohen-David Tr. at 79:6-15, 95:20-96:14.  Defendants' characterization is simply wrong.

### F.  THE CLASS PERIODS ARE CORRECTLY DEFINED

Defendants' final argument incorrectly posits that tender offer claims "should

---

[7] *See also* Cohen-David Tr. at 65:15-66:8 (explaining that while neither company was honest, investors would have been "better off with Mylan tender offer. . . .").

[8]  Moreover, structural mechanisms protect the classes in both cases should such a conflict arise in the future.  In each case, Meitav is only one member of a lead plaintiff group and thus cannot itself steer either litigation.

not commence until September 14, 2015." Resp. at 38.  However, consistent with §14(e), the Tender Offer Class is defined as those who *held* Perrigo shares as of the tender offer expiration, not those who purchased during any specific time period. *See* Brf. at 2; Complaint, ¶273(c).  The U.S. and TASE Purchaser Classes begin on April 21, 2015, because that is when Plaintiff first alleges "an actionable misstatement or omission."  *Wilson*, 2018 2018 WL 3913115, at *20; *see also Roofer's*, 2018 WL 3601229, at *15 (citing Complaint, ¶133, misrepresentations beginning on April 21, 2015).

## CONCLUSION

For the reasons above and in Plaintiff's opening brief, Plaintiff respectfully requests that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Classes defined in Plaintiff's motion; (2) appointing Plaintiff as the Class Representative; (3) appointing Pomerantz and Bernstein Litowitz as Class Counsel, and Lowenstein Sandler as Liaison Counsel; and (4) granting such other and further relief as the Court may deem just and proper.


Dated:   June 5, 2019                    Respectfully submitted,

                                         **LOWENSTEIN SANDLER LLP**

                                         */s/* Michael T.G. Long
                                         _____

                                         Michael B. Himmel
                                         Michael T.G. Long
                                         65 Livingston Avenue

Roseland, New Jersey  07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com

*Liaison Counsel for Plaintiff*

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois  60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Jonathan Lindenfeld
600 Third Avenue
New York, New York  10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jlindenfeld@pomlaw.com

*Co-Lead Counsel for Plaintiff*

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
James A. Harrod (*pro hac vice*)
Jesse L. Jensen (*pro hac vice)*
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
jesse.jensen@blbglaw.com

*Co-Lead Counsel for Plaintiff*