# Arnold & Porter

**Paul J. Fishman**
+1 973.776.1901 Direct
Paul.Fishman@arnoldporter.com

November 25, 2020

**BY ECF**

Honorable Leda Dunn Wettre
United States Magistrate Judge
U.S. District Court for the District of New Jersey
Martin Luther King, Jr., U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    *Roofer's Pension Fund v. Papa, et al.*, No. 2:16-cv-02805-MCA-LDW - Non-Party Sandoz Inc. Letter re Plaintiffs' Rule 45 Subpoena for Corporate Deposition Testimony

Dear Judge Wettre:

      We represent non-party Sandoz Inc. ("Sandoz"), which has received an untenably broad and burdensome Rule 45 subpoena from Plaintiffs for corporate deposition testimony. Pursuant to your Judicial Preferences, we write to request a conference with the Court prior to filing a motion to quash.[1]

      The litigation currently pending before the Court involves allegations that Perrigo Pharmaceutical Industries, Ltd. ("Perrigo") and certain of its employees misled shareholders regarding the value of the company. Although Sandoz is not a party to this matter, and the Complaint does not allege that Sandoz had any responsibility for Perrigo's alleged misstatements or omissions, Plaintiffs recently issued a subpoena (attached as Exhibit A) directing Sandoz to provide a corporate witness who would testify about five substantive topics:[2]

- "Any communications and agreements between Sandoz and Perrigo" concerning customer allocation, "coordination of pricing and bids with other industry participants," and "stabilizing, maintaining, or fixing prices of generic drugs" (Topic 2);

---

    [1]    We are, of course, prepared to provide more formal, substantive briefing if the Court would find it helpful.

    [2]    Topic 1 covers preparation for the deposition and may be moot depending on the outcome of discussions among the parties and the Court.

**Arnold & Porter Kaye Scholer LLP**
One Gateway Center, Suite 1025 | Newark, NJ 07102-5315 | **www.arnoldporter.com**

# Arnold & Porter

Hon. Leda Dunn Wettre
November 25, 2020
Page 2

- "Sandoz's monitoring of competitor pricing and market share for generic drugs" (Topic 3);

- "Sandoz's attendance and participation at generic pharmaceutical industry conferences and events" (Topic 4);

- "Investigations, whether internal or external, into Sandoz's pricing of generic drugs" (Topic 5); and

- "The facts underlying the Information and the Deferred Prosecution Agreement between Sandoz and the United States Department of Justice, filed March 2, 2020" (Topic 6).

None of those topics is appropriate for a corporate deposition. The information Plaintiffs seek is almost entirely irrelevant to their securities fraud claims; two of the inquiries concern information protected by attorney-client and work-product privileges and protections; and the requests are disproportionate, burdensome (especially for non-party discovery), and duplicative of documents that Sandoz has already produced. Sandoz is not in a position to provide the little that remains, which relates to verbal communications by former employees over whom Sandoz no longer has any control.

## I.   Background

On May 18, 2016, Plaintiff investors brought this action based upon alleged misrepresentations and omissions by Perrigo while the company was fighting a hostile takeover bid by Mylan. In particular, Plaintiffs claim that Perrigo misrepresented the success of its integration of Omega Pharma N.V., as well as the competitiveness of Perrigo's generics division. Sandoz is not, and has never been, a party to this lawsuit, and Plaintiffs have never asserted that Sandoz or its employees were in any way responsible for any omissions or affirmative misrepresentations Perrigo may have made.

Four years later—on March 2, 2020—Sandoz resolved a criminal antitrust investigation by entering into a deferred prosecution agreement ("DPA") with the U.S. Department of Justice ("DOJ"). As part of that agreement, Sandoz admitted to certain conduct set forth in an attached Statement of Facts. Ex. B. Among those admissions was one that concerned "Company B [Perrigo], a generic drug company with its principal place of business in Michigan." In particular, Sandoz acknowledged that, "[f]rom in or about July 2013 and continuing until in or about December 2015, Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of, certain generic drugs, including desonide ointment."

**Arnold & Porter**

Hon. Leda Dunn Wettre
November 25, 2020
Page 3

On May 16, 2020, Plaintiffs served Sandoz with a Rule 45 subpoena for documents. Following extensive negotiations concerning the scope of Sandoz' response, Sandoz commenced rolling document productions in September 2020; it completed that process on October 13, 2020. In total, Sandoz provided Plaintiffs with more than 35,000 documents relating to the same topics about which Plaintiffs now seek testimony.

Nevertheless, on November 11, 2020, Plaintiffs served a new Rule 45 subpoena purporting to require that Sandoz produce a corporate witness on December 11, 2020, for deposition testimony about several substantive topics:[3]

**Topic 2:** *Any communications and agreements between Sandoz and Perrigo between January 1, 2013 and May 2, 2017 concerning 1) the allocation of customers; 2) coordination of pricing and bids with other industry participants; and 3) stabilizing, maintaining, or fixing prices of generic drugs, including specifically desonide ointment.*

**Topic 3:** *Sandoz's monitoring of competitor pricing and market share for generic drugs, including specifically desonide ointment, between January 1, 2013 and May 2, 2017, including: (a) who monitored competitor pricing; (b) the means by which competitor prices were observed; (c) communications concerning competitor pricing (including with competitors and purchasers) and (d) feedback from customers regarding price changes.*

**Topic 4:** *Sandoz's attendance and participation at generic pharmaceutical industry conferences and events throughout the Class Period, including: (a) who attended on behalf of Sandoz; (b) whether Sandoz's attendees discussed generic pharmaceuticals with any of Sandoz's competitors, including Perrigo; and (c) the substance of any such discussions.*

**Topic 5:** *Investigations, whether internal or external, into Sandoz's pricing of generic drugs, including any allegations of collusion into pricing of generic drugs.*

---

[3] We have additional objections to Topic 1, which does not request substantive information, but instead appears to impermissibly seek a swath of information that is protected from disclosure under the attorney-client privilege and work-product doctrines. "**Topic 1:** The steps taken by each person designated to testify about any of the matters set forth below to acquire all information known or reasonably known to You about each such matter including documents reviewed, discussed or prepared in connection with or in anticipation of the testimony by each designated witness, communications with any person who provided any information about which testimony is provided or sought, and the identity of each person consulted to obtain information about which testimony is provided or sought." We do not intend to waive any such objections by not raising them here. They simply do not require the urgent intervention of the Court.

**Arnold & Porter**

Hon. Leda Dunn Wettre
November 25, 2020
Page 4

**Topic 6**:  *The facts underlying the Information and the Deferred Prosecution Agreement between Sandoz and the United States Department of Justice, filed March 2, 2020 in U.S. v. Sandoz Inc., Crim. No. 20-CR-111 (E.D. Pa.), ECF Nos. 1 and 2.*

Sandoz has met and conferred in good faith and at length regarding this subpoena and the related 30(b)(6) deposition notice. However, unlike our previous efforts with regard to Plaintiffs' subpoena for documents, the parties are now at an impasse.

## II.   Standard

Rule 45 places a threshold burden on the party issuing a subpoena to establish the relevance of the discovery it seeks. When the recipient is a non-party, the law requires even more. *See, e.g.*, *Kelley v. Enhanced Recovery Co., LLC*, 15-cv-6527 (CCC), 2016 WL 8673055, at *2–4 (D.N.J. Oct. 7, 2016) ("The standard for nonparty discovery requires a stronger showing of relevance than for simple party discovery."); *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

Further, relevance alone is not enough: the request cannot be unfairly burdensome or disproportionate. And as with the evaluation of relevance, "[a] more demanding variant of the proportionality analysis [] applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Virginia Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *Frank v. Honeywell Int'l Inc.,* No. 15-MC-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015) (applying proportionality analysis and quashing non-party deposition subpoena where plaintiffs had shown relevance but failed to show a need for the non-party discovery requested, in part because relevant information was duplicative of prior discovery). The issuing party "must take reasonable steps to avoid imposing undue burden or expense on the subpoena recipient," and the court "must enforce this duty." Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) (Court shall quash or modify a subpoena that "subjects a person to undue burden"); *Chazanow v. Sussex Bank*, No. CIV.A. 11-1094 CCC, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014).

Finally, when a party seeks deposition testimony under Rule 30, the entity producing a witness must designate a representative to speak on its behalf "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). However, even a corporate deponent for a party cannot be expected to testify about information that is not "reasonably available." *See Costa v. Cty. of Burlington*, 254 F.R.D. 187, 190–91 (D.N.J. 2008) (a corporate deposition is not a substitute for fact witness testimony and it is impractical to expect a 30(b)(6) witness for the county defendant "to know the intimate details" of numerous interactions of individuals with firsthand

**Arnold & Porter**

Hon. Leda Dunn Wettre
November 25, 2020
Page 5

knowledge). For depositions as well, the standards are more exacting for non-party witnesses, including corporations.

### III.   Argument

Applying the above principles here, Plaintiffs' subpoena for corporate deposition testimony is unlikely to produce relevant evidence. It is also overbroad; compliance would unduly burden Sandoz, which is not a party to this litigation; and it seeks information that is either protected by privilege or is not available for collection and testimony by a corporate witness.

### A.   Sandoz Has Already Provided all Relevant and Non-Privileged Information Responsive to Topic 2 and Topic 6.

Topic 2, which seeks testimony regarding communications or agreements between Sandoz and Perrigo about improper price-fixing practices, exemplifies why the subpoena topics are improper for corporate witness testimony. Sandoz already has provided to Plaintiffs a voluminous document production (more than 35,000 documents), following a negotiated agreement between Sandoz and the Plaintiffs. These documents comprise the primary evidence that Plaintiffs are seeking that Sandoz possesses. However, Plaintiffs are not entitled in addition to have a corporate witness opine on whether those documents have any evidentiary significance or legal consequence regarding "agreements" regarding the inappropriate types of conduct described in Topic 2. Such conclusions are not for a 30(b)(6) witness to divine, and there is no requirement that a corporate representative do so.

To the extent Plaintiffs are seeking testimony regarding verbal communications or agreements that may have taken place, any Sandoz employees involved in the conduct that was the subject of the criminal investigation and the DPA have long since left the company. No corporate representative would be able to provide sworn testimony about the content, much less the significance, of conversations that those former employees may have had with individuals at Perrigo. Merely describing the task shows why imposing any such obligation on Sandoz here would be both unreasonable and futile.

To the extent that Plaintiffs seek further information regarding Topic 2, they should properly direct their request to Perrigo (the defendant in this action) or to individuals who may have personal knowledge of their own communications. If Plaintiffs have already sought and taken such depositions, neither Sandoz nor its designated representative can add more. If Plaintiffs have not attempted to do so, that failure does not justify their shifting the burden to Sandoz—a non-party with no stake in this matter. Indeed, as a non-party,

# Arnold & Porter

Hon. Leda Dunn Wettre
November 25, 2020
Page 6

Sandoz has less power and authority to obtain that information than do the Plaintiffs. *See Costa v. Cty. of Burlington*, 254 F.R.D. at 190–91; *Frank v. Honeywell Int'l Inc.,* No. 15-MC-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015) (quashing a subpoena for a non-party deposition where information sought was duplicative of other discovery and plaintiff was therefore unable to show a need for the non-party deposition); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Topic 6 presents similar issues. That request seeks testimony concerning "[t]he facts underlying the Information and the Deferred Prosecution Agreement between Sandoz and the United States Department of Justice, filed March 2, 2020 in *U.S. v. Sandoz Inc.*, Crim. No. 20-CR-111 (E.D. Pa.), ECF Nos. 1 and 2." First, as we have previously explained to Plaintiffs, Sandoz cannot provide sworn testimony concerning "the facts" underlying the *Information.* DOJ drafted and filed that document. To the extent that those allegations—which is what they are—are relevant here, Plaintiffs should address their request to the government.

Regarding the "facts underlying the DPA," we have advised the Plaintiffs that these are laid out in the "Statement of Facts" attached to that publicly filed document (Ex. B). That Statement describes specific facts concerning "Company B" (Perrigo), as well as those that relate to other competitors. To the extent that Plaintiffs seek testimony about the relationship between Sandoz and other competitors, it is completely irrelevant. To the extent that Plaintiffs seek testimony about the facts regarding Perrigo, the request suffers from the identical deficiencies of Topic 2, discussed above.[4]

### B. Topics 3 and 4 Seek Irrelevant Testimony About Sandoz' Internal Policies and Practices and Attendance at Industry Events

Neither Topic 3 nor Topic 4—which inquire broadly into Sandoz' business operations, without drawing any connection to Perrigo—is relevant to a securities litigation brought by that company's investors for purported misrepresentations concerning the competitiveness of Perrigo's generic pharmaceutical business.

Topic 3, for example, broadly seeks information relating to Sandoz' monitoring of, and communications about, pricing *for all of its generic pharmaceuticals* by every competitor, which is grossly overbroad and seeks information that is not relevant to

---

[4] Plaintiffs have represented to Sandoz that they do not seek testimony concerning the company's deliberations with the DOJ or internal deliberations concerning whether to enter into the DPA. Sandoz reserves the right to object to such inquiries if Plaintiffs pursue those topics.

# Arnold & Porter

Hon. Leda Dunn Wettre
November 25, 2020
Page 7

Plaintiffs' claims.  During the 4 1/2- year period covered by Topic 3, Sandoz manufactured hundreds of pharmaceuticals and competed with dozens of manufacturers.  The effort to gather that information, much less to prepare a suitable witness, would be oppressive and disproportionate to the needs of this case.

Further, Topic 3 does not even concern Perrigo or affect its liability.  Sandoz' general internal policies and practices have no bearing on whether Perrigo participated in or knew about collusion and then lied to its investors.

Topic 4 has a different, but equally burdensome scope:  it would require Sandoz to have a witness identify every Sandoz employee who attended any industry conferences and events during an undefined "Class Period," as well as the substance of all communications or discussions about generic pharmaceuticals with the representatives of every competitor.  Here too, the burden of having a witness gather, collate, and prepare to present the information would be oppressive and disproportionate to the needs of this case.  Even if Plaintiffs had limited the requests to interactions with or about Perrigo, or to only one drug, the magnitude of the task would be unjustified.

Finally, to the extent Plaintiffs may claim that there is anything within these topics that could be potentially relevant, such as communications between representatives of Sandoz and Perrigo (whether at industry events or elsewhere), that information is already sought in Topic 2.  As discussed above, Sandoz has already produced its documents and a corporate witness cannot be expected to add testimony about the substance of any such communications.  *See Costa v. Cty. of Burlington*, 254 F.R.D. at 190–91.

    **C.**    **Topic 5 Impermissibly Seeks Privileged Information Regarding Internal and External Investigations Into Sandoz' Pricing**

Topic 5, which seeks testimony concerning internal and external investigations into Sandoz' drug-pricing practices, including price-fixing allegations, also suffers from several problems.

First, information that Sandoz' attorneys learned during any internal investigations would likely be protected by the attorney-client privilege.  *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).  Similarly, the work-product doctrine also covers internal investigations by counsel.  Rule 30(b)(6) cannot be used as a back-door to obtain confidential information or to invade an attorney's mental impressions.

Nor would it be reasonable to force Sandoz to sift through the results of any internal investigations to determine whether there are unprotected, disclosable facts.  Such an

# Arnold & Porter

Hon. Leda Dunn Wettre
November 25, 2020
Page 8

exercise *might* be appropriate if Plaintiffs had sought information about an internal investigation that Perrigo, the defendant in this action, had conducted. But Sandoz is not a party, and there is no reason to impose such a burden here.

Regarding external investigations concerning unspecified "allegations of collusion into pricing of generic drugs," Plaintiffs ignore two critical facts: this is not an antitrust litigation and Sandoz is not a defendant. There is no basis for Plaintiffs to demand an exploration of Sandoz' pricing of generic pharmaceuticals, its compliance with competition laws, its efforts to investigate matters internally, or the details or circumstances of any outside investigations in which it may have been involved.

## IV.   Conclusion

Plaintiffs have served an overbroad subpoena on non-party Sandoz, and the subpoena should be quashed. We will look forward to discussing this matter further at the Court's convenience.

Respectfully,

/s/ Paul J. Fishman

Copies to All Counsel of Record (*via ECF*)